IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEPHAN H. SLIWA,

    Plaintiff,

v.                                      CASE NO.: 2:16-cv-00235-JES-MRM

BRIGHT HOUSE NETWORKS,
LLC,

    Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY**

**I.    Introduction**

In its motion, the Defendant, Bright House Networks, LLC, ("Bright House") seeks what amounts to an indefinite stay based upon the filing of multiple petitions challenging FCC regulations that have been consolidated in the D.C. Circuit. The Plaintiff opposes such a stay for a number of reasons, as will be further described below.

**II.    Legal Standards Applicable To Motions To Stay And Prior Orders Denying Similar Stays**

While Bright House cites one of the landmark Supreme Court cases concerning the staying of actions, *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("*Landis*"), it appears to have missed one of this case's most important caveats, namely the Supreme Court's admonition that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("*Landis*"). It is also well established that "[t]he proponent of a stay

bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997), *citing Landis*, 299 U.S. at 255. As will be further shown below, the Defendant has plainly failed to meet its significant burden to establish that the "rare circumstances" spoken of in *Landis* are present in the instant case.

It is also worth noting that Bright House cites only a single order[1] granting a stay pursuant to the D.C. Circuit petitions, from the remote jurisdiction of Wisconsin no less. In contrast, there are a significant number of recent denials of similar stay motions in TCPA cases in this **very district**. While most of these orders have pertained exclusively stays sought pursuant to a grant of certiorari in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015), at least three of these stay motions also sought the stay on the grounds of the D.C. Circuit petitions (which are also frequently referred to as *ACA International*, one of the petitioners). For example, in a case handled by the undersigned, *Farrell v. Nationstar Mortgage LLC*, Case No. 6:15-cv-01613-GAP-TBS (M.D. Fla 2015), such a stay was denied by endorsed order by Judge Presnell on December 3, 2015. Additionally, the Plaintiff is also aware of another case in this district, *James v. JP Morgan Chase Bank, N.A.*, Case No. 8:15-cv-2424-T-23JSS (M.D. Fla. 2015), where a stay was sought pursuant to the D.C. Circuit petitions and denied on April 7, 2016 by Judge Merryday. Finally, Judge Moody has also denied a stay on the grounds of the D.C. Circuit petitions in the past few months. *Rodriguez v. DFS Services*, LLC, 8:15-CV-2601-T-30TBM, 2016 WL 369052, at *3 (M.D. Fla. 2016)(granting a stay on other grounds but holding that "[t]he appeal before the D.C. Circuit . . . does not warrant a stay).

---

[1] In performing research, the undersigned located three other orders supporting stays founded upon the D.C. Circuit petitions, *Williams v. TGI Friday's Inc.*, 4:15-CV-1469 RLW, 2016 WL 1453032 (E.D. Mo. Apr. 12, 2016); *Fontes v. Time Warner Cable Inc.*, CV14-2060-CAS(CWX), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) and *Acton v. Intellectual Capital Mgmt., Inc.*, 15-CV-4004(JS)(ARL), 2015 WL 9462110, (E.D.N.Y. Dec. 28, 2015); Such is provided pursuant to counsel's ethical obligation to disclose adverse authority, although the Plaintiff believes that the weight of authority clearly supports his position.

There is also ample out-of-district authority from both near and far supporting the Plaintiff's opposition of this stay motion. Starting with near first, approximately a month ago, Judge Ungaro of the Southern District of Florida ruled on and denied a similar motion to stay. *See Mancini v. JPMorgan Chase Bank, N.A.*, 1:15-CV-61524-UU, 2016 WL 1273185, at *1 (S.D. Fla. Mar. 28, 2016). Another such order was entered on April 14, 2016 by Magistrate Judge England of the Northern District of Alabama in a class action case the undersigned is involved in, *Swaney v. Regions Bank*, 2:13-cv-00544-JHE, Doc. 133 (N.D. Ala. 2016). Likewise, Chief Magistrate Judge Ott, also of the Northern District of Alabama, has in just the past few days denied a stay pursuant to the D.C. Circuit petitions. *Schwyhart v. AmSher Collection Services, Inc.,* 2:15-CV-01175-JEO, 2016 WL 1620096 (N.D. Ala. Apr. 22, 2016). There is also a District of New Jersey case that has denied such a stay. *Nussbaum v. Diversified Consultants, Inc.*, CIV. 15-600, 2015 WL 5707147, at *3 (D.N.J. Sep. 28, 2015). Finally, there are at least two Northern District of California district court orders denying such stays. *See Lathrop v. Uber Techs., Inc.,* 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016); *O'Hanlon v. 24 Hour Fitness USA, Inc.*, 15-CV-01821-BLF, 2016 WL 815357, at *5 (N.D. Cal. Mar. 2, 2016). In considering this list, it should be noted that this is not even an attempt at an exhaustive[2] list of nationwide authority supporting the Plaintiff.

