IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

STEPHAN H. SLIWA,

    Plaintiff,

v.

BRIGHT HOUSE NETWORKS, LLC and
ADVANCED TELESOLUTIONS, INC.,

    Defendants.

Case No. 2:16-cv-00235-FtM-29MRM

## MOTION TO COMPEL ATS TO PRODUCE DISCOVERY

Pursuant to Fed. R. Civ. P. 37(a)(3) and Local Rule 3.04, Plaintiff, Stephan Sliwa, hereby move this Court to compel Defendant, Advanced Telesolutions Inc. ("ATS") to produce documents related to the policies and procedures at issue, communications with co-defendant Bright House Networks LLC ("BHN") relevant to this action, and call data reflecting robocalls to the class and related account notes. In support thereof, Plaintiff states:

**I.     INTRODUCTION AND BASIS FOR MOTION**

This case involves incessant wrong-number robocalls to Plaintiff, wherein Defendants attempted to collect money not owed by the Plaintiff and the putative class members ("Class"). *See* ECF No. 46 – Amended Complaint.

BHN make some debt collection calls but also hired ATS to make calls for it. As part of its services for BHN, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See Exhibit 1* transcript of BHN Rule 30b(6) witness at 138:14-16 and 141:6-8 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

████████████████████████████████████████████████████████████ *Id.* Both the ██████████████████████████ would identify the calls to wrong numbers or requests to cease contact. For example, the call log ATS produced for the calls to Plaintiff contain result descriptions such as ████████████████████ that would allow a search of call records for similar notations. *Exhibit 2* (redacted call log). The log also reveals that calls continued despite ATS noting the accounts as ████████████████████. *Id.*

As of the filing of this motion and after months of requests for supplementation, ATS entire document production consists of only two documents relating to Plaintiff. It has not produced as single requested communication with co-defendant, has not produced any documents relating to any practice or policy for making the calls at issue or reporting the wrong number/cease contact requests to BHN, and has not produced any class call data or the related account notes. It has also failed to produce a privilege log to support its objections that some documents may be subject to a privilege.

Without this relevant data, Defendants will likely argue that Plaintiff cannot ascertain the classes without the very documents they themselves are withholding,[1] which includes the data necessary to identify all calls made to the Class, including calls after notations that the numbers requested Defendants to cease contact or that they were calling the wrong number, and the related account records. Failure to produce these records will unfairly prejudice Plaintiffs' ability to present comprehensive evidence of their common circumstances with the Class and the common practices that Defendants took when it robocalled them. *See Whiteamire Clinic, P.A., Inc. v. Quill Corporation*, 2013 U.S. Dist. LEXIS 136819 at *9 (N.D. Ill. Sept. 24, 2013) (TCPA class action)

---

[1] Plaintiff anticipates filing a motion to compel against BHN as well as it is also withholding the ████████████████████

("the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified."). If Defendants are permitted to withhold this key information, Plaintiff will not have the evidence necessary to comprehensively preempt Defendants' arguments.

## II.    LEGAL AUTHORITY

The Supreme Court long ago recognized that plaintiffs are entitled to discovery relevant to class certification. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, n.13 (1978) ("discovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation."). Thus, "[d]iscovery into issues relevant to class certification is warranted and permissible." *Griffith v. Landry's, Inc.*, 2015 U.S. Dist. LEXIS 138291, * 5-6 (M.D. Fla. 2015). *See also Herrera v. JFK Med. Ctr., L.P.*, 648 Fed. Appx. 930, 936 (11th Cir. 2016) (reversing decision to strike class allegations because "discovery is needed to determine whether common issues predominate over any individualized questions."); *Sewell v. D'Alessandro & Woodyard*, 2011 U.S. Dist. LEXIS 38664, *8-9 (M.D. Fla. Mar. 30, 2011) (granting motion to compel interrogatory asking defendant to identify class members, stating "[t]he purpose of class discovery is to determine who constitutes the members of the class."); *Dillon v. Bay City Constr. Co.*, 512 F.2d 801, 804 (5th Cir. 1975) ("the plaintiffs were entitled to discovery which would bear on the always troublesome questions of whether this was or ought to be considered a class action"); *International Woodworkers of America, etc. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981) ("it is essential that a plaintiff be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives.")

