**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

|  |  |
|---|---|
| STEPHAN H. SLIWA, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BRIGHT HOUSE NETWORKS, LLC and ADVANCED TELESOLUTIONS, INC., <br><br> Defendants. | Case No. 2:16-cv-00235-JES-MRM |

## DEFENDANT BRIGHT HOUSE NETWORKS LLC'S
## MOTION FOR SETTLEMENT CONFERENCE

Defendant Bright House Networks, LLC ("BHN"), through its undersigned counsel, hereby moves pursuant to 28 U.S.C. § 473(b)(4)-(5) and Rule 16(a)(5) of the Federal Rules of Civil Procedure for the Court to refer this case to a settlement conference before a United States Magistrate Judge.

## I.     INTRODUCTION

BHN respectfully requests the Court to order the parties to engage in a settlement conference before a magistrate judge in light of (1) several recent decisions that substantially impact the merits of Plaintiff's Telephone Consumer Protection Act ("TCPA") claim, (2) Plaintiff's counsel's failure to keep Plaintiff apprised of settlement negotiations and other facts pertinent to settlement, and (3) most importantly, Plaintiff's counsel's use of an unethical and unenforceable term in their engagement letter to prohibit Plaintiff from settling this case on an individual basis—which has rendered settlement discussions, including private mediation, futile.

First, this Court denied class certification in *Tillman v. Ally Financial*, No. 2:16-CV-313-FTM-99CM, 2017 WL 7194275, at *1 (M.D. Fla. Sept. 29, 2017), *reconsideration denied*, No. 2-16-CV-313-FTM-99CM, 2017 WL 8314651 (M.D. Fla. Nov. 20, 2017), a nearly identical putative TCPA class action.  Since the parties' unsuccessful attempt to mediate this case, Mr. Tillman chose not to appeal that decision, leaving it the law of this Court.  For the same reasons certification was denied in *Tillman* and other recent cases, certification will also be denied in this case.  In addition, in *ACA International v. Federal Communications Commission*, 885 F.3d 687, 692 (D.C. Cir. 2018), the D.C. Circuit vacated years of Federal Communications Commission ("FCC") rulings that improperly expanded the statutory language of the TCPA—rulings Plaintiff relied on in filing this lawsuit.  That controlling decision substantially eviscerates Plaintiff's TCPA claim,[1] another compelling reason for Plaintiff to consider settling this case on an individual basis.

Second, Plaintiff's deposition testimony establishes he was not informed of BHN's prior settlement offer until weeks after his counsel unilaterally rejected it.  His testimony also shows he was not informed that he may not succeed on his claims or that he would receive substantially less than Defendants already offered should the case proceed as a class action.  Plaintiff also was apparently erroneously led to believe that putative class members would have no right to pursue individual actions against BHN should he settle this case.

Third, Plaintiff believes he is bound by an unethical term in his engagement letter with class counsel that requires him to retroactively pay the *entirety of counsel's hourly fees*—presumably hundreds of thousands of dollars—should he accept an individual settlement against

---

[1] Defendants have numerous other dispositive defenses to Plaintiff's two substantive claims, including Plaintiff's tag-along FCCPA claim.  BHN addresses only the impact of *ACA International* in this Motion because of its significance and the fact that it was decided after the parties' private mediation.

his counsel's wishes.  As explained in the expert opinion of Joseph A. Corsmeier,[2] attached hereto, that provision is an unethical and unenforceable restraint on Plaintiff's control over settlement.

For these reasons, a settlement conference before a magistrate judge is necessary.  It is the only way the parties will be able to meaningfully discuss settlement of this action before all parties incur significant expense briefing class certification and dispositive motions.

## II.   BACKGROUND

Plaintiff is a veteran in his late sixties who is, unfortunately, being taken advantage of.  (Ex. 1 – Declaration of Ryan D. Watstein ("Watstein Dec.") ¶ 6, Ex. B (Expert Report of Joseph A. Corsmeier ("Expert Report")), Ex. 4 at 18:5–6, 107:10.)   In December 2015, he brought an individual action against BHN alleging that BHN purportedly violated the TCPA by calling Plaintiff in an attempt reach a BHN subscriber who previously owned the same cellular phone number.  (D.E. 1.)  Plaintiff's counsel later added Advanced Telesolutions, Inc. ("ATS") as a defendant and transformed the case into a putative class action, though Plaintiff did not sign the class action engagement letter until almost a year after his counsel asserted class allegations on his behalf.  (D.E. 36, 45.)

