IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

STEPHAN H. SLIWA,

    Plaintiff,

v.

BRIGHT HOUSE NETWORKS, LLC and
ADVANCED TELESOLUTIONS, INC.,

    Defendants.

Case No. 2:16-cv-00235-FtM-29MRM

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT BRIGHT HOUSE'S MOTION TO SET SETTLEMENT CONFERENCE**

Plaintiff filed this lawsuit on December 21, 2015 only after he repeatedly told Bright House Networks, LLC ("BHN") to stop calling him as he was not the person it was trying to reach. Plaintiff is not alone as discovery revealed that BHN retained Advanced Telesolutions, Inc. ("ATS") to make autodialed, prerecorded calls on BHN's behalf, ATS prepared reports of calls it made for BHN that went to wrong numbers, and it forwarded those reports to BHN on a daily basis. (ECF No. 124). Unfortunately, BHN did nothing with these reports except to keep sending the wrong numbers back to ATS to continue calling them. This created a vicious circle in which persons like Plaintiff, who repeatedly told Defendants they were calling the wrong number, kept getting calls.

Rather than acknowledge its systematic violation of the Telephone Consumer Protection Act ("TCPA"), BHN attacks Plaintiff and his counsel with falsehoods, and makes misplaced and inaccurate arguments about class and merits issues, in a naked attempt to prejudice[1] the Court

---

[1] S*ee Eggleston v Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981) ("[I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether…'the representative parties will fairly and adequately protect the interests of the class.' …[I]t is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.")

–1–

against Plaintiff's case. As shown below, Plaintiff has been kept fully informed of this litigation including all offers[2], his representation agreement with his counsel is entirely proper, and this case remains well suited for class certification and success on the merits.

While Plaintiff is always willing to mediate a class settlement, another settlement conference at his point would be a waste of the Court's time because BHN refuses to consider settling on a class basis, Plaintiff is unwilling to abandon the class, the parties already attended a mediation before a well-respected mediator,[3] and the parties' positions have not changed.

This motion should be denied.

**I.  Plaintiff Has Been Kept Fully Informed.**

BHN has vigorously and tirelessly litigated this case, filing a motion to stay the case (Doc. 12); a motion to strike allegations (Doc. 22); an opposition to amending the complaint (Doc. 40); a motion for judgment on the pleadings arguing the TCPA is unconstitutional (Doc. 73), a motion to certify the denial of its motion for judgment for interlocutory appeal to the Eleventh Circuit (Doc. 133), as well as objecting to the vast majority of discovery.

Now that its various challenges on the merits have failed,[4] BHN has shifted gears and now unjestly attacks both Plaintiff and counsel, claiming a settlement conference with the magistrate is needed because allegedly Plaintiff's counsel did not properly convey BHN's settlement

---

[2] Plaintiff filed this lawsuit on December 21, 2015. But BHN did not offer a penny to settle this case until the week after Plaintiff took BHN's Rule 30b(6) deposition and "Plaintiff learned that ATS sent daily call records to Bright House with emails identifying ATS' wrong-number calls or requests to cease-contact calls."  (Doc. 124 Order compelling call records). Until that deposition, BHN claimed it was too burdensome to search for wrong number calls. But once Plaintiff discovered that BHN had these records all along, BHN suddenly became concerned about Mr. Sliwa's welfare.

[3] The parties mediated before Jay M. Cohen who is a member of the Florida Bar Association Grievance Mediation panel and was selected by the Judicial Relations Committee of the Orange County Bar Association to deal with disputes between the judiciary and the trial bar. He was a founding member of the American College of Civil Trial Mediators. http://www.jmcohenpa.com.  Mr. Sliwa traveled from the Tampa area to Orlando to attend and fully participated in this mediation.

[4] As can be seen from BHN's settlement offer, its predictions that Mr. Sliwa would lose the case on BHN's motion for judgment on the pleadings and/or that the court would certify that issue for appeal, never came to pass.

communications to Plaintiff. However, the only true statements BHN makes about its settlement communications are that BHN sent Plaintiff's counsel a letter communicating an individual settlement offer on August 28, 2017 (to try to buy Plaintiff off), that Plaintiff rejected it because he is not willing to abandon the class, and that the parties' subsequent mediation in November 2017 was unsuccessful. BHN did not make a later offer, or reconsider its refusal to discuss settling the case on a class basis. Thus, Plaintiff has been kept fully informed.

