**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

STEPHAN H. SLIWA,

              Plaintiff,

v.

BRIGHT HOUSE NETWORKS, LLC and
ADVANCED TELESOLUTIONS, INC.,

              Defendants.

Case No. 2:16-cv-00235-JES-MRM

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

William Peerce Howard, Esq.
Florida Bar No.:  0103330
Billy@TheConsumerProtectionFirm.com
THE CONSUMER PROTECTION FIRM, PLLC
4030 Henderson Blvd.
Tampa, Florida 33629
Telephone: (813) 500-1500

Keith J. Keogh
Florida Bar No.: 0126335
keith@keoghlaw.com
KEOGH LAW LTD .
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Telephone: (312) 726-1092

*Attorneys for Plaintiff Stephan H. Sliwa*

Pursuant to Fed. R. Civ. P. 23, Plaintiff, Stephan H. Sliwa, moves this Honorable Court to enter an Order certifying that this action brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") against Bright House Networks, LLC ("BHN"), a cable television and internet service provider, and Advanced Telesolutions, Inc. ("ATS"), BHN's call center agent, may proceed on behalf of the classes defined below.

## I.   INTRODUCTION

This putative class action is about Defendants' use of automatic telephone dialing systems ("ATDS") and prerecorded voice recordings—technologies prohibited by the TCPA—to place debt collection calls to non-customers who had already told Defendants they were calling the wrong number. ███████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████
     ████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████████████ This merry go round of ignoring Plaintiff's request to stop calling continued for years until Mr. Sliwa

filed this lawsuit.  The only way the circle will be broken for the thousands of other non-customers in Mr. Sliwa's position is if Defendants are held accountable on a classwide basis.

Class certification continues to be the norm for "wrong number" TCPA cases, as discussed in detail in section IV. *See Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018); *Lavigne v. First Cmty. Bancshares, Inc.*, 2018 U.S. Dist. LEXIS 94055, at *18-19 (D.N.M. June 5, 2018); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 301-02 (N.D. Cal. 2017); *Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303, 308, 311 (S.D. Cal. 2015).

BHN states that class certification "will also be denied in this case" (Doc. 147, p. 2) based upon this Court's denial of class certification in *Tillman v. Ally Fin. Corp.*, 2017 U.S. Dist. LEXIS 216694 (M.D. Fla. 2017), however this case is readily distinguishable.  Among other things, the classes proposed for certification in *Tillman* included customers of Ally who had requested that Ally stop calling them, and the Court found that this created individual issues of revocation and arbitration that would predominate. *Id.* at *17-18.  The classes proposed for certification here, however, are limited to non-customers for whom those issues do not exist.  Further, unlike the Defendants in this case, ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████. *Id.* at 9.  *Tillman* therefore sought to rely instead on "free form notes" that individual collectors made during the calls, but the Court found that those free form notes were not reliable because they may have been written in circumstances "that have nothing to do with the validity of the underlying phone number." *Id.* at 18.  That is not a problem in this case. Plaintiff does not seek to rely on "free form notes" but instead ████████████████████████████



*See* Doc. No. 124 (Feb. 14, 2018 Order Granting Motion to Compel) at p.11 and p.15 ("Factually, *Tillman* is distinguishable from the instant case.")

*Id.* There is not a single record in the documents produced showing any of these telephone numbers might actually belong to one of defendants' customers.[1]

## II.     THE TELEPHONE CONSUMER PROTECTION ACT

If robocalls were a disease, they would be an epidemic." Rage Against Robocalls, Consumer Reports (July 28, 2015).  "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission.  *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7964 (2015).  "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).

While "[a]n automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance" because, unlike a human caller who would realize, for example, if he or she had the wrong number, "predictive dialers lack human intelligence and, like

---

[1] Not only did Plaintiff's expert remove any potential customers from the class list by even removing numbers that reached a customer ▮▮▮▮▮▮▮▮▮▮▮▮ *See Exhibit 1* at p. 8, ¶18(d)), neither defendant nor their two experts were able to identify a single potential customer in the class list Mr. Biggerstaff compiled.

the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master."

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).  ████

████████████████████████████████████████████████████████████

████████████████████████████████████████

### III.   STATEMENT OF FACTS

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████  Not surprisingly, when they blast

prerecorded messages and use automatic dialing systems, they routinely reach wrong numbers.

What is surprising is that neither Defendant seemed to care. ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████  *Exhibit 4 - Van Nest Deposition* at 25:14 – 26:5;

*see also Exhibit 1 – Biggerstaff Report* at ex. 3 thereto (████████████████████████

████████); *Exhibit 5 – ATS Call Records*. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  *See Exhibit 1 - Biggerstaff*

*Report* at pp. 6-7, ¶ 14; *Exhibit 6 – BHN Call Records*.

---

[2] ATS testified that it used only a single dialing system to place these calls:  the Aspect Unified IP dialer. *Exhibit 3 - ATS Response to Interrogatory # 8.*

███████████████████████████████████████

███████████████████████████████████████

████████████████████████   *See Exhibit 4 - Van Nest Deposition* at 52:5 – 53:13.