### III. The D.C. Circuit Petitions Are Overwhelmingly Unlikely To Result in An Overturning of The FCC Regulations

Bright House's motion is perhaps most notable for failing to give any reason to believe that those that have challenged the FCC regulations by filing the D.C. Circuit petitions will be successful, let alone establishing that the mere filing of the D.C. Circuit petitions constitutes the

---

[2] It should also be noted that endorsed or very brief orders denying such stays are unlikely to be published by electronic legal research providers, making it easier to find comprehensive authority supporting stays rather than opposing them.

"rare circumstances" spoken of in *Landis*. Importantly, given the fact the Congress explicitly conferred upon the FCC the power to make TCPA regulations, these D.C. Circuit petitions would best be described as being filed "on a wing and a prayer" because the standard of review in favor of upholding the FCC regulations under such circumstances is nearly insurmountable. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984) (noting "that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer" and that when "there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation[, s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."); 47 U.S.C. § 227(b)(2)("The [FCC] shall prescribe regulations to implement the requirements of this subsection."). Here, by citing to the divisions among FCC Commissioners regarding certain aspects of the new rules, Bright House has confused the often political rulemaking process with the apolitical judicial review process of such regulations. Now that the FCC regulations have been promulgated with a proper majority vote of the Commissioners, it is almost certain they will be upheld.

A. <u>The FCC's Regulations As To What Constitutes An ATDS Are Not Dispositive Of This Case And Are Highly Unlikely To Be Overturned In Any Event</u>

As a threshold matter, Bright House has failed to address the very pertinent fact that the Plaintiff has alleged the use of both **autodialed** and **prerecorded** calls. While the FCC's definition of an ATDS could conceivably impact calls that were merely autodialed, it would have absolutely no effect for violations of the TCPA involving calls that used a pre-recorded voice. *See Vaccaro v. CVS Pharmacy, Inc.*, 13-CV-174-IEG RBB, 2013 WL 3776927, at *1 n.2 (S.D. Cal. 2013)(noting that because the TCPA is "written in the disjunctive, plaintiffs can state a

4

claim under the TCPA by alleging the use of (1) an 'artificial or prerecorded voice' **or** (2) an ATDS.")(emphasis added).  It is thus evident that the issues to be decided in connection with the D.C. Circuit petitions will simply not be dispositive of this case, making a stay distinctly less useful.

Moreover, Bright House fails to fully explain in its motion the unpersuasive "capacity" argument that it hangs its hat on with regards to the D.C. Circuit petitions. This "capacity" argument relies upon the questionable assertion that the highly-sophisticated, computerized automated dialing systems in use today (most of which can make millions of calls in a month) supposedly lack the very basic "capacity" to "store or produce telephone numbers to be called, using a random or sequential number generator" because these systems are now programmed to generate lists of numbers using various criteria and to make calls from these lists.  To explain the absurdity of this argument, it should be noted that Plaintiff's counsel routinely retains an expert who can attest that this "random or sequential" functionality can be accessed in many autodialers with the use of as little as a single line of code!  The FCC regulation that the Defendant criticizes merely allows the programmability of these autodialing systems to be taken into account in determining the "capacity" of these systems.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7974 (2015) (clarifying a 2003 FCC order to explain that its conclusion that a device could meet the definition of an automatic telephone dialing system "when paired with certain software" was a rejection of any 'present use' or 'current capacity' test.").

To make this "capacity" argument more understandable in light of common experience, the Plaintiff believes that it is best explained by using an analogy to calculators.  Assume that a "calculator" was defined in a federal statute written the early 90's (when the TCPA was passed)

5

as "an electronic device that has the capacity for simple addition and subtraction." Assume also that this traditional calculator has been eclipsed today and that those groups of persons were formerly using traditional calculators to perform simple addition and subtraction are now using fancy graphing calculators to solve complex quadratic equations because the problems that need to be solved have become more complex. The analogous situation to the Defendant's "capacity" argument would be a denial by users of the modern graphing calculators that these calculators are in fact "calculators" as defined by the statute because they are no longer used for simple addition and subtraction, notwithstanding the fact that one can still type in "2 + 2" and receive the answer "4." Further, the analogous "calculator" regulation to FCC regulation that the Defendant expresses disapproval of would take into account the ability of the graphing calculator to be programmed (i.e., typing in "2 + 2") in determining whether it was in fact a "calculator" as defined by the statute. Obviously, these FCC regulations entirely comport with common sense and are likely to be upheld.

### B. There Will Be No Changes To The FCC's "Reassigned Phone Numbers" Regulations, And, Even If They Did Change, It Would Not Affect This Case

In its motion, Bright House asserts it has conducted a supposed "investigation" of the Plaintiff's claims and accuses the Plaintiff of "hav[ing] allowed allegedly "unwanted" calls to continue for many years in an effort to maximize Bright House Networks' TCPA liability" (Doc. 12, p. 2). These outrageous and infuriating allegations, made before the Plaintiff has had any opportunity for discovery to inquire into the nature[3] of Bright House's so-called "investigation," could not be further from the truth. Indeed, the Plaintiff, a veteran and former Marine, is

---

[3] Interestingly, Bright House alleges that the Plaintiff allowed the calls to continue for "many years," despite the Plaintiff's allegations that the calls started in February of 2015. It appears from this concession that Bright House may have called the Plaintiff much more than the approximate 600 times alleged, or, perhaps more likely, its "investigation" was perhaps not as accurate as one might expect.

prepared to testify that on numerous occasions he informed calling Bright House representatives that he was not Warren Harden and that his annoyance with these calls became so overwhelming that he resorted to using impolite language during later calls to get his point across.