The "strong policy among the federal courts is to 'allow discovery relevant to determining

whether the requirements of Rule 23(a) are satisfied and whether the action is maintainable under one of the categories listed in Rule 23(b).' 5 Moore's Federal Practice - Civil § 23.85 (2010). A preemptive assessment as to whether Rule 23(a) thresholds and Rule 23(b) requirements are met, without the benefit of targeted discovery and in a contentious case such as this, would clearly be an abuse of this court's discretion." *Hughes v. Greenetrack, Inc.*, 2010 U.S. Dist. LEXIS 147784, *5 (N.D. Ala. 2010).

Courts hearing TCPA actions have routinely ordered the production of class related discovery identifying the class members and the calls that Defendant made to them. For instance, in *Martin v. Global Mktg. Research Servs.*, the Middle District of Florida granted a motion to compel in a TCPA case and ordered the defendant to identify, among other things, the "names, telephone numbers, and dates called" from its database. 2015 U.S. Dist. LEXIS 140530, *12 (M.D. Fla. 2015). The Court held:

> "this interrogatory is tailored to elicit information that will bear on class certification. GMRS's claim of undue burden, in its response brief, on the ground that the information requested is 'not readily available in any existing data report' is not well-taken. See Doc. No. 66, at 7 ¶ 15; cf. *Nowak v. Lexington Ins. Co.*, No. 05-21682-CIV-MORENO, 2006 U.S. Dist. LEXIS 92389, 2006 WL 3613764, at *3 (S.D. Fla. June 12, 2006) (rejecting an argument that discovery requests were unduly burdensome when they could not "be gathered in any manner except manually going through each relevant file," and declining to permit a party to "argue undue burden and be free from discovery obligations by retaining an outmoded filing system"). The interrogatory is targeted to elicit information potentially bearing on the ascertainability, numerosity, commonality, and typicality requirements of class certification. The information may also be relevant to the proper dissemination of class notice."

*Id.* at 13; *see also id* at *16 (ruling that the defendant's privacy concerns were "far outweighed by both Plaintiffs' need to discover the identities of these individuals or entities to pursue their claims and enforce their rights under the TCPA for the relevant class period.")

Similarly, in *Thrasher v. CMRE Fin. Servs.*, 2015 U.S. Dist. LEXIS 34965 (S.D. Cal. 2015),

4

the court granted a motion to compel in a TCPA case seeking an "outbound call list" identifying the cell phone numbers it called and the dialing equipment used for each call. *Id.* at *3-4. The court rejected the defendant's arguments about privacy and burden and ordered the defendant to produce its records because "the court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements." *Id.* at *4; *see also See Ossola v. Am. Express Co.*, 2015 U.S. Dist. LEXIS 117531, *23 (N.D. Ill. 2016) (ruling a TCPA case that "call data is relevant, and thus produced as standard practice" where the defendant is the alleged dialer.); *Golan v. Veritas Entm't, LLC*, 2016 U.S. Dist. LEXIS 138103, *6 (E.D. Mo. 2016) (TCPA case granting motion to compel "electronic list of all people illegally called by Defendants in this matter" because "the discovery requested is needed to determine issues of typicality and commonality in class certification."); *In re Collecto, Inc.*, 2016 U.S. Dist. LEXIS 92619, *4-5 (D. Mass. 2016) (TCPA case granting motion to compel because "Collecto's response may indicate whether the plaintiffs can effectively use the call logs and FACS database to identify a universe of potential class members, which is an obvious prerequisite for any motion for class certification[.]")

Courts have ordered this discovery even in the "wrong number"/"do not call" type TCPA cases that Plaintiff brings here. For instance, in *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276 (N.D. Cal. 2015), the court sanctioned a defendant in a TCPA case for concealing "call detail records that would identify members of the class that received *wrong number calls* from debt collectors" (emphasis added), and instead producing only "account notes from its database that provides information in an undelimited format." *Id.* at 286-287. In *Breda v Cellco Partnership*, 16 –c-11512-DJC (D. Mass. September 5, 2017), which is also a wrong number case, the court order production within ten days of "…list of calls where those called pressed 2; logs concerning those

calls; and recordings, for calls from July 1, 2012 to September 1, 2017.")

Another wrong number case, *Meredith v. United Collection Bureau, Inc.*, 2017 U.S. Dist. LEXIS 56783 (N.D. Ohio 2017), is particularly instructive. The *Meredith* court first held that the querying and production of data from a database is a common discovery practice.