On August 28, 2017, BHN sent Plaintiff's counsel a letter conveying an opening offer of a confidential[3] sum to settle his individual claims against Defendants BHN and ATS.[4]  (Watstein Dec. ¶ 3).  BHN conveyed this offer—which would have been life-changing for Plaintiff and far

---

[2] BHN intends to use this expert opinion to show that neither Plaintiff nor his counsel are adequate for class certification purposes, but it will also help the Court understand why a settlement conference before a Magistrate Judge is necessary.

[3] Upon the Court's request, BHN will provide the dollar amount for *in camera* review or will, with the Court's approval, file the same under seal.

[4] In addition to his TCPA claim, Plaintiff brings a tag-along individual claim against BHN under the FCCPA.  For various reasons beyond the scope of this motion, that claim has no merit.

exceeded the amount he could hope to recover if a class were certified[5]—in attempt to avoid the significant defense costs it faced going forward.

Less than twenty-four hours—and in fact less than one business hour—later, Plaintiff's counsel rejected the settlement offer without a counter, noting Plaintiff was allegedly only interested in a "class-wide" settlement offer.[6]  (Watstein Dec. ¶ 4.)  In other words, a settlement that would be lucrative for counsel but would net Plaintiff less than Defendants had already offered.

On October 5, 2017, BHN deposed Plaintiff.  (Expert Report, Ex. 4.)  At deposition, Plaintiff testified he was not even made aware of BHN's prior settlement offer, which included a list of reasons why it made sense to resolve the matter on an individual basis, until mid-September 2017.  (*Id.*, Ex. 4 at 155:16–25, 157:14–158:2.)  That was *well after counsel rejected it* on Plaintiff's behalf, and *well after the September 6 expiration* of BHN's offer.

During his deposition Plaintiff also expressed he did not understand, presumably because he was not informed, that the putative class members could proceed with their claims if he settled on an individual basis.  (*Id.* at 156:10–19, 174:23–175:2.)  He also testified he did not understand that there were various reasons (explained in BHN's settlement offer letter) as to why he may not be successful with his case—reasons that have since come to pass with the *Tillman* and *ACA International* decisions (as well as two recent Circuit Court decisions issued in reliance on *ACA*

---

[5] Subject to infrequent exceptions in cases unlike this one, a review of the amounts awarded to named plaintiff(s) in other TCPA cases prosecuted by Plaintiff's counsel proves this to be true. (Expert Report, Ex. 4 at 167:5–171:21.)  At deposition, Plaintiff testified that he knew nothing of these awards or that they were routinely lower than the settlement offer conveyed by Defendants. (*Id.*)

[6] BHN's counsel conveyed the offer at 8:08 p.m. on August 28, and Plaintiff's counsel rejected it at 9:49 a.m. on August 29.  (Watstein Dec. ¶ 4.)  Plaintiff's counsel then told their client about it weeks later.

*International*).  (*Id.* at 156:21–57:13.)  In fact, he was not even aware that the D.C. Circuit was considering a challenge to the FCC's interpretation of the TCPA that would be binding in every Circuit and could substantially impact his likelihood of success on the merits—a decision that has since been issued in Defendants' favor.  (*Id.* at 157:10–13.)

Perhaps most importantly, Plaintiff could not accept Defendants' individual settlement offer—even though it was a "whole lot of money" to him—because a clause in his retention agreement requires him to *retroactively pay the entirety of class counsel's hourly fees* should he decide to settle against his lawyers' wishes (the "Settlement Restriction")—even fees incurred *more than a year before Plaintiff even signed the engagement letter*.  (*Id.* at 165:5–14, 173:17–74:13; *see also id.* at 163:24–164:2.)  Plaintiff stated he "don't have no money," is living on a "fixed income," and "couldn't afford [to purchase] another phone."  (*Id.* at 28:14–17, 68:18–20.) As such, he explained, he would never be able to pay his class counsel's hourly fees.  (*Id.* at 163:24–164:2.)  And with respect to the Settlement Restriction, Plaintiff testified: "<u>that's not right</u>" and "<u>I don't like it</u>."  (*Id.* at 163:4–165:19 (emphasis added).)