BHN's argument to the contrary is based on falsehoods and unsupported innuendo. First, it claims Plaintiff's counsel rejected the August 28, 2017 offer without discussing it with Plaintiff in part because Plaintiff's counsel incredulously responded the next day to the offer. Yet, Plaintiff testified he discussed the offer with his counsel and decided to reject it "after Mr. Howard called me." (Exhibit A (Sliwa Dep.) at 157:14-15). Plaintiff's counsel's call records confirm this discussion occurred literally 7 minutes after the offer was sent via email Monday night at 8:14 p.m. on August 28, 2017, and that another conversation between counsel and Mr. Sliwa took place immediately thereafter. (Exhibit B (Howard Declaration at ¶8)); An email was then sent to Plaintiff's co-counsel a few minutes later, at 8:19 p.m. on August 28, 2017, confirming that Mr. Howard and Mr. Sliwa just talked and that Mr. Sliwa wanted to "turn down" the offer. (Exhibit B (Howard Declaration at ¶9)) Based upon the reckless assertions in Defendant's Motion (Doc. 147) and expert report Plaintiff was forced to hire Scott Tozian, Esquire a highly respected ethics expert. Mr. Tozian reviewed all appropriate documentation including the personal cell phone records of Plaintiff's counsel and concluded the obvious. (Exhibit C (Tozian Expert Affidavit) at p.14)) ("there were communications between Plaintiff's counsel and Mr. Sliwa contemporaneous with the settlement offer."). Mr. Sliwa stated he thought a conversation took place after he received a letter from Plaintiff's counsel, it is crystal clear that the first conversation about the settlement offer took place literally within a few minutes of Plaintiff's counsel's receipt. Plaintiff simply

misremembered that the calls about the settlement letter occurred in September instead of late August. This is understandable for many reasons including: (a) BHN sent its letter only a few days before September, (b) Plaintiff could not name exact dates he spoke to his counsel, plus he cannot be expected to recall what was discussed in each call "because they call all the time" and he speaks to them "at least three times a month;" and (c) as of his deposition, Plaintiff had "just lived through Hurricane Irma." (Exhibit A (Sliwa Dep.) at p.77:13-25, p.80:15-21; p.111:10-12). As counsel's phone records indicate, Mr. Sliwa regularly communicates with counsel and counsel's law firm about the litigation including the offer at issue, in fact 41 times since September 2017, plus about that many times since the beginning of this litigation. (Exhibit B (Howard Declaration) at ¶11).

In short, Defendant's serious accusations against counsel failing to communicate are not correct and could have been verified if counsel did not rush to use Florida's ethical rules as a weapon in litigation. In any event, "Plaintiff's counsel complied with Rule Regulating The Florida Bar 4-1.4 requiring them to convey settlement offers." (Exhibit C (Tozian Affidavit) at p.14).

Second, BHN claims that on April 25, 2018, its counsel asked Plaintiff's attorney Keith Keogh to see if Plaintiff would reconsider his refusal to abandon the class and attend another settlement conference, and that Plaintiff's counsel rejected the request without informing Plaintiff. Not true. On April 25, Mr. Keogh deposed an ATS witness in Dallas Texas. During a break, while Mr. Keogh was busy reviewing his notes, BHN's lawyer asked Mr. Keogh offhand whether he thought a second settlement conference "would be productive" or something along those lines, and Mr. Keogh said he thought not (Exhibit D (Keogh Declaration) at ¶6). That was the end of the discussion. BHN did not actually ask for second settlement conference until it sent Plaintiff's counsel a copy of this motion, to fulfill its meet and confer obligation under Local Rule 3.01(g).[5]

---

[5] Bright House tries to make hay out of the fact that Plaintiff's counsel did not communicate Bright House's request for a second settlement conference to Plaintiff until "after" reading Bright House's putative "expert" report, but again the only reason for that sequence of events is that Bright House did not ask Plaintiff's counsel for a second settlement

Plaintiff's counsel once again promptly communicated that request to Plaintiff, and Plaintiff declined it (because BHN still categorically refuses to discuss settling on a class basis, Plaintiff has a strong desire to pursue this case as a class action and to stick up for the little guy as repeatedly stated in his deposition and is unwilling to abandon the class). (Exhibit B (Howard Declaration at ¶12) also citing Sliwa's deposition testimony).