As noted above, this created the vicious circle in which non-customers like Plaintiff,

repeatedly told Defendants they were calling the wrong number and to stop calling, ██████████

███████████████████████████████████████

███████████████████████████████████████

Below is an excerpt of ATS's calling records relating to Mr. Sliwa where Defendants were

informed that it was the wrong number:



| Result Date & Time | Result Description | Submission & Program Type |
| --- | --- | --- |
| 7/23/12 2:44 PM | | |
| 2/25/13 9:22 AM | | |
| 5/23/13 1:21 PM | | |
| 9/20/13 2:36 PM | | |
| 10/23/13 4:05 PM | | |
| 11/4/13 12:24 PM | | |
| 12/17/13 4:36 PM | | |
| 4/2/14 10:25 AM | | |
| 5/7/14 11:56 AM | | |
| 5/27/14 11:11 AM | | |
| 8/20/14 10:28 AM | | |
| 9/4/14 12:12 PM | | |
| 12/3/14 4:29 PM | | |
| 6/13/15 9:34 AM | | |

*See Exhibit 5 – ATS Records.*

███████████████████████████████████████

█████████████████████████████████.[4]  This

merry go round continued until Mr. Sliwa filed this lawsuit.

---

[3] BHN's records show that ████████████████████████████████ within these calls to Plaintiff as well. *See Exhibit 6 - BHN Call Records.*

[4] As can be seen from *Exhibit 5*, the ███████████ are the number of times Defendants were informed wrong number, but they called Mr. Sliwa numerous more times.

Defendants sought to withhold their call records from Plaintiff in discovery by asserting that it was too burdensome to search their records for non-customer calls.  It was not until after Plaintiff took BHN's Rule 30b(6) deposition that Plaintiff learned that ███████████ ██████████████████████████████████████ (Doc. No. 124 Order compelling call records). Even after the deposition, Defendants would not turn over the call records.   In response to the motion to compel, █████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████.[5] *Doc. # 124* at p. 13 (Order granting motion to compel).  Discovery is now closed. *See Doc. # 127*.

Plaintiff's expert examined the call records once produced.  After comparing the records from both ATS and BTN, he conducted various analyses.  For his Group A analysis, which identify the class lists for the classes proposed for certification, Biggerstaff identified automated and prerecorded calls made to cellular numbers ███████████████████████████████ ████████████████████████████████████████████████" *See Exhibit 1* at p. 8 ¶18.

In this analysis, Mr. Biggerstaff counted only those numbers that were assigned to cellular telephone service at the time of the call.[6]  Taking the most conservative approach, Mr. Biggerstaff also excluded any telephone numbers that *ever* resulted in the discussion of payment arrangements.

---

[5] Even though Defendants were on notice in February 2018 that they failed to identify a single ██████████████████ that was inaccurate, they still have not identified a single example despite having an additional six months to do so before discovery closed.

[6] In order to identify cellular telephone numbers, Mr. Biggerstaff used the same commercial database that the FCC uses in its enforcement actions of the TCPA's requirements.  *See In Re Dialing Services, LLC*, 29 FCC Rcd 5537, 5540, n. 16 (May 7, 2014) (citing to Interactive Marketing Solutions, Inc.'s database, available at http://www.ims-dm.com/index.shtml, as the "industry-standard, commercially available database of known assigned and ported wireless numbers to determine whether the Company made robocalls to wireless telephones").

*See Exhibit 1* at p. 8 ¶18, *id.* at ex. 3 thereto.  In other words, even if a non-customer received calls

from Defendants after obtaining a new phone, Biggerstaff excluded that number from the class list



As a result, there is not a single record in the documents produced

showing that any telephone number in Group A might actually belong to a customer.

To be clear, even after Plaintiff's expert conservatively identified the non-customers called

and provided that information to Defendants, neither Defendants nor their experts have identified

a single example                                                                                          *See*

*Exhibit 7 - Taylor Deposition* at p. 24-27; *Exhibit 8 – Sponsler Deposition* at p. 21:10-15.

Mr. Biggerstaff found that Defendants used the Aspect autodialer to robocall

. *Id.*

Plaintiff therefore asks the Court to certify the following classes of similarly-situated persons:[7]

> ATDS Class
> (1) All persons in the United States (2) who are not a customer of either defendant (3) to
> whose cellular telephone number (3) Defendants placed at least one non-emergency
> telephone call (4) using substantially the same dialing system(s) they used to telephone
> Plaintiff (5) within the 4 year period preceding the filing of the complaint (6) after
> Defendants had already documented the number as a wrong number in their records
>
> Prerecorded Voice Class
> (1) All persons in the United States (2) who are not a customer of either defendant (3) to
> whose cellular telephone number (3) Defendants placed at least one non-emergency
> telephone call (4) using a prerecorded voice (5) within the 4 year period preceding the

---

[7] Class definitions may be amended or altered at any time before final judgment.  *See* Fed. R. Civ. P. 23(c)(1)(B)-
(C); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 695 (S.D. Fla. 2013) (modifying definition
of previously-certified class pursuant to plaintiff's suggestion); *In re Pre-Filled Propane Tank Antitrust Litigation*,
2015 U.S. Dist. LEXIS 185269, *32 (W.D. Mo. 2015) ("class definitions may undergo modification, possibly
several times, during the course of a class action.").  Although many courts allow liberal modification of class
definitions without an amended pleading, even courts disagreeing on that point have held that an amended pleading
is not required to *narrow* the class. *Bouton v. Ocean Props., Ltd.*, 322 F.R.D. 683, 693 (S.D. Fla. 2017) ("Although a
plaintiff may seek to certify a class definition narrower than the one proposed in the operative pleading without a
new claim for relief, the converse is not allowed.").

filing of the complaint (6) after Defendants had already documented the number as a wrong number in their records.