While one of the purposes of Bright House's inaccurate characterization of this case was clearly to unfairly tarnish the reputation of the Plaintiff before the Court, another purpose was evidently an attempt to convince this Court that a ruling in the D.C. Circuit as to "reassigned phone numbers" might have relevance to the instant case. However, given the Plaintiff's assertion that Bright House was given notice it was reaching the wrong person on multiple occasions, there is little reason to believe that the D.C. Circuit ruling will have any effect on this case.

Indeed, similar to its "capacity" arguments, Bright House has also failed to discuss the significant shortcomings of the "reassigned telephone number" arguments that will be raised in the D.C. Circuit petitions. In particular, while Bright House criticizes the FCC rule allowing one "free" call after reassignment as too harsh, it fails to mention that courts, including the Eleventh Circuit, had been almost universally denying TCPA defendants any "grace period" at all prior to enactment of the FCC's 2015 TCPA rules. *See, e.g., Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242, 1251 (11th Cir. 2014)(rejecting an argument that a TCPA defendant should not be held liable because it was trying to reach a different person that the subscriber of the cellphone); *Soppet v. Enhanced Recovery Co.,* LLC, 679 F.3d 637, 641 (7th Cir. 2012)( Noting that a TCPA Defendant's customer's "authority to give consent, and thus any consent previously given, lapses when Cell Number is reassigned"); *Molnar v. NCO Fin. Sys., Inc.*, 13-CV-00131-BAS JLB, 2015 WL 1906346, at *5 (S.D. Cal. Apr. 15, 2015)(noting that "district courts in the Ninth Circuit have repeatedly declined to insulate telemarketers from liability for calling reassigned

7

numbers). In essence, Bright House is arguing that the D.C. Circuit will force the FCC to adopt regulations that are more lenient to TCPA defendants than the rules presently adopted by the FCC, which themselves are already slightly more lenient to such defendants than the holdings of the majority of courts that have independently examined the subject. This is absurd.

### IV. Bright House Has Failed to Show That Its Requested Stay Would Not Be Immoderate

Finally, the Defendant has also failed to explain why a stay founded on the D.C. Circuit Petitions would not be protracted in its duration and hence immoderate. *See Ortega Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) (disapproving of a stay as "immoderate" where the case it was contingent upon was "not progressing quickly"). Here, the Defendant has suggested absolutely no timeline for a decision in the D.C. Circuit Petitions. In *O'Hanlon*, the Northern District of California noted that the

> appeals of the FCC Omnibus Ruling present a broad-based challenge to the FCC's 138-page Declaratory Ruling and Order, and sweeps in issues not pertinent to this case. Awaiting a ruling by the D.C. Circuit would likely involve a substantial delay of this matter. A stay pending that litigation would suspend for an indefinite period of time Plaintiff's opportunity—and the opportunity of the putative class—to vindicate their rights before this Court.

*O'Hanlon*, 2016 WL 815357, at *5. Notably, there is also a Southern District of Florida case wherein a stay was denied on the grounds of the D.C. Circuit petitions partly out of concern that the stay would be "indefinite." *Mancini*, 2016 WL 1273185, at *1 (S.D. Fla. 2016) (noting that "[a]ny stay would be indefinite and solely in the interests of judicial economy, which the Supreme Court has found to be insufficient justification for a stay pending a similar proceeding"); *Lathrop*, 2016 WL 97511, at *4 (N.D. Cal. 2016)(denying a stay while expressing concern that the D.C. Circuit proceedings could "extend for an indeterminate length of time").

**V.** **Conclusion**

For the forgoing reasons, the Defendant's motion for stay should be denied.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on this 26th day of April, 2016, the foregoing was served using the CM/ECF system on the following: chris.roach@arlaw.com, eric.partlow@arlaw.com;

          Respectfully submitted,

          */s/William Peerce Howard*
          William Peerce Howard, Esquire
          Florida Bar Number:  103330
          Amanda J. Allen, Esquire
          Florida Bar Number:  0098228
          The Consumer Protection Firm
          210-A South MacDill Avenue
          Tampa, FL 33609
          Telephone: (813) 500-1500
          Facsimile: (813) 435-1269
          Billy@TheConsumerProtectionFirm.com
          Amanda@TheConsumerProtectionFirm.com
          Counsel for Plaintiff

          STEPHEN J. STANLEY, ESQ.
          Attorney & Counselor at Law
          Florida Bar No. 076082
          412 East Madison Street, Suite 1100
          Tampa, FL 33602
          Telephone: (813) 226-2727
          Facsimile:  (813) 200-1013
          stephenjstanley@yahoo.com
          Counsel for Plaintiff