> "Courts have long recognized that defendants may be required under the Federal Rules to create computer programs to search an existing database for relevant information. See *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 1995 U.S. Dist. LEXIS 16355, 1995 WL 649934, at *2 (S.D.N.Y. Nov. 3, 1995) ("The law is clear that...the producing party can be required to design a computer program to extract the data from its computerized business records, subject to the Court's discretion as to the allocation of the costs of designing such a computer program.").

Numerous cases are in accord with *Meredith*. See e.g. *Apple Inc. v. Samsung Electronics Co. Ltd.*, 2013 U.S. Dist. LEXIS 116493, 2013 WL 4426512, at *2-3 (N.D. Cal. Aug. 14, 2013) ("Courts regularly require parties to produce reports from dynamic databases, holding 'the technical burden...of creating a new dataset for the instant litigation does not excuse compelling production.'") This is true even when the database discovery is difficult and time consuming to produce. *See, e.g., Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006) (allowing ESI discovery where producing party claimed it would take eight full days of engineering time to produce the data that the government sought); *Mervyn v. Atlas Van Lines. Inc.*, 2015 U.S. Dist. LEXIS 144376, 2015 WL 12826474, at *6 (N.D. Ill. Oct. 23, 2015) (requiring production even where producing party claimed it would take a week to create the script, a week to run the script, and a week to check the results).

Thus, when faced with the plaintiff's request for call data regarding wrong number calls, the *Meredith* court overruled the defendant's burden objections and ordered the defendant to extract the wrong number call information from its database:

> "Defendant must, therefore, either write the program that would produce the class data of wrong number calls and associated account notes for the class period or produce the relevant portions of its database to Plaintiff so that her expert, Jeffrey

> Hansen, can write the program and conduct the query himself. Should Defendant choose to write the program itself, Plaintiff must bear the reasonable cost of doing so. Should Defendant choose to give Plaintiff access to its database so that Hansen can write the program and perform the query, Defendant must provide sufficient information to Plaintiff so that Hansen can understand the database."

*Meredith v. United Collection Bureau, Inc.*, 2017 U.S. Dist. LEXIS 56783, *10 (N.D. Ohio 2017). Just like the *Meredith* court instructs, Defendants should either extract the data itself or produce the relevant portions of its database to Plaintiff's expert so that he can extract the relevant data. The latter option completely moots any objection of burden. *See Ossola,* 2015 U.S. Dist. LEXIS 117531 at *29-30 ("Amex's argument would appear to be mooted by Plaintiffs' offer to conduct most of the manual review themselves if Amex were to produce the underlying data."). In addition, since ATS sent daily call records along with an e-mail identifying wrong numbers, it can just produce what was sent to BHN and there is no need to query any database assuming the records sent to BHN are in usable format and the records contain any account notes associated with the wrong number/bad number or cease contact disposition notes.

The Eastern District of Michigan recognized a need to allow class discovery, even in light of potential issues at class certification in *Key v. Integrity Surveillance Solutions, Inc.*, 2015 U.S. Dist. LEXIS 163929 (E.D. Mich. 2015), where it granted a motion to compel in a TCPA case and rejected the defendant's argument that the plaintiff should be denied discovery tailored to identify the class in light of its arguments that the class is not ascertainable. The court held:

> "Integ's reliance on Balschmiter, Jamison, and Vigus is misplaced. These cases were decided following complete class discovery and their holdings have been generally disagreed with by other courts. Courts routinely certify TCPA class actions. Simply because three courts have denied class certification in TCPA cases does not warrant dismissal of this case or allow Integ to skirt its obligations to respond in full to Plaintiffs' class discovery.

*Id.* at *8-9. The *Key* court granted Plaintiff's motion to compel and ordered defendant to produce,