The following month, the parties attended a mediation session with Mediator Jay M. Cohen.  (Joint Status Report Regarding Mediation, filed December 12, 2017, D.E. 118, ¶ 1.)  Given the Settlement Restriction, Defendants were not optimistic that mediation before a private mediator would be successful.  And it ultimately was not, for reasons BHN would like to but cannot go into in this filing given the confidentiality rules applicable to the mediation.  (*Id*. at ¶ 2.)

Since mediation, (1) the plaintiff in *Tillman*, a nearly identical putative TCPA class action, decided not to appeal this Court's order denying class certification, and (2) the D.C. Circuit issued a decision in *ACA International*.  Even more recently—within the last couple weeks, in fact—two

5

Circuit courts issued decisions based on *ACA International*, both of which are favorable for Defendants here.

On April 25, 2018, BHN's counsel asked Plaintiff's counsel, in person, whether Plaintiff would reconsider individual settlement and about the prospect of attending a settlement conference in light of *ACA International* and *Tillman*. (Watstein Dec. ¶ 5.) Plaintiff's counsel rejected BHN's request out of hand, without speaking with Plaintiff. (*Id.*) In fact, Plaintiff's counsel only claimed to consult with their client about the prospect of a settlement conference after (a) BHN called Plaintiff's counsel and told them BHN intended to file this motion, and (b) Plaintiff's counsel saw BHN's ethics expert report (which highlighted Plaintiff's counsel's several ethical transgressions, including their several failures to inform Plaintiff about settlement discussions). (*Id.* ¶ 7.)

Given these facts—and in particular the unethical provision in the retainer agreement that prevents Plaintiff from even considering an individual settlement larger than he could recover if the case proceeds as a class action—BHN now moves this Court to order the parties to participate in a settlement conference with a Magistrate Judge.

### III.   ARGUMENT

### A.   This Court Has the Authority to Order a Settlement Conference.

Federal Rule of Civil Procedure 16(a)(5) provides that "[i]n any action, the court may order the attorneys . . . to appear before one or more pretrial conferences for such purposes as . . . facilitating settlement." The court "may require that a party or its representative be present or reasonably available by other means to consider possible settlement." Fed. R. Civ. P. 16(c)(1); *see also Slater v. Erin Capital Mgmt., LLC*, No. 17-61300-CIV, 2017 WL 6503980, at *1 (S.D. Fla. Dec. 11, 2017). Local Rule 9.03(a) flows from the Federal Rules and states: "Upon order by the presiding judge, any civil action or claim may be referred by the Court to a mediation conference, providing the action or claim has not already been arbitrated." Even though the parties

have already attended private mediation, this Court can and should order a settlement conference, for the reasons explained below.

**B.      Recent Decisions Substantially Reduce Plaintiff's Likelihood of Success.**

Since the parties attended mediation, precedent has developed that drastically impacts the viability of Plaintiff's case and merits the reinstatement of settlement discussions with Plaintiff. Specifically, the plaintiff in *Tillman* chose not to appeal this Court's decision denying class certification and the D.C. Circuit issued a controlling decision in *ACA International*.

1.      *Tillman* Precludes Certification of the Putative Class.

In *Tillman*, this Court denied certification of a putative class in a very similar "wrong number" TCPA case.  In that decision, the Court rejected a proposed class of persons who the defendant allegedly called without consent by searching the defendant's call records for disposition codes allegedly indicating a lack of consent (i.e. "wrong number" or "do not call" notations).  Like *Tillman*, this is not a typical TCPA case that involves mass telemarketing calls or blast faxes to random persons who never consented to receive calls or faxes in the first place, where class certification is often granted.  Rather, this case involves informational calls made **solely** to numbers provided by BHN's subscribers.  All such subscribers provided prior consent to receive calls from BHN both by giving their numbers to BHN in the first instance and agreeing to one of several versions of a subscriber agreement that conveyed express contractual consent to call such numbers for any reason.  Thus, individual issues—such as (1) who was the user of the phone at the time of the call, (2) whether that person was a BHN subscriber or a non-subscriber receiving a "wrong number" call, and (3) whether the BHN subscriber was legally entitled to and did in fact revoke consent—will predominate over common ones.  Indeed, even more so than in *Tillman,*

thousands of mini-trials would be required to ascertain the class in this case, meaning Rule 23's predominance requirement cannot be met and this matter cannot proceed on a class basis.[7]

> 2.   *ACA International* Substantially Reduces Plaintiff's Likelihood of Success on the Merits.