Third, BHN claims Plaintiff's decision to reject its settlement offer shows his counsel must be "taking advantage of" him because allegedly its offer was "life changing" and "far exceeded the amount he could hope to recover if a class were certified," but that too is false. The offer was only a fraction[6] of what Plaintiff should be entitled to under the TCPA and did not include anything for his Florida Consumer Collection Practices Act (FCCPA) and Fair Debt Collection Practices Act (FDCPA) counts.[7] Thus, not only is BHN attempting to pick off Plaintiff to the detriment of the class, it did so with a single low-ball offer that was only open for seven business days. Although Defendant brashly inform this court that the court "will" deny certification in this case (Doc. 147, p. 2) even if that were the case there is nothing stopping Plaintiff from proceeding on his extraordinarily strong individual claims, namely the TCPA, FCCPA and FDCPA.

Moreover, BHN bases its claim on an apple to oranges selection of settlements in unrelated cases, without regard to the number of violations their plaintiffs incurred, the facts supporting or detracting from their individual and class claims, the discovery obtained, rulings made, and the myriad other factors that drive a particular settlement outcome. It should be no surprise that a named Plaintiff with one call would not recover as much as named Plaintiff with numerous calls.

---

conference *until* just before it filed the instant motion.
[6] BHN acknowledges this fact by stating its offer is just "more than $250 per call" despite the minimum statutory damages being $500 per call and up to $1500 per call for willful or knowing violations.
[7] The FCCPA and FDCPA both allow Plaintiff to recover actual (emotional) damages, statutory damages, plus attorney fees and costs since they are both fee shifting statutes. Additionally the FCCPA also allows for punitive damages.

In a related vein, BHN purports to deduce, "based on" Plaintiff deposition testimony, that "apparently" he was not advised about his chance of success, potential recovery, and/or the consequences of accepting or rejecting BHN's offer, but this is sophistry. Plaintiff did not testify as to what his counsel did and did not tell him because BHN did not ask him, plus he cannot be expected to recall everything learned from the multitude of discussions he had with his counsel, which are privileged in any event. Moreover, BHN makes these assertions based in part on cases that did not even exist at the time of Plaintiff's deposition (*ACA Int'l* and *Tillman.*) which, as discussed below, do not materially affect this case.

Finally, BHN suggests the parties' mediation was unsuccessful because of some unspecified issues that BHN allegedly "would like to get into" regarding Plaintiff and his counsel, but that is both baseless and improper.[8] In short, Plaintiff received and rejected the only settlement offer BHN made (which would have required Plaintiff abandon the class), the offer was not even close to Plaintiff's potential recovery, his counsel promptly communicated BHN's request for a second settlement conference when it actually made the request, and BHN's claims to the contrary are false. None justify another settlement conference where BHN is not willing to consider a class settlement.

## II. Plaintiff's Rejection of BHN's Low Ball Offer and Refusal to Abandon the Class Reflects His Case's Strength, Not a Lack of "Understanding."

BHN claims a second settlement conference is needed because it thinks Plaintiff's counsel not properly advising him about the case, and it wants the magistrate to step in and set Plaintiff straight. The tone of the Motion suggests that Defendant is going to tell Plaintiff he is poor and therefore should take an individual offer.[9] As an initial matter, Mr. Sliwa travelled to Orlando,

---

[8] Bright House admits the parties are obligated to refrain from discussing what took place at the mediation, but then uses innuendo to falsely imply Plaintiff and his counsel are to blame for the parties not reaching a settlement. Plaintiff could make the same insinuation about Bright House.

[9] Ironically and disingenuously Defense makes a baseless claim that "unfortunately [Plaintiff] is being taken

attended and fully participated in a mediation with Mr. Cohen where Plaintiff felt like he was talked down to by Defense counsel. (Exhibit B (Howard Declaration) at ¶14)

Yet, BHN still argues Plaintiff allegedly "does not understand" his class and merits prospects are weak, but that is just BHN's partisan description of his chances, not fact.

As an initial matter, the Eleventh Circuit has held that fiduciaries duties owed by counsel and by Plaintiff to the class arise as a matter of law when they undertook to pursue class claims. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 690 (S.D. Fla. 1998); *Motisola Malikha Abdallah v. Coca-Cola Co.,* 2000 U.S. Dist. LEXIS 19966 (N.D. Ga. 2000) (By pursuing individual claims, movant-plaintiffs were at odds with the interests of the putative class they agreed contractually to represent. Class counsel had fiduciary duties that transcended the interests of movant-plaintiffs, or their individual causes of action.[10])