## IV.  CLASS CERTIFICATION IS COMMON IN TCPA CASES

"Class certification is normal in litigation under [the TCPA], because the main questions … are common to all recipients." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (quoting *Ira Holtzman, C.P.A. & Assoc., Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1045 (9th Cir. 2012) (affirming class certification).

Class certification continues to be the norm for "wrong number" TCPA cases.  In *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018), the court certified a wrong number class over defendant's objection that "wrong number" notations did not necessarily mean what they said.  Relying on methods proposed by plaintiff's expert, the court rejected defendant's position, explaining that, although the "notations may not incontrovertibly establish that BCA dialed a wrong number, and thus would not conclusively establish who is a class member, that fact does not defeat class certification because Reyes is not proposing to rely solely on BCA's records to identify class members.  Rather, those notations would represent a *starting point* from which Reyes can further define the class through the methods described by her expert, including the use of self-identifying affidavits and subpoenas." *Id.* at *37-38 (original emphasis).

Likewise, in *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016), the court certified a wrong number TCPA class and rejected the argument "that every record marked as a wrong number may not actually have been a wrong number," finding that "these matters can be efficiently addressed" and that, "at this point in the litigation, while it is not required prior to certification, the Plaintiff's proposed method of identifying potential class members is adequate for class certification." *Id.* at 503.

The foregoing cases are not outliers.  *See Lavigne v. First Cmty. Bancshares, Inc.*, 2018 U.S. Dist. LEXIS 94055, at *18-19 (D.N.M. June 5, 2018) (certifying wrong number class despite defendants' argument "that a call could be coded 'Bad/Wrong Number' for many reasons" because "a number of courts have rejected this theory in 'Wrong Number' cases, under similar factual circumstances, at the class certification stage"); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 301-02 (N.D. Cal. 2017) (certifying wrong number class, reasoning "several district courts have deemed commonality and predominance satisfied in TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as 'wrong number' in defendant's call log databases 'may not have actually been a wrong number'"); *Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303, 308, 311 (S.D. Cal. 2015) (certifying wrong number class based on defendant's records, holding ascertainability satisfied "because class members likely can be determined by objective criteria based on defendant's business records and the class members will likely be able to identify whether they received prerecorded calls from defendant," further holding predominance satisfied as class definition was limited to wrong numbers, which plaintiff correctly argued is "evidence suggesting defendant did not obtain express consent"); *see also Reid v. I.C. Sys.*, 2017 U.S. Dist. LEXIS 43770, *4-5 (D. Ariz. 2017) (certifying settlement class of persons "whose cellular telephone number was . . . coded as a wrong number" in defendant's records); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1039 (S.D. Cal. 2015) (certifying settlement class defined in terms of persons called "without consent" and "persons whose cellular telephone numbers were marked with a 'wrong number' code in Defendant's database").

In this case, Plaintiff's expert not only limited the class to ███████████, but also applied extremely conservative criteria to eliminate from the class even those numbers that Defendants' records show were previously used to discuss payment with Defendants.  As a sign

of Mr. Biggerstaff's success, neither of Defendants' two calling record experts were able to provide a single example where any of the ▮▮▮▮▮▮▮▮▮▮▮▮ selected by Mr. Biggerstaff was not a wrong number.  *See Exhibit 7 - Taylor Dep.* at p. 24-27; *Exhibit 8 - Sponsler Dep.* at p. 21:10-15.

Thus, even after the close of discovery, there is no evidence of consent for any of the numbers in the class.

## V.    RULE 23 IS SATISFIED

Class certification is appropriate under Rule 23 when each requirement of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied.  Fed. R. Civ. P. 23; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004).  Rule 23(a) requires: (i) the proposed class be so numerous that joinder of all individual class members is impracticable (numerosity); (ii) there be questions of law and fact common to the class (commonality); (iii) the proposed class representative's claims be typical of the class claims (typicality); and (iv) the named class representative and her counsel will fairly and adequately represent the interests of the class (adequacy).  Fed. R. Civ. P. 23(a); *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189-90 (11th Cir. 2009).

In this case, Plaintiff seeks certification of the proposed classes under Rule 23(b)(3), which requires that: (i) questions of law or fact common to the proposed class members predominate over any questions affecting only individual members; and (ii) the class mechanism be superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3); *Klay*, 382 F.3d at 1251.

### A.    The Class Is Sufficiently Numerous.

Numerosity is satisfied when "the class is so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1); *see also Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, 313 (S.D. Fla. 2010) (Rule 23(a) requires "that joinder is impracticable, not impossible").

Generally, numerosity is satisfied when the class comprises 40 or more members.  *See, e.g.*, *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).  Because ███████████ ████████████████████████████████████, numerosity is satisfied.