among other things, "a report or spreadsheet containing Integ's phone records during the relevant period of time for calls made to the phone numbers belonging to Plaintiffs and similarly situated consumers." *Id.* at *10. See also *Lopez v. Halsted Financial Services, LLC et al.*, Case No. 1:16-cv-02539 (N. D. Ill. Dec. 16, 2016), *Exh. 3* ("But at this stage of the case, Plaintiff is entitled to relevant, class-related discovery in order to support his class certification motion. And Defendants are free to use that same data to argue against the class certification motion. It will be up to the District Judge—not Halsted—to determine whether the call data supports Plaintiff's class certification request or Defendants' contention that the proposed class is overly broad and that Plaintiff is not an appropriate class representative.); *Gilman v. ER Solutions,* 2012 U.S. Dist. LEXIS 190602 at *7 (W.D. Wash. Feb. 03, 2012) ("Class certification cannot fairly be evaluated without information on whether others received automated calls to which they did not expressly consent, and Plaintiffs have no way to gather this information aside from the discovery requests [Helloworld] opposes."); *Donnelly v. NCO Financial Sys.,* 263 F.R.D. 500, 504 (N.D. Ill. 2009) (ruling that "discovery aimed at ascertaining a potential class list is proper" and ordering Defendant to produce records of calls to class members in TCPA action); *Stemple v. QC Holdings, Inc.*, No. 12-cv-1997, 2013 U.S. Dist. LEXIS 99582 at *6 (S.D. Cal. June 17, 2013) ("A request for an outbound dial list in a TCPA action is relevant to class certification issues, such as 'the number and ascertain ability of potential class members."); *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 13cv1556, 2014 U.S. Dist. LEXIS 110162 at *5 (S.D. Cal. June 12, 2014) ("the outbound dial list is relevant to the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a), and is therefore discoverable."); *Legg v. Am. Eagle Outfitters, Inc.,* No. 14-cv-61058-BLOOM/VALLE, 2014 U.S. Dist. LEXIS 164789, at *2 (S.D. Fla. Nov. 21, 2014) ("text messages sent …. after a "STOP" request are relevant discovery on whether a class is ascertainable and to class factors such as

numerosity, typicality and commonality."); *Ung v. Universal Acceptance Corporation*, 15-cv-00127-RHK-JJK, ECF No. 38, *Exh. 4* (Dist. Minn. March 21, 2016) (granting motion to compel production of "telephone call data," the "complete names of call recipients," and the "complete phone numbers" of the call recipients in a TCPA case); *O'Shea v. Am. Solar Solution, Inc.,* 2016 U.S. Dist. LEXIS 23420 at *8 (S.D. Cal. Feb. 18, 2016) ("these requests generally concern the total number of call recipients and the total number of phone calls made to them. [citation omitted]. This information is relevant both to class certification and to the merits of the case.").

In light of the authorities cited above, the Court should recognize the relevance of the discovery at issue and compel ATS' production.

### III. A SAMPLE OF THE CLASS CALL DATA IS NOT SUFFICIENT

ATS has suggested it would consider producing only a sample of the class data, but has not explained why the class discovery should be limited to a sample. Plaintiff submits that a sample is not acceptable for the following reasons because (1) A sample does not alleviate any purported burden; (2) Plaintiff needs accurate class discovery for both the class motion and mediation; and (3) ATS should not be trusted to produce a sample given the history of related litigation.

First, if ATS is querying its database for the call and account records, the only difference in the query between a sample and the class period is the date range. The burden is the same, regardless of data range. That a sample may be slightly quicker in *computer processing time* is immaterial as there is no need for any employee to monitor the search.

Second, Plaintiff is preparing to file the class certification motion and requires the class records to satisfy Rule 23. Although ATS asserts that Plaintiff may be able to extrapolate class size from a sample, there is no guarantee the Court will accept any such extrapolation.

In addition, a sample would not reveal the calls after a stop request or wrong number notation. For example, assuming there is a wrong number and cease contact record on January 5 2014 for the number (123) 456-7891. ATS then produces the call records for March through August 2014, which shows dozens of calls to (123) 456-7891, but without the January 2012 record, Plaintiff would not know that the subsequent calls between March and August 2014 to (123) 456-7891 would be actionable and would not be able to extrapolate because Plaintiff would miss any wrong number notation relating to (123) 456-7891.

Third, ATS cannot be trusted to produce a sample in this case. In *Lanteri v CPA*, 13-cv-01501-WTL-DKL (S.D. Ind.), CPA,[2] which is ATS' sister company, demonstrated a history of playing fast with the class data.[3] In response to a motion to compel, CPA asserted that there was no need to provide the class data to plaintiff because the Stop Texting Class consists of "approximately 5,400 accounts on which a text to 'stop' was received." *Exhibit 5* excerpt of Defs. Opp. to Plf's Mtn. to Compel, Dkt. 53, p. 4 (Jun. 4, 2014). After the court compelled the actual call records, it was revealed that CPA grossly undercounted the call data and there were 7,291 accounts that were sent a total of 11,125 messages after a "stop" message as described in the proposed Stop Texting Class definition.