And with respect to the merits of Plaintiff's claims, the D.C. Circuit's recent landmark—and controlling[8]—decision in *ACA International* vacated the FCC's interpretations of the TCPA on which Plaintiff relied in filing this lawsuit. First, the D.C. Circuit specifically rejected the FCC's overbroad interpretation of the type of technology that constitutes an "automatic telephone dialing system" ("ATDS") and triggers liability under the TCPA. *ACA Int'l v. FCC*, 885 F.3d 687, 692 (D.C. Cir. 2018). Among other things, the court held that the FCC's determination that calling equipment qualifies as an ADTS based on "its potential functionalities" of dialing random or sequential numbers, *id.* at 695, was an "unreasonable, and impermissible, interpretation" of the TCPA. *Id.* at 697. The D.C. Circuit also rejected the FCC's interpretation of "which functions qualify a device as an autodialier," specifically vacating the FCC's prior findings that a predictive

---

[7] Other recent cases decided since this case was mediated compel the same result reached by this Court in *Tillman*. *See, e.g.*, *Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1035–41 (D. Nev. 2018) (denying certification of TCPA class because "individual issues . . . predominate and render the class action an inferior method to fairly and efficiently adjudicate the TCPA claims of the proposed members"); *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 674 (D. Md. 2017) (accord).

[8] The D.C. Circuit's rulings on the FCC's interpretations of the TCPA are binding outside of the D.C. Circuit under the Hobbs Act. *See GTE S., Inc. v. Morrison*, 199 F.3d 733, 743 (4th Cir. 1999) (holding that once cases are consolidated pursuant to § 2112(a), chosen circuit becomes "the sole forum for addressing challenges to the validity of the FCC's rules"); *see also, e.g.*, *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 467 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017), *cert. denied*, 138 S. Ct. 1284 (2018); *CE Design Ltd. V. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010) ("In passing the Hobbs Act, Congress vested the power of agency review of final FCC orders exclusively in the courts of appeals," which allows "uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress" to enforce the TCPA.); *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008).

dialer qualifies as an ATDS even if it does not generate random or sequential numbers, as the plain language of the statute requires. *Id.* at 701–703. The D.C. Circuit also set aside the FCC's "treatment of reassigned numbers as a whole," including (1) the one-call safe harbor (held to be arbitrary and capricious), and (2) the FCC's interpretation that a "called party" who can consent to calls is the actual recipient of a call, as opposed to the intended recipient. *Id.* at 708–708.

Here, the systems BHN and ATS used to make the calls at issue did not have the capacity to perform the two statutorily-defined functions of an ATDS: "to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers."[9] 47 U.S.C § 227(a)(1). This absolves Defendants of any liability for allegedly using an ATDS, one of the two bases of liability under the TCPA. *Id.* (imposing liability for using an ATDS or playing a recorded message without the called party's consent). This is the exact conclusion reached by the Third Circuit, the only circuit court to address the question of what functionalities render calling equipment an ATDS after *ACA International*:

> There can be little doubt [plaintiff] suffered great annoyance as a result of the unwanted text messages. But those messages were sent precisely because the prior owner of [plaintiff's] telephone number had affirmatively opted to receive them, not because of random number generation. The TCPA's prohibition on autodialers is therefore not the proper means of redress.

*Dominguez v. Yahoo, Inc.*, — F.3d —, 2018 WL 3118056, at *4 (3d Cir. June 26, 2018).

---

[9] The majority of FCC commissioners have also confirmed their support for an interpretation of the TCPA that relies on the plain language of the statute as to what constitutes an ATDS. *See, e.g., Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order* ("2015 FCC Order"), CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72, 30 FCC Rcd 7961 at *8074–77 (rel. Jul. 10, 2015) (A. Pai dissenting); *Id.* at 8087–90 (M. O'Rielly dissenting); *see also Stmt. of Comm. Brendan Carr on D.C. Circuit Decision in* ACA Int'l v. FCC, Mar. 16, 2018), available at https://docs.fcc.gov/public/attachments/DOC-349769A1.pdf (last visited 6/18/18).