Florida courts have also directly confronted the issue as to whether a putative class representative may seek to settle for an outsized award to the detriment of the putative class and answered this question resoundingly in the negative. In *Masztal v. City of Miami*, 971 So. 2d 803 (Fla. 3d DCA 2007), a case that ultimately led to the implosion of one of the most prominent law firms in South Florida. The Florida Third District Court of Appeal was confronted with a situation where the law firm in question, Adorno & Yoss, had purported to represent a putative class of taxpayers that had paid an invalid fire rescue assessment. However, at a time when the statute of limitations had expired for individual claims to be brought, Adorno & Yoss negotiated a settlement that involved only the individual claims of the class representatives and for an amount

---

advantage of" when all indicators point to Defendant as the party trying to take advantage of Mr. Sliwa is a retired marine who in his words wants to fight for the "little people."
[10] "Class actions require loyalty and fidelity of both counsel and the clients to the broader interests of the entire class, rather than merely to an individual. See *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982)

that greatly exceeded what these class members were individually entitled to. Finding that "at the very least, there was an implied fiduciary relationship between the original plaintiffs, Adorno & Yoss, and the class" that had been breached, the Third District affirmed an order of the trial court that had vacated this settlement. Ultimately, Henry Adorno, a named partner of Adorno & Yoss, was suspended for three years for his participation in the settlement, with the Florida Supreme Court agreeing that Adorno & Yoss "had a fiduciary duty to the putative class" that had been violated. *The Fla. Bar v. Adorno*, 60 So. 3d 1016, 1025 (Fla. 2011).

The concerns raised in *Masztal* are palpable in this case, as both Mr. Sliwa and his counsel have a fiduciary duty to the putative class that BHN improperly seeks to entice them to dishonor. Indeed, the very reason BHN's counsel contends that a settlement conference must be convened in front of a magistrate judge is so that he can again personally pitch to Mr. Sliwa an individual settlement offer from BHN that supposedly "far exceed[s] the amount he could hope to recover if a class were certified."[11] (Doc. 147, p. 3-4). Furthermore, while BHN contends that class members would not be prejudiced by an individual settlement by Mr. Sliwa because these class members would have a "right to pursue individual actions against BHN should he settle this case," (Doc. 147, p.2), this ignores the fact that many class members are in all likelihood completely unaware of their rights to bring a claim and would not have the opportunity to file an individual TCPA claim. Also, one of the most significant purposes of class actions is to address situations where the "potential recovery is too slight to support individual suits, but injury is substantial in the aggregate," *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)(Reversing denial of certification where district court held plaintiff should have accepted an individual

---

[11] Notably, Class Counsel has a distinctly different opinion as to whether this settlement offer is as generous as BHN contends.

settlement) In short, the putative class would be greatly injured by an individual settlement by Mr. Sliwa.

In addition to the duty Plaintiff and counsel owe to the putative class, Mr. Sliwa has a good chance at certification since class certification in TCPA cases is routinely granted, Rule 23's requirements are easily met here, and Plaintiff's case on the merits remain strong, which Plaintiff will demonstrate in his class certification motion and when the case reaches the merits. *See Ira Holtzman, C.P.A. & Assoc. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under §227 [of the TCPA], because the main questions . . . are common to all recipients.").[12] Indeed, and putting aside that Plaintiff is not a lawyer and is not required to know or understand the law (that is his lawyers' job), Plaintiff should not be expected to "understand" BHN's arguments because they are weak.

First, as noted above, BHN claimed in its settlement letter that it was going to defeat this lawsuit on First Amendment grounds and, if that motion was unsuccessful, then it would move for an interlocutory appeal of the issue. BHN lost both of those motions. (Doc. 132 and 139)

Second, BHN claims the D.C. Circuit's decision in *ACA Int'l v. F.C.C.* is a problem for Plaintiff on the merits because allegedly that decision it vacated "years" of FCC orders regarding the definition of an automatic telephone dialing system ("ATDS"), but BHN is wrong and even if