### B.    The Class Is Ascertainable.

The implied "ascertainability" element for certification requires that the class be defined by objective criteria.  *See In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 651 (S.D. Fla. 2012).  While Defendants may argue that ascertainability requires Plaintiff to "propose an administratively feasible method by which class members can be identified," *Karhu v. Vital Pharms., Inc.*, 621 Fed. Appx. 945, 847 (11th Cir. 2015) (unpublished), there is no published decision by the Eleventh Circuit adopting the administrative feasibility test.  Furthermore, many Circuits have flatly rejected it.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015) ("Nothing in Rule 23 mentions or implies it, and we are not persuaded by the policy concerns identified by other courts."); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (following *Mullins*).

In fact, the Third Circuit, which *Karhu* relied upon, has since clarified that ascertainability is not that demanding and class members can be identified in an administratively feasible way using a combination of methods, such as the defendant's records and affidavits from putative class members.  *See City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 441 (3d Cir. 2017) (distinguishing consumer classes "in which plaintiffs had not limited the proposed class definitions to the available records" and holding that "[a]ffidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard").

Regardless of the test this Court adopts, nothing in Rule 23 requires Plaintiff to be able to identify the name and address of every class member.  Rule 23 expressly contemplates that not all

class members can be identified through reasonable effort.  *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1320-21 (11th Cir. 2012) ("Where certain class members' names and addresses cannot be determined with reasonable efforts, notice by publication is generally considered adequate.") (citing Fed. R. Civ. P. 23(c)(2)(B)); *Krakauer v. Dish Network LLC*, 311 F.R.D. 384, 394 (M.D.N.C. 2015) ("[Plaintiff] is not required to prove that, without a doubt, every single person on the class list would be able to recover to satisfy the ascertainability requirement.").

In short, Plaintiff need not provide a foolproof method to "identify [by name and address] all who fall within the class definition."  *Mullins*, 795 F.3d at 657-58. "Instead, whether Plaintiff's list of persons in the . . . class lists will persuade a fact finder on the merits 'is simply a common question of fact.'" *Cordoba*, 320 F.R.D. at 598 (quoting *Krakauer* 311 F.R.D. at 394 n.4).

### 1.    The Classes are Ascertainable Through Objective Criteria.

In this case, each element of the class definitions is comprised of objective criteria that has been satisfied using Defendant's records.

To be clear, the class has already been ascertained as Plaintiff's expert has already identified each unique cellular number called for each class.  Neither one of defendant's experts was able to identify a single misstep in Mr. Biggerstaff's methodology except to state his methodology "*may*" not have accounted for something or that he *may* not have searched for wireless numbers properly or accounted for the FCC 15 day grace period for when a number is ported to a wireless number.  Yet even if correct, (they are not), any misstep is readily corrected. In fact, Defendants' expert John Taylor testified that he is hired to search for wireless numbers at the time of the call as well as account for the FCC 15 day grace period and it would only take a day for him to run these searches.  *See Exhibit 7 - Taylor Dep.* at 33:2 – 36:8.  Of course, he never ran those searches to identify a single misstep.  *Id*.

TCPA cases throughout the country have held that the ability to ascertain a list of telephone numbers that fall within the class definition satisfies ascertainability.  *See Sandusky*, 821 F.3d at 997 (finding in TCPA case that "fax logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable"); *Amer. Copper & Brass v. Lake City Indust. Prod.*, 2014 U.S. App. LEXIS 12921, *12 (6th Cir. 2014) ("the fax numbers are objective data satisfying the ascertainability requirement"); *Mohamed v. Off Lease Only, Inc.*, 1:15-cv-23352-MGC ECF 290 (S.D. Fl. 2017) (adopting in part report and recommendation at 320 F.R.D. 301, 312 (S.D. Fla. 2017) to certify the TCPA class where the only records of who is in the class is the list of cellular telephone numbers sent text messages); *Golan v. Veritas Entm't, LLC*, 2017 U.S. Dist. LEXIS 6684, at *6-7 (E.D. Mo. Jan. 18, 2017) (finding ascertainability satisfied because there was "a record of every phone number called" and "a pending motion to compel to obtain the names and addresses associated with those phone numbers"); *Booth v. AppStack, Inc.*, 2016 U.S. Dist. LEXIS 83996, at *5 (W.D. Wash. June 28, 2016) ("The TCPA Class definition provides an objective basis to identify proper claimants, even though that identification will initially be based upon the TCPA Class member's telephone number."); *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 693 (S.D. Fla. 2015) (finding TCPA class ascertainable because the plaintiff set forth a list of fax numbers to which to offending communications were sent); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) (holding that "objective criteria determine who are class members" as "calling lists can be used to identify the individual class members"); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 U.S. Dist. LEXIS 177222, at *9-11 (S.D. Fla. Dec. 23, 2014) (finding list of "unique fax numbers" sufficient to satisfy ascertainability); *Stemple v. QC Holdings, Inc.*, 2014 U.S. Dist. LEXIS 125313, at *19 (S.D. Cal. Sep. 5, 2014) (finding TCPA class ascertainable, reasoning "[t]here is no requirement

13

that the identity of the class members . . . be known at the time of certification" and the proposed

class definition is definite enough "to ascertain whether an individual is a member of the class").