In the same case, CPA opposed a separate motion to compel where it asserted there was no need to examine third party calling records when it ran an agreed search that "…revealed eleven accounts (out of the over 350,000 accounts) on which CPA's records show it placed calls later than the bankruptcy or cease date noted in the account information." *Exhibit 6* excerpt of CPA's

---

[2] Plaintiff will be seeking call records from CPA as BHN recently revealed that it was also making calls on behalf of BHN.
[3] Mr. Penn who is lead counsel for ATS in this case is also lead counsel for CPA in *Lanteri*.

10

Objection ECF 99 p. 4. After the court overruled the objection, the CPA produced a list containing 4,340 individuals who were called after a Bankruptcy notation. *Exhibit 7* excerpt of ECF 153 CPA's Opposition to Class Certification p.5. Production of the class call data in this case will prevent similar discovery abuses.

Finally, ATS has cited a single case where the magistrate limited the TCPA class data to a sample. *See Tillman v. Ally Financial Inc.*, No. 2:16–cv–313, 2017 WL 73382, *6 (M.D. Fla. Jan. 6, 2017) (Mirando, J.) ("As stated above, Plaintiff does not need a complete list of putative class members but sufficient evidence of individual putative class members for class certification under Rule 23. . . . As a result, the Court will limit the scope of Plaintiff's discovery requests to evidence necessary to certify a class under Rule 23.").

ATS fails to refute the dozens of opinions requiring production of the class data for the entire class period cited above, including cases from this district. It has also failed to explain why a sample is appropriate in this case where Plaintiff needs the class data for mediation and ATS has the ▓▓▓▓ which demonstrate that the call records can easily be compiled if ATS does not have the reports that were sent as ATS sends such reports to BHN daily. As such, this case is inapposite from *Tillman* where *Ally* argued it would be a Herculean effort to search its call records.

IV. **DISCOVERY REQUEST AT ISSUE**

    A. **Documents Related to the Call Records;**

After objecting to nearly every discovery request as set forth in *Exhibit 8*, Plaintiff requested ATS supplement its discovery responses. *See Exhibit 9*, e-mails between Plaintiff counsel and ATS' counsel.

As set out below, Document request 4 and 5 requests the database for calls without consent or after instructions to stop calling. *See* ATS Response to request for production attached

hereto as *Exhibit 8*. Unlike the numerous cases that required TCPA defendants to export such data tables, ATS ███████████████████████████████████████ ██████████ and Plaintiff's database expert will combine them.

Similarly, as set out below, Requests number 9, 27 and 41 request "All communications, reports, or audits concerning Defendant's compliance with the TCPA, including ensuring it was not calling wrong numbers or calling numbers after the called parties made requests not to call them; All documents created by Defendant or for Defendant regarding statistics, studies, and reports concerning the use of telephone dialing systems, artificial voices, and/or prerecorded voices; All records of cease calling, stop, do-not-call, do-not-contact, wrong-number, wrong-person, or similar notations made during the relevant time period in this litigation."

ATS's ███████████████████████████████████ calls squarely fit within the above requests and once again this information should be readily available along with any other such compilations or reports related to these wrong numbers. Even if ATS no longer has the ████ ████████ in its possession, it still has the underlying call data and can export the respective portions of their databases for the class period or allow Plaintiff's database to export the data. *See e.g., Ossola*, 2015 U.S. Dist. LEXIS 117531 at *29-30 ("Amex's argument would appear to be mooted by Plaintiffs' offer to conduct most of the manual review themselves if Amex were to produce the underlying data.").

### B. The Discovery Requests for the Call Records and ATS Response

Plaintiff's requests and ATS's objections as to 4, 5, 9, 27 and 41 are as follows:

4. The complete database tables showing the date, time, disposition, and other call details for (1) All persons in the United States (2) to whose cellular telephone number (3) Advanced Telesolutions placed a non-emergency telephone call (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) where Advanced Telesolutions did not have express consent to call said cellular telephone

number. If you contend that a response to this interrogatory is not possible, please explain why with specificity. If you do not know and cannot determine which calls were made to cellular telephone numbers, provide the database as if the word "cellular" was omitted from this request, and Plaintiff will determine which calls were made to cellular telephone numbers.