And here, Defendants had the implicit and express contractual consent of the intended recipient—BHN's customer who provided the number at issue (on several occasions) and contractually agreed to receive calls on it. Thus, should the FCC clarify on remand that "called party" includes the intended recipient, Defendants will have *no* liability under the TCPA, even for calls that may have played a recorded message. *See id.* The FCC is poised to do this, as (1) it issued a notice and opportunity to comment (on May 14, 2018) on how to interpret "called party" in the wake of the *ACA International* decision,[10] and (2) the majority of the current FCC appears to agree that "called party" should be interpreted to include the intended recipient.[11]

Thus, *ACA International* drastically impacts the value of this case and could end up eliminating Defendants' potential liability entirely. As such, it is a compelling reason for the parties to revisit settlement—a reason Plaintiff is almost certainly unaware of.

### C.   A Conference Before a Magistrate Judge Is Necessary to Ensure a Meaningful Settlement Discussion.

Despite these new developments, which BHN believes preclude class certification and confirm that Plaintiff's claims will also fail on the merits, this case will be significantly expensive for all parties to litigate through class certification and summary judgment. It is for this reason that BHN tried to revisit settlement discussions by asking Plaintiff's counsel to agree to a conference to discuss individual settlement. As explained above, however, counsel immediately

---

[10] *Consumer and Gov't Affairs Bureau Seeks Comment on Interpretation of the TCPA In Light of The D.C. Circuit's ACA Int'l Decision*, FCC, May 14, 2018, available at https://docs.fcc.gov/public/attachments/DA-18-493A1.pdf (last visited 6/18/2018).

[11] 2015 FCC Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72, 30 FCC Rcd 7961 at *8077–81 (rel. Jul. 10, 2015) (A. Pai dissenting); *Id.* at 8094–95 (M. O'Rielly dissenting); *see also Stmt. of Comm. Brendan Carr on D.C. Circuit Decision in* ACA Int'l v. FCC, Mar. 16, 2018), available at https://docs.fcc.gov/public/ attachments/DOC-349769A1.pdf (last visited 6/18/18).

refused, without consulting with their client.[12]  Additionally—and as is also explained above and in the attached expert report—Plaintiff (1) has not be timely informed of BHN's settlement communications in the past, in violation of the Florida Rules of Professional Conduct, (2) does not understand the hurdles he faces on his substantive claims and at class certification, (3) does not understand that other class members may bring their own claims should he settle individually, and (4) does not understand that he will receive much less than BHN already offered if he is successful at getting a class certified.  Most importantly though, Plaintiff is also restrained by the unethical Settlement Restriction in his retention agreement with class counsel, which violates the Florida Rules of Professional Conduct.[13]  (*See generally* Expert Report.)

Absent judicial intervention, these issues create an impermeable barrier to meaningful settlement discussions.  Thus, BHN requests the Court order the parties to engage in a settlement conference before a Magistrate Judge.

## **CONCLUSION**

For the foregoing reasons, BHN respectfully requests that the Court order the parties to attend a settlement conference before a Magistrate Judge.  Without such a conference, the parties will not have a meaningfully opportunity to discuss settlement, Defendants will needlessly incur significant defense costs, and Plaintiff will ultimately recover nothing or much less than he could recover if the case were settled before Defendants incur expense briefing class certification and summary judgment.

---

[12]  Plaintiff's counsel purported to discuss BHN's request for a settlement conference with their client only after BHN produced its ethics expert's report and reiterated it would be filing this Motion.  (Watstein Dec. ¶ 7.)  Counsel's claim that Plaintiff rejected BHN's request for a settlement conference to discuss individual settlement is nonetheless unsurprising, as the Settlement Restriction renders Plaintiff powerless to accept an individual settlement.

[13]  BHN suspects the same unethical term was used by Plaintiff's counsel in *Tillman*, though relevant filings appear to be under seal.

Dated: July 13, 2018

KABAT CHAPMAN & OZMER LLP

By  */s/ Ryan D. Watstein*
Ryan D. Watstein (Fla. Bar No. 93945)
Nathan D. Chapman (Fla. Bar No. 028873)
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (470) 447-0600
Facsimile: (470) 447-0615
Email: rwatstein@kcozlaw.com
         nchapman@kcozlaw.com

*Attorneys for Defendant Bright House
Networks, LLC*

## <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), attorneys for BHN hereby certify they have conferred with

counsel for Plaintiff Stephan H. Sliwa, who advised Plaintiff opposes a settlement conference.

July 13, 2018

*/s/ Ryan D. Watstein*_____

Ryan D. Watstein

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2018, I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of

record.

*/s/ Ryan D. Watstein*_____
Ryan D. Watstein