---

[12] As of 2010, at least fifty courts had certified TPCA class actions. *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 584, fn.5 (Mo. Ct. App. 2010). In more recent years, courts have continued to certify TCPA class actions, many of which concern calls to cellular telephones. *See, e.g., Johnson v. Navient Sols., Inc.,* 315 F.R.D. 501 (S.D. Ind. 2016); *Zeidel v. A&M LLC*, 2017 U.S. Dist. LEXIS 48024 (N.D. Ill. Mar. 30, 2017) (TCPA text message case); *Snyder v. Ocwen Loan Serv., LLC*, 2017 U.S. Dist. LEXIS 99900 (N.D. Ill. Jun. 28, 2017); *Abdeljalil v. General Electric Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015); *Booth v. Appstack, Inc.*, 2015 U.S. Dist. LEXIS 40779 (W.D. Wash. 2015); *Kristensen v. Credit Payment Services*, 12 F.Supp.3d 1292 (D. Nev. 2014); *Stern v. DoCircle, Inc.*, 2014 U.S. Dist. LEXIS 17949 (C.D. Cal. Jan. 29, 2014); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014), *settlement aff'd* 2018 U.S. App. LEXIS 20581 (7th Cir. July 24, 2018); *Chapman v. Wagener Equities*, 2014 U.S. Dist. LEXIS 16866 (N.D. Ill. Feb. 11, 2014); *Stemple v. QC Holdings, Inc.*, 2014 U.S. Dist. LEXIS 125313 (S.D. Cal. 2014); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013); *Balbarin v. North Star Capital Acquisition, LLC*, 2011 U.S. Dist. LEXIS 686 (N.D. Ill. Jan. 5, 2011), *Mitchem v. Illinois Collection Service*, 271 F.R.D. 617 (N.D. Ill. 2011); *see also Bridging Cmtys., Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124-26 (6th Cir. 2016) (reversing the denial of class certification in a TCPA case).

somehow correct, *ACA* does not even apply to the numerous prerecorded messages that it sent Plaintiff and the putative class.

Putting aside the fact that *ACA* did not impact the claims for the prerecorded messages, it did not materially impact Plaintiff's claim against Defendants for using an ATDS. Instead it only struck the FCC's 2015 pronouncements on the definition of an ATDS, leaving prior orders intact. *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 80690, *32-33 (S.D. Fla. May 14, 2018) ("[N]owhere in the D.C. Circuit's opinion are the prior FCC orders overruled. Indeed, that would have been impossible given that the time to appeal those orders had long passed.").[13] Once again, Plaintiff wins even if BHN did not use an ATDS because non-ATDS calls violate the TCPA when made using prerecorded voice messages, and Plaintiff alleges the calls at issue were made using prerecorded voice message. (Doc. 46 (Amended Complaint) at ¶43).

Third, BHN claims *ACA Int'l* affects the definition of what constitutes a "called party" under the TCPA, but that is not true and no court has adopted such a position. Instead, *ACA Int'l* supports Plaintiff on this issue. BHN called Plaintiff and numerous other persons at wrong numbers (allegedly it was trying to reach other persons), and thus lacked their consent, so to avoid liability BHN wants to argue the "called party" is the person it meant to call (the "intended recipient"), not the persons it actually called and bothered. However, *ACA Int'l* confirms the prevailing definition of "called party," *i.e.* the person actually called, is reasonable. *ACA' Int'l*, 885 F.3d at 706 ("The

---

[13] *See also Ammons v. Ally Fin., Inc.*, 2018 U.S. Dist. LEXIS 108588, *17-18 (M.D. Tenn. June 27, 2018) ("In the wake of ACA International, this Court joins the growing number of other courts that continue to rely on the interpretation of §227(a)(1) set forth in prior FCC rulings"); *McMillion v. Rash Curtis & Assocs.*, 2018 U.S. Dist. LEXIS 101700, *7 (N.D. Cal. June 18, 2018) ("ACA International invalidated only the 2015 FCC Order…"); *Maddox v. CBE Grp., Inc.*, 2018 U.S. Dist. LEXIS 88568, *10 (N.D. Ga. May 22, 2018) ("Given the ACA Int'l decision, the Court relies on the FCC's 2003 interpretation of §227(a)(1) to determine if Defendant's system qualifies as an ATDS."); *Pieterson v. Wells Fargo Bank, N.A.*, 2018 U.S. Dist. LEXIS 113125, *9 (N.D. Cal. July 2, 2018) ("ACA Int'l vacated the 2015 Declaratory Ruling but it did not clearly intend to disturb the FCC's 2003 and 2008 orders."); *Swaney v. Regions Bank*, 2018 U.S. Dist. LEXIS 85217, *3 (N.D. Ala. May 22, 2018) ("In ACA International, the D.C. Circuit invalidated certain portions of the 2015 FCC Order, but not the portion of the Order reaffirming the FCC's 2003 determination that, 'while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS.'"), quoting *ACA Int'l*, 885 F.3d at 702.

Commission thus could permissibly interpret 'called party' in that provision to refer to the current subscriber."). BHN essentially concedes this, because it goes on to speculate that the FCC *might* change its mind. However, cases turn on what the law is, not on "what might be." And the Eleventh Circuit has already decided this issue in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) where it examined the TCPA itself and held that called party means the current subscriber and explicitly rejected called party means the intended recipient14.