In addition, courts have rejected TCPA defendants' arguments that a class is not

ascertainable because its wrong number records may not be accurate.  As one court in this Circuit

explained when certifying a "wrong number" class:

> The Court disagrees with BCA's position that the limitations in its records keeping
> (i.e., the different meanings of its coding and the lack of historical track record in
> the coding) prove fatal to class certification. The problem with that position is that
> . . . BCA is "essentially arguing that the contours of the class should be defined by
> [its] own recordkeeping." But that "would create an incentive for a person to violate
> the TCPA on a mass scale and keep no records of its activity, knowing that it could
> avoid legal responsibility for the full scope of its illegal conduct."

*Reyes*, 2018 U.S. Dist. LEXIS 106449, at *38-39 (internal citations omitted); *accord Lavigne*,

2018 U.S. Dist. LEXIS 94055, at *17-18 (certifying wrong number class and rejecting challenge

to ascertainability, reasoning "[t]he fact that the class may inadvertently include some customers

that consented is not fatal to the predominance inquiry, especially since they can be weeded out");

*Cordoba v. DIRECTV, LLC*, 320 F.R.D. 582, 598 (N.D. Ga. 2017) ("DIRECTV's argument that

Plaintiff's call data may be overinclusive, and that the propose class members are therefore not

ascertainable, is similarly unpersuasive" because, "were the Court to take this argument seriously,

it would create the same 'perverse incentive' discussed in *Krakauer*, in effect permitting

companies to create an almost foolproof shield against class liability simply by keeping vague or

insufficiently detailed records"); *Krakauer*, 311 F.R.D. at 393 (rejecting Dish's argument that class

could not be ascertained because its call records were overinclusive, explaining that to deny class

certification on that basis "it would create the perverse incentive for entities to keep poor records

and to violate the TCPA's clear requirement that such a list be kept"); *see also United States v.

Dish Network, LLC*, 75 F. Supp. 3d 942, 1014 n.21 (C.D. Ill. 2014) (rejecting claim that Dish's list

was inaccurate because, "if Dish now asserts that its internal do-not-call list is not properly maintained and updated, then . . . Dish is conceding that all of its outbound telemarketing calls violate TCPA and the FCC Rule").   In any event, to the extent that the Court is concerned the class may be over inclusive, Plaintiff has proposed additional administrative methods to remove any such issue as explained below.

### 2.   Although Not Required, It Is Feasible to Identify Class Members by Name and Address

As noted above, there is no published Eleventh Circuit Court of Appeals opinion requiring Plaintiff to establish "an administratively feasible method by which class members can be identified." *See Karhu*, 621 Fed. Appx. at 847 (unpublished).  And many Circuits have rejected any heightened "ascertainability" requirement including the Third Circuit, on which *Karhu* relied.

As one court in this Circuit synthesizing the foregoing cases explained, "there is no categorical prohibition against the types of information that may be used to identify potential class members."  *Reyes*, 2018 U.S. Dist. LEXIS 106449 at *31.  Instead, "plaintiff must show 'an administratively feasible method by which class members can be *identified*.  Nothing more, nothing less."  *Id.* at *30 (emphasis in original).

Plaintiff can, for purposes of class notice, obtain the names and addresses (or email addresses) for class members by using a combination of Defendant's call records, and records subpoenaed from the cellular telephone providers to identify the persons using those telephone numbers at the time of Defendant's calls.  Plaintiff's expert explained this process in his expert report (See *Exhibit 1* at ¶38-44).[8]  In addition, Plaintiff's counsel has successfully done this in other cases. *See Martin v. Global Tel*Link Corp.*, 2017 U.S. Dist. LEXIS 53899, *8-9 (C.D. Cal.

---

[8] In addition, it is standard practice in class actions to contact the third parties.  For example, banks and brokerage houses, are routinely contacted to identify the holders of any particular security. These securities classes involve a large number of persons, yet this is a common administrative process involving dozens of third parties.

2017) (identifying over one million users and subscribers by subpoenaing the telecom providers).

Indeed, subpoenaing the carriers for purposes of identifying class members is common practice, and courts have repeatedly approved such procedures in TCPA actions. *See Mey v. Venture Data, LLC*, No. 14-123, Doc. 247 at 26 (N.D. W. Va. June 6, 2017) (certifying a TCPA class, observing that "numerous reliable databases exist from which a class administrator can accurately identify names and addresses based on a list of telephone numbers"); *Stemple v. QC Holdings, Inc.*, 2016 U.S. Dist. LEXIS 55011, at *11 (S.D. Cal. Apr. 25, 2016) ("hav[ing] the Claims Administrator perform a reverse telephone number look-up to determine the address information for class members . . . 'is an objective approach that reinforces the ascertainability of the class'"); *Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 442 (E.D. Mich. 2015) (finding a TCPA class "sufficiently ascertainable" because "Plaintiff possesses a list of numbers to which the fax was sent, and it is certainly feasible to determine which individuals and businesses received the faxes at those numbers"); *Booth v. Appstack, Inc.*, 2015 U.S. Dist. LEXIS 40779, at *9 (W.D. Wash. Mar. 29, 2015) (certifying TCPA Class where "Plaintiffs intend to rely on additional records, such as telephone carrier records and reverse-lookup directories, to identify class members and establish elements of the claims"); *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 623-24 (S.D. Cal. 2015) (holding proposed class "meets the requirement for ascertainability" because "Plaintiffs propose to use reverse look-up technology to identify potential class members who received a call"); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 248 (N.D. Ill. 2014) (holding "the identities of the persons whose numbers are on plaintiffs' list of 930,000—indeed, the subscribers for those numbers at the time defendants called them—are sufficiently ascertainable" as plaintiffs can "obtain their contact information to provide notice from either a third-party database or from the telephone carriers themselves").