**RESPONSE: Defendant objects to this request as overly broad and vague in regard to the scope of the request. Defendant objects to this request as overly broad and burdensome because the identity of each potential class member is premature and improper, and therefore not proportional to the needs of the case. Moreover, the request is not reasonably tailored to the needs of the case as it is not reasonable tailored to the issues of liability, damages, or class issues. Defendant additionally objects on the grounds that the information contains personal identifiers of persons not a party to this lawsuit without their knowledge or consent. To the extent it is for identity of the class, the general rule is that information related to the identity of potential class members is deferred until the ruling on the motion for class certification.** *Federal Judicial Center's Manual for Complex Litigation* **(4th Ed.), §21.14. Precertification discovery is instead addressed to the named parties. It is common for Courts to allow class-wide discovery on the certification issue and postpone class-wide discovery on the merits until after ruling on the class certification motion.** *Washington v. Brown & Williamson Tobacco Corp.***, 959 F.2d 1566, 1571 (11th Cir. 1992). When the plaintiff fails to make a** *prima facie* **showing that the proposed class meets the requirements of Rule 23, the trial court may deny discovery of the alleged class members.** *Mantolete v. Bolger***, 767 F.2d 1416, 1423-24 (9th Cir. 1985). Defendant further objects because Plaintiff is not entitled to discovery of the identities of putative class members until the court has certified or, at a minimum, conditionally certified a class.** *Stephens v. Erosion Containment Mgmt.***, 2008 WL 2157095 (M.D. Fla. 2008) (denying motion to compel information relating to similarly situated individuals because "[this] type of discovery is suitable after step one is completed and conditional certification is made");** *Rosen v. J.M. Auto, Inc.***, Case No. 0:07-cv-61234-WPD at \*6-7 (S.D. Fla. Dec. 22, 2008); See** *Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351- 53 (1978) (rejecting pre-class certification discovery of identifying information of putative class members when such information is sought merely for the purpose of identifying such individuals for notice of a class action). "Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification."** *Dziennik v. Sealift, Inc***., NO. 05-CV-4659, 2006 WL 1455464 (E.D.N.Y., May 23, 2006) (collecting supporting cases).**

5. The complete database tables showing the date, time, disposition, and other call details for (1) All persons in the United States (2) to whose cellular telephone number (3) Advanced Telesolutions placed a non-emergency telephone call (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) after that person had instructed Advanced Telesolutions to cease calls to that number. If you contend that a response to this interrogatory is not possible, please explain why with

specificity. If you do not know and cannot determine which calls were made to cellular telephone numbers, provide the database as if the word "cellular" was omitted from this request, and Plaintiff will determine which calls were made to cellular telephone numbers.

**RESPONSE: Defendant objects to this request as overly broad and vague in regard to the scope of the request, and otherwise incorporates its objection to Request No. 4. Defendant objects to this request as overly broad and burdensome because the identity of each potential class member is premature and improper. This Request seeks information that is not proportional to the needs of this case. The general rule is that information related to the identity of potential class members is deferred until the ruling on the motion for class certification.** *Federal Judicial Center's Manual for Complex Litigation* **(4th Ed.), §21.14. Precertification discovery is instead addressed to the named parties. It is common for Courts to allow class-wide discovery on the certification issue and postpone class-wide discovery on the merits until after ruling on the class certification motion.** *Washington v. Brown & Williamson Tobacco Corp.*, **959 F.2d 1566, 1571 (11th Cir. 1992). When the plaintiff fails to make a** *prima facie* **showing that the proposed class meets the requirements of Rule 23, the trial court may deny discovery of the alleged class members.** *Mantolete v. Bolger*, **767 F.2d 1416, 1423-24 (9th Cir. 1985).**

**Defendant further objects because Plaintiff is not entitled to discovery of the identities of putative class members until the court has certified or, at a minimum, conditionally certified a class.** *Stephens v. Erosion Containment Mgmt.*, **2008 WL 2157095 (M.D. Fla. 2008) (denying motion to compel information relating to similarly situated individuals because "[this] type of discovery is suitable after step one is completed and conditional certification is made");** *Rosen v. J.M. Auto, Inc.*, **Case No. 0:07-cv-61234-WPD at *6-7 (S.D. Fla. Dec. 22, 2008); See** *Oppenheimer Fund, Inc. v. Sanders*, **437 U.S. 340, 351- 53 (1978) (rejecting pre-class certification discovery of identifying information of putative class members when such information is sought merely for the purpose of identifying such individuals for notice of a class action). "Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification."** *Dziennik v. Sealift, Inc.*, **NO. 05-CV-4659, 2006 WL 1455464 (E.D.N.Y., May 23, 2006) (collecting supporting cases).**

27. All documents created by Defendant or for Defendant regarding statistics, studies, and reports concerning the use of telephone dialing systems, artificial voices, and/or prerecorded voices.