Fourth, BHN seems to argue that class certification decision in *Tillman v. Ally Fin. Corp.* means the court will pre-judge the facts in this case. Plaintiff is confident that the Court will thoroughly analyze the issues and facts to independently determine certification especially as *Tillman* is readily distinguishable. Identifying and proving the claims of persons who were called at wrong numbers or after a stop-call request (and thus without consent) is straightforward in this case because BHN's call vendor and co-defendant "ATS sent daily call records to Bright House with emails identifying ATS' wrong-number calls or requests to cease-contact calls." (ECF No. 124 (Feb. 14, 2018 Order Granting Motion to Compel) at p.11). In *Tillman*, there was no comparable proof. *See Tillman*, 2017 U.S. Dist. LEXIS 216694, *17 (M.D. Fla. Sept. 29, 2017); *see also* (Doc. 124) (Feb. 14, 2018 Order) at p.15 ("Factually, *Tillman* is distinguishable from the instant case.").

Finally, and as a good indication of how BHN is handling this case, their counsel repeated and falsely told Plaintiff at his deposition he would be responsible for Defendant's fees and cost if he "unsuccessful" in his lawsuit. (Exhibit B (Howard Declaration at ¶19)). It is undebatable, this is false; the only way Plaintiff would be required to pay Defendant's fees and cost are if, and only if, all his claims were frivolous. (Exhibit B (Howard Declaration at ¶19-21)). BHN's "expert" also

---

14 Accord. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640 (7th Cir. 2012).

falsely stated this in his report "[m]ore egregiously he [Mr. Sliwa] did not understand he could be held liable for payment of defendant's attorney's' fees if he was unsuccessful on that claim." (Exhibit B (Howard Declaration at ¶21)). These false threats have no place in civil litigation.

In short, Plaintiff's settlement position stems not from a lack of understanding of BHN's arguments, but rather from the fact that BHN's arguments are wrong or weak, and do not justify abandoning the class. However, it is worth mentioning that if Plaintiff's chances of success were as poor as BHN claimed, his counsel would have no reason to tell him otherwise because this is a contingent-fee case, and all of the time and expense his counsel incurs on unsuccessful class and merits proceedings will be lost. Likewise, if BHN really thinks Plaintiff's case is weak, it should have no qualms about putting its arguments to the test, instead of consuming fees, expenses and the Court's time on an unwanted settlement conference to rehash its twice-rejected, settlement position.

**III.   Plaintiff's Representation Agreement Is a Non-Issue.**

BHN also claims a settlement conference with the magistrate is "necessary" because it apparently wants the magistrate to tell Plaintiff his representation agreement with his counsel is an "unethical and unenforceable restraint on Plaintiff's control over settlement". Putting aside that BHN does not cite any authority to justify that kind of interference with an attorney-client relationship, BHN's attempt to use the ethics rules to attack counsel is contrary to the rules themselves, which state:

> The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, <u>the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons</u>. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, <u>does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule</u>. Accordingly, nothing in the rules should be deemed to augment any substantive

legal duty of lawyers or the extra-disciplinary consequences of violating a substantive legal duty.

(Exhibit C (Tozian Affidavit) at pp. 5-6, quoting R. Regulating Fla. Bar, Preamble (emphasis added)). This is particularly true when it comes to fee arrangements between clients and counsel:

> The fact that a contract may not be in accord with these rules is an issue between the attorney and client and a matter of professional ethics, but is not the proper basis for an action or defense by an opposing party when fee-shifting litigation is involved. (R. 4-1.5(e))
>
> * * *
>
> The rules and subdivision (e) are not intended to be used as procedural weapons or defenses by others. Allowing opposing parties to assert noncompliance with these rules as a defense, including whether the fee is fixed or contingent, allows for potential inequity if the opposing party is allowed to escape responsibility for their actions solely through application of these rules. (R. 4-1.5 Comment)

(*Id.* at p.6, *quoting* R. Regulating Fla. Bar 4-1.5(e)(1) and 4-1.5 Comment).