Then, using the names and contact information obtained from the cellular telephone service providers, Plaintiff can send notice to the class. [9]

Finally, the fact that Rule 23 provides for publication notice is a good illustration that Defendants conflate Ascertainability with identification. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ("Where certain class members' names and addresses cannot be determined with reasonable efforts, notice by publication is generally considered adequate.").

### 3. Class Membership can be Double Verified via Affidavit

Defendant's own records will show whether any particular person is one of defendant's customers. Although discovery has closed, Defendants have thus far failed to show that any person in the class lists identified by Mr. Biggerstaff is actually one of defendant's customers. Thus, the evidence shows that the class lists are already limited to non-customers.

If necessary to remove any uncertainty, the court can double verify class membership by requiring the class members to attest on a claim form that they were not the customer Defendants were trying to reach. *See Reyes,* 2018 U.S. Dist. LEXIS 106449 at *37-38 (ascertainability satisfied in wrong number case because class members can provide "self-identifying affidavits"); *see also City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434 (3rd Cir. 2017) ("The only factual inquiry required to determine class membership is whether a particular dealership in the database received the BMW fax on one of the dates in question. Answering this factual question of identification through affidavits or other available records does not necessarily require individualized fact-finding that would be 'administratively infeasible' or 'a violation of Defendants' due process rights.'")

---

[9] Mr. Sponsler asserted that he does not believe that the carriers will provide what information they have as well as casts doubts about whether they have subscriber or user information, but he admits that he has never worked for a carrier and his "experience" and has never done any analysis on any data to determine what information carriers have on their customers. *Exhibit 8* – Sponsler Dep. at p.34, 40.

### C.    Commonality Is Satisfied.

Commonality tests whether there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This is another "low hurdle."  *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009).  Plaintiff need only show that the class claims present "at least one issue whose resolution will affect all or a significant number the putative class members," which issue is "susceptible to class-wide proof." *See, e.g.*, *id.* at 1355.  In other words, the class claims must "depend upon a common contention . . . capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, class claims depend upon several common contentions that will be resolved on a class-wide basis "in one stroke" without the need for any individualized inquiries, including: (a) whether the phone calls were placed with the technology prohibited by the TCPA (*i.e.* an ATDS or prerecorded voice); (b) Defendant's policies and practices with respect to ███████████ ██████████ ; and (c) whether Defendant's violations of the TCPA were willful under § 227(b)(3).

Thus, commonality is satisfied here, as it has been in numerous other TCPA cases.  *See Palm Beach Golf*, 311 F.R.D. at 699 ("facts necessary to establish liability relate to Defendant's common course of conduct"); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2014) (holding in TCPA case "the legal questions that the instant matter presents will be common to all class members"); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013) ("Whether the provision of a phone number on admissions paperwork equates to express consent is a question common to all class members, because . . . all class members will prevail or lose together, making this another common issue to the class.").

### D.   Typicality Is Satisfied.

"The focus of typicality is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits." *Palm Beach Golf*, 311 F.R.D. at 696. "Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World* Co., 692 F.3d 1212, 1216 (11th Cir. 2012) (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000)). "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Ault*, 692 F.3d at 1216. "'The typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories.'" *Williams*, 568 F.3d at 1357 (alteration in original).

In this case, Plaintiff was subjected to the same pattern or practice as every other class member—*i.e.* Defendants' use prohibited technology to place debt collection robocalls to cellular telephone numbers of non-customers even after ███████████████████████████████ ████████████. And Plaintiff's claim, like the claim of every other class member, is based on a single legal theory—*i.e.* that Defendants' conduct violated 47 U.S.C. §227(b)(1)(A)(iii).

In addition to being virtually identical to *Reyes* and *Lavigne*, this class is strikingly similar to *Abdeljalil v. GE Capital*, in which the court certified a TCPA wrong number class, holding that "plaintiff's claims are clearly typical of the proposed class, in that plaintiff and the proposed class members, who were not customers of defendants, seek relief based on defendant's use of an automatic telephone dialing system and/or an artificial or prerecorded voice for debt collection purposes where defendant's records indicate defendant had knowledge . . . that they were non-

account holders."  306 F.R.D. at 309; *accord A Aventura Ctr., Inc. v. Med Waste Mgmt. LLC*, 2013

U.S. Dist. LEXIS 97879, at *10 (S.D. Fla. 2013) ("Aventura satisfies typicality as the course of

conduct that produced its TCPA claim also produced the claims of the proposed class."); *Cordoba*,

320 F.R.D. at 601 (same);  Therefore, typicality is satisfied.

    **E.**      **Plaintiff and Plaintiff's Counsel Are Adequate.**

The adequacy element of Rule 23(a)(4) "encompasses two separate inquiries: (1) whether

any substantial conflicts of interest exist between the representatives and the class; and (2) whether

the representatives will adequately prosecute the action."  *Valley Drug Co. v. Geneva Pharms.,

Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).  "Adequate representation is presumed in the absence

of contrary evidence."  *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457,

464 (S.D. Fla. 2002).  Further, "[a]dequacy exists where the named plaintiffs share common

interests with the class members and seek the same type of relief for themselves as for the class."