**RESPONSE: Defendant objects to this request as it seeks documents which are irrelevant to the issues within the complaint and defenses in this case. In addition, this request seeks documents which are confidential and/or protected by the attorney-client privilege or work product doctrine. Subject to and without waiving said objections, Defendant states**

**none.**

41. All records of cease calling, stop, do-not-call, do-not-contact, wrong-number, wrong-person, or similar notations made during the relevant time period in this litigation.

**RESPONSE: Defendant incorporates its objections to Requests Nos. 3, 4 and 5. Defendant objects to this request as overly broad and vague in regard to the scope of the request. In addition, the request seeks information or documents which are confidential. Defendant objects to this request as overly broad and burdensome because the identity of each potential class member is premature and improper. This Request seeks information that is not proportional to the needs of this case. The general rule is that information related to the identity of potential class members is deferred until the ruling on the motion for class certification.** *Federal Judicial Center's Manual for Complex Litigation* **(4th Ed.), §21.14. Precertification discovery is instead addressed to the named parties. It is common for Courts to allow class-wide discovery on the certification issue and postpone class-wide discovery on the merits until after ruling on the class certification motion.** *Washington v. Brown & Williamson Tobacco Corp.*, **959 F.2d 1566, 1571 (11th Cir. 1992). When the plaintiff fails to make a** *prima facie* **showing that the proposed class meets the requirements of Rule 23, the trial court may deny discovery of the alleged class members.** *Mantolete v. Bolger*, **767 F.2d 1416, 1423-24 (9th Cir. 1985).**

**Defendant further objects because Plaintiff is not entitled to discovery of the identities of putative class members until the court has certified or, at a minimum, conditionally certified a class.** *Stephens v. Erosion Containment Mgmt.*, **2008 WL 2157095 (M.D. Fla. 2008) (denying motion to compel information relating to similarly situated individuals because "[this] type of discovery is suitable after step one is completed and conditional certification is made");** *Rosen v. J.M. Auto, Inc.*, **Case No. 0:07-cv-61234-WPD at \*6-7 (S.D. Fla. Dec. 22, 2008); See** *Oppenheimer Fund, Inc. v. Sanders*, **437 U.S. 340, 351-53 (1978) (rejecting pre-class certification discovery of identifying information of putative class members when such information is sought merely for the purpose of identifying such individuals for notice of a class action). "Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification."** *Dziennik v. Sealift, Inc.*, **NO. 05-CV-4659, 2006 WL 1455464 (E.D.N.Y., May 23, 2006) (collecting supporting cases). Subject to and without waiving said objections, Defendant will produce nonprivileged and relevant documents regarding Plaintiff.**

ATS' objections ignore the fact that many of the cases cited above order personal identifiers be produced in order to establish certification is proper because defendants in TCPA cases routinely argue that the class cannot be ascertained. *See*, *e.g.*, *Green v. Monarch*

*Recovery Mgmt.*, 13-cv-418-SEB-MJD, 2014 U.S. Dist. LEXIS 57104 at *7, *9 (S.D. Ind. April 24, 2014) (ordering defendant to produce a spreadsheet containing "the names, addresses, and social security numbers of 2,400 people."); *Jones v. Nat'l Council of YMCA*, No. 09 C 6437, 2011 U.S. Dist. LEXIS 36087 at *11-*12 (N.D. Ill. Mar. 31, 2011) ("Discovery of the employees' names, addresses, telephone numbers and e-mail addresses is discoverable information relevant to Plaintiffs' claims."); *Wiginton v. CB Richard Ellis*, No. 02 C 6832, 2003 U.S. Dist. LEXIS 16266 at *13 (N.D. Ill. Sept. 15, 2003) ("Defendant is therefore ordered to produce the list of female employees as requested by Plaintiffs."); and *see Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011) ("a court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class.").

ATS' objections also argue that a class list is improper and cites to *Oppenheimer Fund, Inc. v. Sanders*, but in that case the party was not seeking the information for class certification, like Plaintiff is doing here, but rather was seeking the information to facilitate the sending of notice. 437 U.S. 340, 350-352 (1978). So it is no surprise that a class list for sending notice was not required before certification. In this case, ATS cannot dispute that the call data sought is relevant to class certification, and Plaintiff has shown the data will establish: (i) that the class and each subclass exist (the call and account notes will show there are persons who received calls under the circumstances in the class and subclass definitions), (ii) that the class and each subclass are sufficiently numerous (that there are enough such persons in each), and (iii) that they share sufficient factual similarity to meet the commonality requirements of Rule 23.