In any event, there is nothing improper about Plaintiff's representation agreement. (*See* Exhibit C (Tozian Expert Affidavit) at pp. 7-14). The agreement is a standard contingent-fee representation arrangement that states Plaintiff hired his counsel to pursue a class action, spells out his duties as a proposed class representative, and spells out his obligations to pay fees and out-of-pocket expenses his counsel advanced in reliance on his decision to bring a class case if he changes his mind and decides to abandon the class. (*See id.* at p.4 ("Such an arrangement is not a 'penalty,' but a negotiated fee structure in contemplation of the client's performance of the representative party's duties. The authority relied upon by the Defendants' expert is not applicable because none of the cases pertain to class action matters or the additional duties of a representative party."). This arrangement is no different from any other case in which a litigant agrees to pay for his counsel's time, and later decides to accept a settlement (or abandon the case) for equal to or less than the fees and costs owed, but still owes them. The various arguments and statements BHN and its

putative expert offer to the contrary are misplaced15. (Exhibit C (Tozian Expert Affidavit) at pp. 7-14).[16]

Defendant admits the real reason to question Plaintiff's contract is for the improper purpose of using it to defeat class certification. Defendant's Motion actually states, "BHN intends to use this expert opinion to show that neither Plaintiff nor his counsel are adequate for class certification purposes…" (Doc. 147, p.3, FN 2)

In addition, Plaintiff's FCCPA and FDCPA[17] claims are fee shifting, which need not be proportional to Plaintiff's claim. This issue was decided long ago by the U.S. Supreme Court in *Riverside v Rivera*, 477 U.S. 561 (1986) when it affirmed an award of $245,450 fees on a $33,350 recovery and held that the rule of proportionality did not apply to fee shifting statutes. See also *United States Football League v. National Football League*, 887 F.2d 408, 413 15 (2nd Cir. 1989) upheld a $5.5 million fee award on $3.00 verdict to plaintiff; *Grant v. Martinez*, 973 F.2d 96, 101 (2nd Cir. 1992) (fee award of $500,000 on $60,000 settlement); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F. 2d 1053, 1057 (2nd Cir. 1989) ($415,000 fee for recovering $2,689.02 monthly pension).

---

[15] In any event, if there was an issue with the representation agreement, it can be solved by simple amendment and does not impact adequacy. *See Jamison v. First Credit Servs.*, 290 F.R.D. 92, 105 n.6 (N.D. Ill. 2013) ("Defendants also argue that the engagement agreement between Jamison and his counsel renders Jamison an inadequate representative for the class. This argument is based on the fact that the engagement agreement states that Jamison will not settle the case without the consent of his attorneys thereby turning control of the case completely over to his attorneys. However, in his deposition Jamison testified that the phrase "without the consent of the attorneys" meant only that he needed to confer with his attorneys before entering into a settlement agreement. As the Court in *In re Ocean Ban* found, this a non-issue because any technical inadequacies caused by the language in the engagement agreement can easily be cured by amendment. *See* 06 C 3515, 2007 U.S. Dist. LEXIS 29443, 2007 WL 1063042, at *6 (N.D. Ill. Apr. 9, 2007).")

[16] It must also be noted that BHN's expert is only offers legal opinion testimony, which is inadmissible under Fed. R. Evid. 702. *See Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct…"); *see also, e.g., Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc.*, 2006 U.S. Dist. LEXIS 41763, *9 (M.D. Fla. June 22, 2006) (Steele, J.) (ruling part of expert's report was inadmissible legal opinion).

[17] Defendant never mentions this FDCPA in its Motion and it is unclear whether this was intentional.

This has been applied to claims where both TCPA and FCCPA or FDCPA claims have been brought together as in here. *See Jones v. Southwest Credit Sys., L.P.*, 2018 U.S. Dist. LEXIS 115952 (E.D. Penn. 2018) (Awarding fees in TCPA and FDCPA suit); *Garcia v. United Recovery Solutions,* 2018 U.S. Dist. LEXIS 119131 (S.D. Fl. 2018) (Recommending fees were Plaintiff brought claims under the TCPA and the FCCPA). Finally, and contrary to what BHN baselessly suggests, Plaintiff's decision to reject BHN's settlement offer had nothing to do with his representation agreement.[18] Again, the reason he rejected BHN's attempted buy off is because he wants to fight for the little guy and doesn't want to abandon the class. (Exhibit A (Sliwa Dep.) at p.64:1-4)("I made a decision to go for a class action suit instead of an individual suit. I made decisions not to take the first offer and continue the suit so we can help the little guy."); and p.156:4-9 ("Q: Okay. Did you decide to accept or reject that offer? A: Reject it. Q: Okay, And why did you reject it? A: Because all through the case I was going to defend these other people, and this [offer] just says me.")). Indeed, this remains his position today. (Exhibit E (Sliwa Declaration)).