*In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 672 (S.D. Fla. 2015).

Plaintiff understands his duties as class representative and has no interests antagonistic to

the class. *Exhibit 9 – Sliwa Dep.* at pp. 22-25, 40:7, 43-54, 61-65, 154-156.  In fact, Mr. Sliwa has

repeatedly rejected Defendants attempts to get him to sell out the class, has been in almost constant

contact with his attorneys, sat for his deposition and participated in discovery, and traveled to

Orlando for the mediation. *Id.*

Plaintiff is represented by counsel with extensive experience litigating TCPA claims and

class actions under the TCPA.  *See Exhibit 10 - Declaration of Keith Keogh* at ¶¶ 11-23; *Exhibit

11 - Declaration of William Howard* at ¶¶3-15.  Plaintiff's counsel has been—and will continue to

be—adequate counsel for the Class.  *See City of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659,

668-69 (S.D. Fla. 2010).

Yet, BHN has asserted that it will oppose adequacy via its retained ethics expert[10] because it contends Plaintiff's retainer agreement is improper under Florida's ethical rules even though Plaintiff does not have any complaints. Doc. No. 147.

As an initial matter, the ethics rules themselves provide that they are not to be used by adversaries in litigation. R. Regulating Fla. Bar 4-1.5(e)(1) and 4-1.5 Comment.

Further, there is nothing improper about Plaintiff's representation agreement. (*See Exhibit 12* (Tozian Expert Affidavit) at pp. 7-14). The agreement is a standard contingent-fee representation arrangement that states Plaintiff hired his counsel to pursue a class action, spells out his duties as a proposed class representative, and spells out his obligations to pay fees and out-of-pocket expenses his counsel advanced in reliance on his decision to bring a class case if he changes his mind and decides to abandon the class. *See id.* at p.4 ("Such an arrangement is not a 'penalty,' but a negotiated fee structure in contemplation of the client's performance of the representative party's duties. The authority relied upon by the Defendants' expert is not applicable because none of the cases pertain to class action matters or the additional duties[11] of a representative party."). The only "unusual" aspect to it is that it provides for attorney fees for the fee shifting claims

---

[10] It must also be noted that BHN's expert only offers legal opinion testimony, which is inadmissible under Fed. R. Evid. 702. *See Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct…"); *see also, e.g., Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc.*, 2006 U.S. Dist. LEXIS 41763, *9 (M.D. Fla. June 22, 2006) (Steele, J.) (ruling part of expert's report was inadmissible legal opinion). Plaintiff only retained his own rebuttal expert on this issue in an abundance of caution in case the Court disagrees with this position.

[11] The Eleventh Circuit has held that fiduciaries duties owed by counsel and by Plaintiff to the class arise as a matter of law when they undertook to pursue class claims. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 690 (S.D. Fla. 1998); *Motisola Malikha Abdallah v. Coca-Cola Co.*, 2000 U.S. Dist. LEXIS 19966 (N.D. Ga. 2000) (By pursuing individual claims, movant-plaintiffs were at odds with the interests of the putative class they agreed contractually to represent. Class counsel had fiduciary duties that transcended the interests of movant-plaintiffs, or their individual causes of action.). "Class actions require loyalty and fidelity of both counsel and the clients to the broader interests of the entire class, rather than merely to an individual. *See Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982).

(FDCPA and FCCPA[12]) if this matter is resolved individually as obviously the Court sets any fees relating to any class resolution.

In any event, if there was an issue with the representation agreement, it can be solved by simple amendment and does not impact adequacy. *See Jamison v. First Credit Servs.*, 290 F.R.D. 92, 105 n.6 (N.D. Ill. 2013) ("Defendants also argue that the engagement agreement between Jamison and his counsel renders Jamison an inadequate representative for the class. This argument is based on the fact that the engagement agreement states that Jamison will not settle the case without the consent of his attorneys thereby turning control of the case completely over to his attorneys. However, in his deposition Jamison testified that the phrase "without the consent of the attorneys" meant only that he needed to confer with his attorneys before entering into a settlement agreement. As the Court in *In re Ocean Ban* found, this a non-issue because any technical inadequacies caused by the language in the engagement agreement can easily be cured by amendment. *See* 06 C 3515, 2007 U.S. Dist. LEXIS 29443, 2007 WL 1063042, at \*6 (N.D. Ill. Apr. 9, 2007).")

Regardless, there is no conflict, which is required to defeat adequacy. Even then, "the conflict must be a fundamental one going to the specific issues in controversy." *Id.*

Defendants' protestations[13] are unfounded, but to the extent there are any merit to them, they are issues that can be easily corrected and do not create any conflict with the class, let alone one so fundamental as to derail class certification. Therefore, the adequacy is satisfied.