Finally although ATS asserted it does not have documents regarding statistics, studies, and reports concerning the use of telephone dialing systems, artificial voices, and/or prerecorded voices, Plaintiff subsequently learned that it in fact ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ as set out above such that it should be ordered to supplement its response.

### C. Policy And Procedure Discovery

40. All documents identifying or describing any policies or procedures you maintained for purposes of recording do-not-call requests, or wrong number notifications and honoring do-not-call requests, and wrong number notifications.

**RESPONSE: Defendant objects to this request as it is vague, ambiguous and seeks documents which are proprietary and/or confidential. Further, this request is objectionable as it seeks a narrative more appropriate for a deposition. Subject to and without waiving said objections, Defendant will provide testimony relating to its policies and procedure for compliance with the TCPA.**

ATS's boilerplate objections are baseless. As an initial matter, the parties agreed to a protective order that already addresses ATS's concerns (See *Exhibit 10*), so any objection that the documents are confidential or propriety is misplaced. In addition, ATS does not get to ignore a request for production by stating it will provide testimony to the subject especially when Plaintiff requires the underlying documents to prepare for the deposition.

16. All manuals, memoranda, instructions, and any and all other documents concerning your policies, practices, and procedures regarding "cease calling," "stop," "do-not call," "do-not-contact," "wrong-number," "wrong person," and any similar notifications.

**RESPONSE: Defendant incorporates its objections from Request No. 15. Defendant objects to this request as it is overly broad, unduly burdensome and unlimited in time. The request is not proportional to the needs of this case pursuant to F.R.C.P 26(b)(1). Subject to and without waiving said objections, Defendant states none.**

Although ATS asserted that it had no documents, its objection came before the deposition of BHN where BHN was admitted that ATS ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

███████████████████████████. These emails are responsive, as well as the documents relating to the practice of sending these e-mails.

## III. CONCLUSION

ATS has only produced two documents in this litigation. The discovery that Plaintiff seeks is indisputably relevant to the merits, but more importantly at this time-sensitive juncture, to issues of class certification as well as mediation. ATS has not articulated any valid objections justifying refusal to produce the discovery Plaintiff seeks. Therefore, Plaintiff respectfully requests that this Court enter an order compelling ATS to provide complete and substantive responses to the aforementioned Requests for Production, including an Order compelling compliance with:

(1) Document requests 4 and 5, which request the database for calls without consent such as wrong number or bad phone noted calls or after instructions to stop calling.
(2) Document request number 9, which requests "All communications, reports, or audits concerning Defendant's compliance with the TCPA, including ensuring it was not calling wrong numbers or calling numbers after the called parties made requests not to call them;
(3) Document request number 27, which requests "All documents created by Defendant or for Defendant regarding statistics, studies, and reports concerning the use of telephone dialing systems, artificial voices, and/or prerecorded voices";
(4) Document request number 41, which requests "All records of cease calling, stop, do-not-call, do-not-contact, wrong-number, wrong- person, or similar notations made during the relevant time period in this litigation."

### Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), attorneys for Plaintiff hereby certify that despite conferring in a good faith effort with ATS, through counsel, to resolve the issues raised in this motion, Plaintiff has been unable to do so.

Dated: September 13, 2017

Respectfully submitted,

s/ *Keith J. Keogh*
Keith J. Keogh (FBN 126335)
Amy L. Wells, *pro hac vice* pending
KEOGH LAW, LTD
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
312-726-1092
312-726-1093 (fax)
Keith@KeoghLaw.com
Awells@KeoghLaw.com

William Peerce Howard
(FBN 0103330)
Amanda J. Allen (FBN 0098226)
The Consumer Protection Firm
210-A South MacDill Ave.
Tampa, Florida 33609
(813) 500-1500
Billy@TheConsumerProtectionFirm.com
Amanda@TheConsumerProtectionFirm.com

*Attorneys for Plaintiffs and the Proposed Classes*

CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2017I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, who will send a notice of electronic filing to all counsel of record.

s/ *Keith J. Keogh*
Keith J. Keogh (FBN 126335)
KEOGH LAW, LTD