That is why BHN now seeks to recruit the Court to push its twice-rejected buy-off gimmick. BHN cannot get Plaintiff to voluntarily accept it, and it desperately wants to avoid paying class members anything. It knows that without a class action most class members will get nothing because their claims are worth only a few thousand dollars each, making individual lawsuits infeasible. Likewise, BHN knows most people are unaware of their rights, or lack the ability to

---

[18] BHN grossly takes quotes of Mr. Sliwa's deposition out of context to try to show dissatisfaction with his agreement, but its quotations are misleading to say the least. For example, when Mr. Sliwa's said "That's not right" he was not criticizing the agreement, but instead responding to BHN's counsel's suggestion that the agreement might be unethical: "Q. Have you ever considered whether that might be unethical.  A. No. That's not right. It shouldn't be. So, no, I'm not accepting that." (Sliwa Dep. at p.164:13-17). Likewise, when Mr. Sliwa said "I don't like it." he was responding to counsel's question as to how Mr. Sliwa "felt" about counsel's argumentative description of the agreement, and once again BHN omits the full answer: "Q. How do you feel about that?  A. I don't like it. I'm just going to say I don't know, because I have to really think about that, how much that would be." (*Id.* at p.165:16-19).

find a lawyer willing to take on a well-heeled defendant, or lack the time to endure the burdens of maintaining a lawsuit:

> [C]lass actions often involve an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit. The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually. This consideration supports class certification in cases where the total amount sought by each individual plaintiff is small in absolute terms. It also applies in situations where, as here, the amounts in controversy would make it unlikely that most of the plaintiffs, or attorneys working on a contingency fee basis, would be willing to pursue the claims individually. This is especially true when the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings.

*Dickens v. GC Servs. L.P.*, 706 Fed. Appx. 529, 538 (11th Cir. Aug. 23, 2017), quoting *Klay v. Humana, Inc.*, 382 F.3d 1341, 1270-71 (11th Cir. 2004).

However, BHN's desire to skirt liability is no cause to make irresponsible accusations about ethics violations, and waste the Court's and Plaintiff's time with the instant motion and a "settlement conference" that BHN plans to use only to try to pressure Plaintiff into a settlement BHN knows he does not want. This is akin to *McLellan v. Fitbit, Inc.*, in which the court sanctioned the defendant and its counsel for requiring the court to get involved to move the case along when the defendant was stalling because it "preferred" to settle, and claimed the plaintiff's position was "irrational." *McLellan*, 2018 U.S. Dist. LEXIS 123891, *10-18 (N.D. Cal. July 24, 2018). Its motion should be denied.

## CONCLUSION

Defendant's Motion (Doc. 147) unfairly attacks Plaintiff's counsel. The impediment to settlement is BHN's categorical refusal to discuss settling on a class basis along with its absolutist view of the litigation, not Plaintiff's counsel or Plaintiff's representation agreement or communications. Plaintiff has been kept fully informed, his case is strong, he rejected BHN's prior offer because he wants to fight for the little guy and that position has not changed, and

–16–

BHN's falsehoods and improper accusations do not justify changing it. Its motion should be denied.[19]

Respectfully submitted, August 3, 2018.

| | |
|---|---|
| */s/ William "Billy"Peerce Howard* | */s/ Keith J. Keogh* |
| William "Billy" Peerce Howard, Esq. | Keith J. Keogh, Esq. |
| Florida Bar No.: 010330 | Florida Bar No. 0126335 |
| Billy@TheConsumerProtectionFirm.com | Keith@KeoghLaw.com |
| Amanda J. Allen, Esq. | KEOGH LAW, LTD. |
| Florida Bar No.: 0098228 | 55 W. Monroe St., Ste. 3390 |
| Amanda@TheConsumerProtectionFirm.com | Chicago, Il 60603 |
| THE CONSUMER PROTECTION FIRM, PLLC | Tel: 312.726.1092 |
| 4030 Henderson Blvd | Fax: 312.726.1093 |
| Tampa, FL 33629 | |
| Tel: (813) 500-1500 | *Attorneys for Plaintiff Stephan H. Sliwa* |
| Fax: (813) 435-2369 | |

---

[19] Plaintiff also respectfully suggest that perhaps the Defendant should be admonished for proceeding with this Motion (Doc. 147) and to dissuade them from future misappropriate filings, in addition to any other remedy this Court deems appropriate. It is noteworthy that Defendant has had Plaintiff's counsel's phone records and his declaration and Mr. Tozian's declaration since July 20, 2018. Additionally, Defendant took Mr. Tozian's deposition yesterday which should have put them more on notice about their inappropriate conduct, however Defendant continues down this path and despite requests by Plaintiff's counsel refuses to withdraw this Motion.

–17–

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ *William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esq.