### F. Common Questions Predominate.

---

[12] *See Jones v. Southwest Credit Sys., L.P.*, 2018 U.S. Dist. LEXIS 115952 (E.D. Penn. 2018) (Awarding fees in TCPA and FDCPA individual suit); *Garcia v. United Recovery Solutions,* 2018 U.S. Dist. LEXIS 119131 (S.D. Fl. 2018) (Recommending fees were Plaintiff brought claims individually under the TCPA and the FCCPA).

[13] "It is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether…'the representative parties will fairly and adequately protect the interests of the class.' …[I]t is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." *See Eggleston v Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).

Rule 23(b)(3) does not require all issues presented in the case to be common among the Class, it only requires that common issues predominate over individual issues. *Klay*, 382 F.3d at 1254 ("'it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions'"), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). Common issues predominate "'if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief.'" *Williams*, 568 F.3d at 1357 (quoting *Klay*, 382 F.3d at 1255).

Here, the common questions presented directly affect the class members' ability to establish liability and obtain relief in that proving 1) whether an ATDS was used or whether Defendant's actions were willful; or 2) wrong number equates to stop calling establish liability.

Thus, as is often true in TCPA cases, "there are no prickly individualized questions" that could predominate this action. *Manno*, 289 F.R.D. at 690. Instead, "the facts necessary to establish [TCPA] liability relate to Defendant's common course of conduct and the transmissions of the [calls], and not to issues with individual class members." *Palm Beach Golf*, 311 F.R.D. at 699 (finding predominance satisfied in a TCPA case).

Finally, common issues predominate with respect to the issue of prior express consent, notwithstanding any speculative or hypothetical argument to the contrary. In this case, the class is limited to non-customers. Given that Defendants have no evidence that they obtained consent from any non-customer, much less a non-customer who repeatedly advised that Defendants were calling the wrong number, consent is not an issue that could predominate this action As *Abdeljalil* held in certifying a wrong number TCPA class, any speculative or hypothetical individualized issues regarding "prior express consent" do not defeat predominance where the class is limited to persons whose numbers were noted as a wrong number in the defendant's records. 306 F.R.D. at

311 ("[P]laintiff contends that the issues surrounding consent are subject to common proof because the proposed search [of call records for 'wrong number' notations] will identify persons called by defendant's agent who were third parties. . . . This Court agrees with plaintiff."); *see also Johnson*, 315 F.R.D. at 502-03 (holding predominance satisfied by wrong number TCPA class, finding that any possible individual issues "can be efficiently addressed"). [14]

Moreover, as noted above any doubt may be addressed by requiring affidavits from the class members to confirm that they were not one of Defendants customers.  Similarly, a simple comparison of the data provided by the carriers to the names, addresses, and call data in Defendant's records will allow Plaintiff to remove any matches, thereby removing any person who was not a wrong number.  As such, there will be no mini-trials or individuals issues that predominate, but instead a simple administrative process.

## G.    The Class Action Mechanism Is Superior to Other Methods.

"The focus of the superiority analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'"  *Palm Beach Golf*, 311 F.R.D. at 699 (citing *Klay*, 382 F.3d at 1269).  In this case, requiring individual class members to file their own suits would deter some from enforcing their rights because the recoverable statutory damages are only $500 (or, up to $1500 if the Court trebles damages) and the TCPA is not a fee shifting statute.  *See* 47 U.S.C. § 227(b)(3); *Mims*, 565 U.S. at 385-86 (acknowledging rarity of paying $350 filing fee to bring TCPA claim for $500).  Indeed, as the Southern District of Florida held in *Palm Beach Golf*:

---

[14] *See also Cordoba*, 320 F.R.D. at 602 ("Dish's claim that the putative class list contains 'hundreds' or 'a multitude' of non-actionable calls, is not supported by evidence. While there are potentially a number of individual issues, these issues appear to apply to only a small number of class members and are straightforward. These minor, peripheral issues do not defeat the predominance[.]") (quoting *Krakauer*, 311 F.R.D. at 399); *Mims v. Stewart Title Guaranty Co.*, 590 F.3d 298, 308 (5th Cir. 2009) ("Class certification is not precluded simply because a class may include persons who have not been injured by the defendant's conduct.").

> Given the large number of purported members in this suit and the similarity of their claims, disposition by class action is an efficient use of judicial resources. Moreover, the relatively small potential recovery in individual actions ($500 in the absence of a finding of willfulness) and reduced likelihood that plaintiffs will bring suit also weighs in favor of class resolution.

311 F.R.D. at 699.  This case is no different.  Here, the consolidation of thousands of claims for relatively small statutory damages is the superior method of adjudication especially as the TCPA is not fee shifting.

## VI.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order certifying the proposed class.


/s/ William Peerce Howard
William Peerce Howard, Esq.
Florida Bar No.:  0103330
Billy@TheConsumerProtectionFirm.com
THE CONSUMER PROTECTION
FIRM, PLLC
4030 Henderson Blvd.
Tampa, Florida 33629
Telephone: (813) 500-1500

/s/ Keith J. Keogh
Keith J. Keogh
Florida Bar No.: 0126335
keith@keoghlaw.com
KEOGH LAW LTD .
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Telephone: (312) 726-1092

*Attorneys for Plaintiff Stephan H. Sliwa*


## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.


*/s/ Keith J. Keogh*