## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

STEPHAN H. SLIWA,

       Plaintiff,

v.                                                    Case No. 2:16-cv-00235-JES-MRM

BRIGHT HOUSE NETWORKS, LLC and
ADVANCED TELESOLUTIONS, INC.,

       Defendants.

---

## DEFENDANTS' COMBINED RESPONSE IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    FACTUAL BACKGROUND ........................................................................... 5

    A.     BHN Provided Services to Households, Pursuant to an Agreement that
           Contained Arbitration and Consent Terms, and Acquired Phone Numbers in
           Many Ways. .......................................................................................... 5

    B.     Defendants Called the Phone Numbers Associated with BHN Customers'
           Past-Due Accounts. ............................................................................... 6

    C.     ██████████████████████████████████████
           ███████████████ ............................................................... 8

    D.     Plaintiff Failed to Take Discovery to Support His Class Certification
           Motion. ................................................................................................. 9

    E.     Plaintiff Moves for Certification of Two Brand-New Classes Based Solely
           on an Expert Report that Itself Proves Certification Is Improper. ....... 10

III.   RULE 23'S STRICT REQUIREMENTS ....................................................... 11

IV.    ARGUMENT ................................................................................................. 12

    A.     Plaintiff Improperly Seeks Certification of New, Broader Classes. ..... 12

    B.     Plaintiff Has Not Proposed Ascertainable Classes. ............................. 13

          1.     The proposed classes are hopelessly vague. ............................. 14

          2.     Plaintiff cannot identify the members of his proposed classes in an
               administratively feasible manner. ............................................. 15

    C.     Individual Issues Will Predominate Over Common Inquiries at Trial. ............... 18

          1.     Individual issues of consent predominate and preclude certification. ...... 19

          2.     Plaintiff's proposal to exclude non-customers solves nothing, as
               numerous individual issues remain. .......................................... 24

    D.     Plaintiff's Questions Do Not Satisfy the Commonality Requirement. ................ 29

    E.     Neither Class Counsel Nor Plaintiff Are Adequate to Represent the Classes. ..... 30

    F.     Plaintiff Is Not Typical of the Classes He Seeks to Represent. ............................ 34

    G.     Plaintiff Has Not Shown the Class Is Numerous. ................................................. 36

    H.     Class Litigation Is Not Superior to Individual Litigation. .................................... 36

V.     CONCLUSION .............................................................................................. 38

# I.   <u>INTRODUCTION</u>

Plaintiff asks the Court to certify two never-before-proposed classes of persons "whose cellular numbers" Defendants BHN and its vendor ATS allegedly called in error when trying to reach consenting BHN customers regarding past-due accounts.  Plaintiff claims that Defendants lacked consent to make these purported "wrong number" calls, that they were made with an automated telephone dialing system or pre-recorded voice, and therefore that each class member has a viable TCPA claim.  Black-letter law, including this Court's own decisions, compels the conclusion that Plaintiff's Motion fails for numerous, independent reasons.

There are several threshold problems with Plaintiff's proposed class definitions.  To start, they are broader than those in his Complaint and are being proposed for the first time after the close of discovery.  Under Plaintiff's own authority, this alone requires denial of his Motion.  Plaintiff also fails to propose any way, much less an administratively-feasible way, to identify even a fraction of the members of his proposed classes, which are so vaguely worded that it is difficult to tell who he even means to include.  For example, Plaintiff apparently intends to include historic *users* of cellular numbers in his proposed classes and purports to be able to identify such persons through subpoenas to cellular carriers.  However, the unrebutted declarations of two of the largest cellular carriers (███████████) establish unequivocally that identification of users would be impossible.  Plaintiff's Motion fails for this reason as well.

But the biggest problem for Plaintiff is this: a litany of individualized inquiries will predominate over any common questions at trial, barring certification.  That is, because Defendants ████████████████████████████████████████████, and consent is a complete defense under the TCPA, the only way in such cases to

1

determine whether Defendants "lost" consent because, *e.g.*, a cellular number was transferred to another person, is to conduct individual inquiries into every call, class member, customer, and so on.  It is for this reason that certification is routinely denied in TCPA cases like this one, in contrast to the inapposite blast fax and mass telemarketing cases cited by Plaintiff throughout his Motion.

Plaintiff attempts to sidestep these crippling individualized issues of consent by having his "expert" state (wrongly) ███████████████████████████████████████ ████████████████████████████████ Thus, he claims, he can identify persons with valid claims ████████████████████████████████. This theory fails, several times over.

As an initial matter, ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ This Court recognized that fundamental problem when denying class certification in *Tillman*, a TCPA case with fewer individual issues than this one:

> Defendant has offered evidence that in the debt collection industry "wrong number" oftentimes does not mean non-consent because many customers tell agents they have reached the wrong number, though the correct number was called, as a way to avoid further debt collection.  Thus, "wrong number" . . .

notations are insufficient to establish on a class-wide basis without individualized inquiry that defendant made a call to a number in violation of the TCPA.

*Tillman v. Ally Fin., Inc.*, No. 2:16-CV-313, 2017 WL 7194275, at *7 (M.D. Fla. Sept. 29, 2017).

And here, unlike in *Tillman*, Defendants have proven through declarations, two expert reports, BHN's records, and Plaintiff's ***own expert's analysis*** that a ████████████████ ████████████████. This all establishes that the only way to resolve the issue of consent is to, among other things: (1) identify the recipient of each call; and (2) examine at least that person (and probably others) at trial to determine his or her relation to the BHN account at issue.

Plaintiff argues that he can eliminate the need for thousands of mini-trials by attempting to exclude BHN customers from his class definitions. But that is no fix. Plaintiff ignores in his Motion that B████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████. Thus, removing non-customers will still leave many persons BHN had consent to call in the class, identification of whom could only potentially be accomplished through thousands of mini-trials. This is proven by BHN's and its affiliates' own experience with alleged "wrong number" lawsuits, which require highly-individualized investigations in order to show the calls were made with the consent of a non-customer user.

Other fact-intensive individual inquiries (which Plaintiff ignores) would also overwhelm any common issues at a class trial, regardless of whether Plaintiff excludes

customers.  For example, the Court would have to determine whether the class members who used BHN's services are bound by the arbitration provision and class waiver in BHN's consumer agreements, whether each call played a recorded message, and whether each class member has standing.  Thus, as this Court held in *Tillman*, excluding customers does not avoid the necessity of mini-trials.

Class certification should also be denied for the independent reason that Plaintiff and his counsel are inadequate representatives due to the conflict of interest created by their engagement agreement.  As explained herein, counsel employed terms in that agreement to prohibit Plaintiff from settling or dismissing his case, even if those outcomes would be in Plaintiff's best interest or the best interest of the class.  Counsel's pattern of elevating their own financial interests above Plaintiff and the putative class is further proven by their failure to ensure Plaintiff has even the most basic understanding of this case, as well as their failure to communicate Defendants' settlement offer to Plaintiff before rejecting it on his behalf.

Finally, Plaintiff also failed to satisfy *any* of the remaining requirements of Rule 23 even though he bears the burden to satisfy them all.  For example, he failed to show commonality and superiority for many of the same reasons described above.  He also failed to satisfy Rule 23's numerosity requirement, as he did not show that a *single* person falls within his new class definitions.  This is particularly true because Plaintiff's own expert's analysis *excludes Plaintiff from his own proposed classes*.  For this same reason and because Plaintiff's individual case is a one-off in which Defendants have unique defenses, Plaintiff cannot show that his claims are typical of those he purports to represent.  Accordingly, Defendants respectfully request the Court deny Plaintiff's motion for class certification.

## II.     FACTUAL BACKGROUND

### A.     BHN Provided Services to Households, Pursuant to an Agreement that Contained Arbitration and Consent Terms, and Acquired Phone Numbers in Many Ways.

From 2011 through 2015, BHN provided cable, internet, and phone services under the "Bright House" brand.[1]  (BHN Decl. ¶ 3; Ex. B ("Parker Decl.") ¶ 3.)  BHN provided those services subject to Residential Subscriber Agreements ("RSA").  (BHN Decl. ¶ 4, Ex. A; Parker Decl. ¶ 3.)  Under the RSAs, BHN's customers and users of its services ("users") agreed to arbitrate disputes "regarding any aspect of [their] relationship with BHN" on an individual (non-class) basis, subject to an opt-out right.  (BHN Decl. ¶ 6d; Parker Decl. ¶ 3.)  They also agreed BHN and its vendors could call "the phone numbers . . . suppl[ied] to it for any purpose [via] any method, including an automatic dialing system or an artificial or recorded voice."  (BHN Decl. ¶ 6b; Parker Decl. ¶ 3.)



(BHN Decl. ¶ 8, *Id*. ¶ 6a ("BHN is entitled to assume that any communications made through my Services or from the location at

---

[1] In mid-2016, BHN and Time Warner Cable combined with Charter Communications, and those three companies combined operations under the "Spectrum" brand.  (Ex. A ("BHN Decl.") ¶ 1, n.1.)

which I receive the Services are my communications or have been authorized by me[.]"); Parker

Decl. ¶ 3.) ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████

    **B.**    **Defendants Called the Phone Numbers Associated with BHN Customers' Past-Due Accounts.**

      ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

6

¶ 3.)



██████████████████████████████████████████████ As this Court has

acknowledged, however, it is common for call recipients to be untruthful in response to debt-

collection calls in an effort to avoid the calls or because the recipient is embarrassed to speak

about a past-due account in the presence of others, wants calls to stop, or simply does not want

to pay. *Tillman*, 2017 WL 7194275 at *7.  (*See also* ATS Decl. ¶ 16; Ibarra Decl. ¶ 3; Sponsler

Report § 6.A.2.)

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ (ATS Decl. ¶¶ 17–18; Ibarra Decl. ¶ 3; BHN

Decl. ¶ 21; Parker Decl. ¶ 3.)  The effectiveness of this protocol is proven by the fact that despite

the tens of millions of calls made by BHN or on its behalf each year, only *five* (alleged) "wrong

number" cases have been filed against BHN in the past several years.  (BHN Decl. ¶ 32.)

**C.**  **BHN's** ████████████████████████████████ **Even After Plaintiff Acquired It.**

In line with the foregoing procedures, ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ Plaintiff apparently acquired the

---

[2] Plaintiff falsely states (at 7) that ██████████████████████████████████████

████████████████████████████████████████████████

██████ Similarly, Plaintiff made up out of thin air the statement (at 2–3) ████████████

██████████████████████████████████████"

8

2 ███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████▪ ████████████████

### D.    Plaintiff Failed to Take Discovery to Support His Class Certification Motion.

Based on his receipt of calls intended for Customer H, Plaintiff filed a lawsuit on December 21, 2015, alleging that BHN violated the TCPA.  (D.E. 1.)  Later, Plaintiff added ATS as a defendant and transformed his suit into a putative class action, seeking certification of the following classes:

> (1) All persons in the United States (2) to whose cellular telephone number (3) [BHN or ATS] place a non-emergency telephone call (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) where Bright House did not have express consent to call said cellular telephone number.

> (1) All persons in the United States (2) to whose cellular telephone number (3) [BHN or ATS] placed a non-emergency telephone call (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) after that person had instructed Bright House to cease calls to that number.

(D.E. 46 ("Complaint") ¶ 88.)

Plaintiff and his counsel did almost nothing to support class certification despite having three years to do so.  Plaintiff never obtained any records regarding the putative class other than ATS's call logs, never subpoenaed any cellular carriers to determine the viability of the method he now proposes for identifying class members, and never sought to depose the witnesses

---

3 ███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

disclosed during discovery.   Plaintiff never even asked ATS's deponent ███████

████████████████████████████████████████████████████████████████████

██████████He also never attempted to amend his class definitions.

**E.     Plaintiff Moves for Certification of Two Brand-New Classes Based Solely on an Expert Report that Itself Proves Certification Is Improper.**

With discovery closed, Plaintiff now seeks certification of the following new classes:

**ATDS Class**
(1) All persons in the United States (2) who are not a customer of either defendant (3) to whose cellular telephone number (3) Defendants placed at least one non-emergency telephone call (4) using substantially the same dialing system(s) they used to telephone Plaintiff (5) within the 4 year period preceding the filing of the complaint (6) after Defendants had already documented the number as a wrong number in their records.

**Prerecorded Voice Class ("PRV Class")**
(1) All persons in the United States (2) who are not a customer of either defendant (3) to whose cellular telephone number (3) Defendants placed at least one non-emergency telephone call (4) using a prerecorded voice (5) within the 4 year period preceding the filing of the complaint (6) after Defendants had already documented the number as a wrong number in their records.

(Mot. at 7.)  Because Plaintiff has no factual evidence to support his Motion, he has based his

Motion entirely on the convoluted report of his purported "expert," Robert Biggerstaff.  (*Id.* at

6–7, Ex. 1 ("Report").)  In his Report, ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████



Given the above issues (among others), BHN is separately moving to exclude the opinions of Mr. Biggerstaff.

### III.    <u>RULE 23'S STRICT REQUIREMENTS</u>

To satisfy his burden and obtain class certification in this Circuit, Plaintiff must first prove that his proposed classes are adequately defined and clearly ascertainable. *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 947–48 (11th Cir. 2015); *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Then, he must "affirmatively demonstrate his compliance with" Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Pursuant to Rule 23(a), Plaintiff must prove: "(1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law or fact common to the class; (3) [his] claims or defenses . . . are typical of the claims or defenses of the class; and (4) [he and his counsel] will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). Under Rule 23(b), Plaintiff must prove that "questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The Court must conduct a "rigorous analysis" to determine whether Plaintiff has met his burden on all elements. *Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (cit. omitted). Because Plaintiff fails to prove *any* of these elements, his request for certification should be denied.

## IV.   ARGUMENT

### A.   Plaintiff Improperly Seeks Certification of New, Broader Classes.

Plaintiff's Motion fails at the threshold because he is improperly attempting to certify two new classes after the close of discovery. While Plaintiff claims that his new classes are narrower than those in the Complaint and that amendments to class definitions at the certification stage are routine (at 7), he is wrong.

First, Plaintiff's initial classes included *only* persons who Defendants did not have consent to call (Complaint ¶ 88), whereas his new classes include all person who may be tied to a "wrong number" notation in any of Defendants' collective "records," *regardless* of whether Defendants had consent. (Mot. at 7). Second, Plaintiff never before proposed a class tied to the use of a prerecorded voice. (*See* Compl. ¶ 88.) Thus, even under Plaintiff's **own authority**, his newly-proposed classes are impermissible, and his Motion must be denied. *See Bouton v. Ocean Props., Ltd.*, 322 F.R.D. 683, 693 (S.D. Fla. 2017) ("Plaintiff cannot, as he attempts to do here, expand the scope of the proposed class at the certification stage[.]"). Indeed, to permit an expanded class definition at this stage would impermissibly allow Plaintiff to revive claims of others who are time-barred because they fell outside the tolling triggered by the definitions

contained in the initial Complaint.  *See In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935–36 (9th Cir. 1996) (expanded class definition cannot take advantage of tolling triggered by original complaint); *In re. Vivendi Universal, S.A. Securities Litig.*, 284 F.R.D. 144, 149 (S.D.N.Y 2012) (denying proposed expansion of class definition because it would include otherwise time-barred claims).

The impermissibility of Plaintiff's new classes is further compounded by the timing of his proposed amendment.  In stark contrast to the cases Plaintiff cites (at 7), here, Plaintiff improperly proposed new class definitions *after* the close of discovery.  He then claims Defendants did not produce evidence *during* discovery that Plaintiff's yet-to-be-proposed classes contained consenting customers.  Though Plaintiff's representation is both false and irrelevant, it highlights why Plaintiff's eleventh-hour amendment should be rejected.  *See Chapman v. First Index, Inc.*, No. 09-C-5555, 2014 WL 3511227, at *3 (N.D. Ill. July 16, 2014) (amendment to class definition after close of discovery improper because it was "exactly the type of switcheroo" courts counsel against) (citing *Johnson v. Cypress Hill*, 641 F.3d 867, 873 (7th Cir. 2011)).

### B.    Plaintiff Has Not Proposed Ascertainable Classes.

In this Circuit, ascertainability is a prerequisite to class certification with two separate sub-requirements: (1) the classes must be clearly-defined; and (2) there must be an "administratively feasible" way to identify people that fall within the clearly-defined classes.  *Bush v. Calloway Consol. Grp. River City, Inc.*, No. 3:10-cv-841, 2012 WL 1016871, at *4 (M.D. Fla. Mar. 26, 2012).  Plaintiff satisfies neither requirement here, and his Motion must be denied.

13

### 1.  The proposed classes are hopelessly vague.

As to the first requirement, proposed classes must be clearly defined because vague definitions "portend[] significant manageability problems for the court" and prohibit the court from being able to ascertain membership "by reference to objective criteria." *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 668 (S.D. Fla. 2009) (cit. omitted).  Here, Plaintiff has purposefully proposed vague classes in attempt to avoid issues of "consent" that routinely preclude a finding of predominance in "wrong number" cases like this one.  However, by doing so, he renders those same classes incapable of being ascertained.

For example, each class includes persons "whose cellular telephone number" Defendants purportedly called.  (Mot. at 7.)  But Plaintiff fails to explain whether this definition includes cellular *subscribers* (the person who signed up for service), *users* (the person(s) who used the phone number), or *both*.  This distinction is critical in a TCPA case because the "non-subscriber customary user of the phone" may consent to receive calls, consent is a complete defense to liability, and it is impossible to identify non-subscriber customary users of cellular phones in any feasible way, as proven by the declarations of ████████████.  *See, e.g.*, *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (failure to distinguish "user/subscriber of a phone" rendered class unascertainable); *Soulliere v. Ctrl. Fla. Inv., Inc.*, No. 8:13-CV-2860, 2015 WL 1311046, at *4 (M.D. Fla. Mar. 24, 2015) (citing *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014)).

Plaintiff also ties class membership to unspecified entries made somewhere in Defendants' collective records that purportedly "document the [cellular phone] number as a wrong number."  (Mot. at 7.)  But Plaintiff does not specify what "records" those may be, which

"Defendant" holds those records, or what type of entry purportedly "documents" a "wrong number." Rather, throughout the Motion Plaintiff



Thus, it is not at all coextensive with Plaintiff's class definitions which appear to incorporate ███████████████████ For this additional reason, it is unclear what numbers (much less persons) fall within his class definitions.

Each of these vague elements of Plaintiff's class definitions precludes Plaintiff from ascertaining his proposed classes. *See, e.g.*, *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 266–67 (S.D. Fla. 2003) (denying certification where class definitions vague and thus unmanageable).

> **2. Plaintiff cannot identify the members of his proposed classes in an administratively feasible manner.**

Plaintiff also cannot satisfy the more important ascertainability requirement: proposing an "administratively feasible method by which class members can be identified" that "does not require much, if any, individual inquiry." *Karhu*, 621 F. App'x at 946–47 (cit. omitted). Despite initially protesting (at 11–12) that he should not be held to this Circuit's ascertainability standard (he should[4]) and (at 12–14) that a mere "list" of numbers is sufficient to satisfy his

---

[4] While Plaintiff is correct that *Karhu* is unpublished, its adoption of a heightened ascertainability standard is well-supported by precedent and uniformly followed in the Eleventh Circuit. 621 F. App'x at 947–50 (citing *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782 (11th Cir. 2014)); *see, e.g.*, *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 681 (M.D. Fla. 2015). Plaintiff's citation to *City Select Auto Sales, Inc. v. BMW Bank of N. A., Inc.*, does not support the application of a lesser standard but rather confirms a plaintiff must propose an administratively feasible method by which to identify class members. 867 F.3d 434, 439 (3d Cir. 2017).

burden in other circuits (it is not[5]), Plaintiff ultimately suggests (at 15–18) identifying class members by: (1) pointing to a list of wireless phone numbers cobbled together by his expert; (2) subpoenaing wireless carriers; and (3) weeding out BHN's customers with self-identifying affidavits.  His proposal fails.

As an initial matter, discovery is now closed, and it is too late for Plaintiff to serve new mass subpoenas.  *See Kapiti v. Kelly*, No. 07-CIV-3782, 2008 WL 3874310, at *5 (S.D.N.Y. Aug. 18, 2008) ("further discovery. . . misconceives the nature of the burden on a plaintiff moving for class certification: plaintiff must show that the requirements of Rule 23 have been met before the class can be certified.");  *Hartman v. United Bank Card., Inc.*, 291 F.R.D. 591, 595, 597–58 (W.D. Wash. 2013).

More importantly, however, the wireless carriers that would be the subject of those subpoenas have provided sworn statements that it █████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ ■

██████████████████████████████████████████████████████████████

---

[5] The majority of cases Plaintiff cites (at 13) were decided in circuits that apply lesser ascertainability standards or decided without reference to *Karhu*.  Regardless, even those courts would not find a "list" of numbers sufficient, as Plaintiff's proposed class definitions are much more complex than those in the blast-fax and telemarketing cases he cites.  Indeed, none of the cases Plaintiff cites required: (1) identifying class members by reference to numerous third-party sources; (2) identifying both customary users and subscribers of a cellular number; (3) eliminating the defendant's customers; and (4) identifying calls tied to an amorphous "wrong number" (or similar) record.

[6] ████████████████████████████████████████████████████████

████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ the class period at issue here.  (*Ibid.*)  These sworn,

unrebutted statements are fatal to Plaintiff's ascertainability proposal.[7]

Serving subpoenas to identify class members is also not administratively feasible
because BHN is subject to the Cable Communications Policy Act of 1984 ("CCPA") and, as
such, may only permit its customers' information (including phone numbers) to be sent to
wireless carriers for the stated purpose of identifying customers *after* obtaining consent from,
or providing notice to, each and every customer.  47 U.S.C. § 551(c)(1)-(2).  This would require
contact with persons who have not been customers for many years and f███████████████
██████████████████████████████████████ (BHN Decl. ¶ 27; Parker Decl. ¶ 3.)
In any event, this approach would require a massively complex and expensive notice program,
which would be unlikely to reach many of BHN's historic customers.  This "enormous and
disproportionate burden" of notifying subscribers that their personally identifiable information
will be released and/or obtaining thousands of consents *alone* renders the class "not
administratively feasible" and non-certifiable.  *See generally Warnick*, 301 F.R.D. at 558.

And even if it were feasible to identify some subscribers of the cellular numbers at issue,
Plaintiff would still not be able to weed out BHN's customers with affidavits from class-
members attesting they are not BHN customers, as Plaintiff would have to cross-reference such

---

[7] The submission of these sworn carrier statements distinguishes this case from those cited by Plaintiff (at 15–16)
for the false proposition that "subpoenaing the carriers for purposes of identifying class members is common
practice, and courts have repeatedly approved such procedures in TCPA actions."  Those cases are further
inapposite because they concerned the use of "reverse look ups" (not subpoenas), which Plaintiff does not propose
because they are entirely unreliable, were decided post-certification or in the settlement context (where the
defendant was not contesting ascertainability), or were otherwise decided in circuits with no administrative
feasibility requirement.

affidavits with Defendants' records.  *Karhu*, 621 F. App'x at 948 ("allowing class members to self-identify" as, *e.g.*, non-customers "without affording defendants the opportunity to challenge class membership provide[s] inadequate procedural protection to Defendants and implicates their due process rights.") (cit. omitted).[8]  But again, discovery is closed and Plaintiff cannot acquire such records from Defendants.  Regardless, ████████████████████████████ ███████████████████████████████████████████and any review of BHN's records to identify customers would first require a burdensome notice process under the CCPA, which is not "administratively feasible" for the reasons explained above.  And even if that were not so,

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

Accordingly, Plaintiff has not demonstrated that identifying the members of the classes he proposes is a "manageable process" that does "not require much, if any, individualized inquiry," and certification should be denied.[9]

## C.    Individual Issues Will Predominate Over Common Inquiries at Trial.

Even if Plaintiff could identify a fraction of his proposed classes (he cannot), mini-trials would still be required on a litany of issues to determine whether Defendants are ***liable*** to each

---

[8] *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) ("Forcing [Defendants] to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications.").

[9] Plaintiff suggests (at 12) in passing that publication may resolve any lingering ascertainability concerns; however, as his own authority recognizes, publication is only appropriate when the vast majority of class members are already capable of identification, not in cases like this where the reverse is true.  *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1304–05 (11th Cir. 2012) (approving of publication only after hundreds of thousands of class members sent notice).

of the thousands of proposed class members.  Thus, Plaintiff has not and cannot satisfy his burden to show that common issues would predominate over those "subject only to individualized proof" at trial, as he must to obtain certification.  *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (cit. omitted).  This is the most important reason that his Motion fails.

### 1.  Individual issues of consent predominate and preclude certification.

Consent is a complete defense to Plaintiff's TCPA claims.  Here, Defendants had both implied and contractual consent to call every single number provided to BHN and they are entitled to prove at trial that each call they made to the phone numbers forming the foundation of Plaintiff's proposed classes fell within that consent.  *See Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33, 2015 WL 1909765, at *7 (M.D. Fla. Apr. 27, 2015) (recognizing "constitutional right to a jury determination as to whether any person consented to receiving calls to their cellular telephone.") (cit. omitted).  For that reason, courts across the country—including this Court—have recognized that individualized inquiries into every call at issue are necessary to resolve the issue of consent in cases like this one, where there is no way to determine if and how consent may have been "lost" in one fell swoop, precluding certification. *See, e.g., Tillman*, 2017 WL 7194275 at *6–7; *accord Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1037 (D. Nev. 2018); *Davis v. AT&T Corp.*, No. 15-CV-2342, 2017 WL 1155350, at *6 (S.D. Cal. Mar. 28, 2017); *Espejo v. Santander Consumer USA, Inc.*, No. 11-C-8987, 2016 WL 6037625, at *10 (N.D. Ill. Oct. 14, 2016); *Shamblin*, 2015 WL 1909765 at *12; *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 577–78 (S.D. Cal. 2013).[10]

---

[10] Plaintiff cites *Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015), *Johnson v. Navient*, 315 F.R.D. 501 (S.D. Ind. 2016), *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017), *Lavigne v. First*

Plaintiff nonetheless contends he can prove on a class-wide basis that ATS called a "wrong number" without consent ███████████████████████████████████ ████████████████████████ Setting aside that Plaintiff's theory is flatly wrong, ███████ ████████████████████████████████████████████████████████████ multi-layer hearsay, which **cannot** be used at trial to prove Defendants lacked consent to make the calls at issue. *See United States v. Jenkins*, 499 F. Supp. 2d 1268, 1285–86 (M.D. Fla. 2007) (bank records showing notes made by collector of telephone conversations with customers inadmissible hearsay); *Neagle v. Ill. Tool Works, Inc.*, No. 1:08-CV-2080, 2011 WL 13173913, at *5 (N.D. Ga. Feb. 11, 2011) (business records reflecting what employee said about what third party said inadmissible hearsay).

Regardless, t███████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████



---

*Community Bancshares, Inc.*, No. 1:15-cv-00934, 2018 WL 2694457 (D.N.M. June 5, 2018), and *Reyes v. BCA Fin. Servs.*, No. 16-24077, 2018 WL 3145807 (S.D. Fla. June 26, 2018) for the opposite conclusion. Those cases are all distinguishable as: (1) Defendants have proven that, *in this case*, ███████████████████████████████████████████████████████ (2) other individualized issues unique to *this case* preclude certification, *e.g.*, users of BHN's services may be bound to arbitrate their claims even if they are non-customers; and (3) Defendants have presented unrebutted evidence from the wireless carriers that prove Plaintiff's proposal for ascertaining the class is meritless. Further, with the exception of *Reyes*, Plaintiff's cases were all decided outside of this Circuit, which has a heightened ascertainability requirement. Finally, even on their different facts, those cases were wrongly decided, as this Court recognized in *Tillman* when denying both class certification and a motion for reconsideration despite the plaintiff's citations to *Abdeljalil* and *Johnson* (on which the later *Reyes, Lavigne*, and *West* opinions were based). (D.E. 131, 161). Other courts have reached the same conclusion. *See, e.g., Davis*, 2017 WL 1155350 at *2–3; *see also infra* n. 15 (collecting cases).

[11] Contrary to Plaintiff's argument (at 15), Defendants are not required to anticipate class actions that might be filed against them and enact recordkeeping practices to help identify members of those future classes. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F. 3d 349, 356 (3d Cir. 2013) ("[T]he nature or thoroughness of a defendant's record keeping does not alter the plaintiff's burden to fulfill Rule 23's requirements. . . . Rule 23's requirements cannot be relaxed or adjusted on the basis of [Plaintiff's] assertion that [Defendant's] records are of no help to him."); *Haskins v. First Am. Title Ins. Co.*, No. 10-5044, 2014 WL 294654, *13 (D.N.J Jan. 27, 2014) (in denying certification, noting, "[i]mportantly, [Defendant] is not required to keep records for class certification purposes.").

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████ ATS's testimony is

further supported by an analysis of BHN's records ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ ██ ████████

          ██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

██ ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████



Despite all this evidence p

Plaintiff criticizes Defendants (at 17) for not producing individualized

---

[13] Far from being a case in which the statements have "circumstantial guarantees of trustworthiness," FED. R. EVID. 807(a)(1), this Court has already concluded that "wrong number" representations made by presumptive debtors in the debt collection context are subject to serious doubt, *Tillman*, 2017 WL 7194275 at *7, which ATS's own declarants and experiences confirm, *see supra* § II.B.

evidence during discovery of people "in the class lists" who are "actually one of [BHN's] customers." This statement is disingenuous, misguided, and wrong. It is disingenuous because no list of persons falling within his proposed classes exists and Plaintiff never requested such individualized information from Defendants (because he realized that the necessity of analyzing such information would preclude certification),[14] and he did not even disclose his class definitions until after the close of discovery. Plaintiff's criticism is misguided because it is *not Defendants' burden* to undertake such individualized inquiries; instead, it is Plaintiff's burden to prove that such individualized inquiries are not necessary and will not predominate. *See In re Yasmin*, No. 3:09–md–02100, 2012 WL 865041, at *21 n.51 (S.D. Ill. Mar. 13, 2012) ("Plaintiff criticizes defendant for failing to provide evidence that [the case] involves an intensive and individualized . . . assessment . . . . It is not defendant's burden, however, to prove that class certification is improper."); *accord Meja v. DHL Express (USA), Inc.*, No. CV-15-890, 2016 WL 9450680, at *6–7 (C.D. Cal. Feb. 25, 2016). It is also misguided because it assumes Defendants' consent only comes from BHN's customers. (*Infra* § IV.C.2.) And finally, Plaintiff's contention is wrong because Defendants *have produced significant evidence* ███████████████████████████████ and thus that Plaintiff's proposed classes are filled with numerous consenting persons who cannot be identified without the individualized inquiries explained herein. This evidence includes declarations, Defendants' business records, expert reports, and even Plaintiff's expert report.

Thus, there is even more evidence here that individualized inquiries will predominate

---

[14] In fact, Plaintiff refused ATS's offer to produce a sample of recordings that may have been relevant to such an inquiry. (D.E. 101 at 5; D.E. 110 at 2.)

than there was in *Tillman* and certification therefore should be denied.  *See Tillman*, 2017 WL 7194275 at *7; *Davis*, 2017 WL 1155350 at *6 (denying certification on predominance grounds in similar case because "complete analysis" of each "call recipient's individual circumstances" would be required to determine whether defendant has consent to make calls).[15]

### 2.  Plaintiff's proposal to exclude non-customers solves nothing, as numerous individual issues remain.

Plaintiff contends (at 23) he has avoided the individual inquiries of consent that routinely doom certification in TCPA cases like this one by excluding BHN's customers from his proposed classes.  Assuming it were even feasible to do that (it is not, as explained *supra* § IV.B.2), crippling individualized issues would remain, including consent *and* at least four other issues that Plaintiff ignores entirely in his Motion.

First, limiting the class to non-customers does not obviate individualized inquiries into consent.  *See Warnick*, 301 F.R.D. at 559 ("[T]he fact [defendant] had *consent* to call a particular number does not turn on whether the called party was the actual, *named customer* in [defendant's] records.") (emphasis in original).  Defendants can defeat a non-customer's TCPA claim to the extent they can prove that a customer *used* the underlying phone number and gave BHN consent to call that number.  *See Bridge*, 294 F. Supp. 3d at 1040 (denying class certification in similar case, noting "[l]imiting the class to [cellular] subscribers who are not

---

[15] *See also Bridge*, 294 F. Supp. 3d at 1037 (denying certification in "wrong number" case because "individual issues of consent predominate and render the class action an inferior method to fairly and efficiently adjudicate the TCPA claims"); *accord Gene and Gene LLC*, 541 F.3d 318, 329 (5th Cir. 2008); *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 689 (D. Md. 2017); *Stein v. Monterey Fin. Servs.*, 2:13-CV-01336, 2017 WL 412874, at *5 (N.D. Ala. Jan. 31. 2017); *Espejo*, 2016 WL 6037625 at *10; *Newhart v. Quicken Loans, Inc.*, No. 9:15-CV-81250, 2016 WL 7118998, at *2 (S.D. Fla. Oct. 13, 2016); *Shamblin*, 2015 WL 1909765 at *12; *Warnick*, 301 F.R.D at 559; *Ott v. Mortg. Investors Corp. of Ohio*, 65 F. Supp. 3d 1046, 1067 (D. Or. 2014); *Connelly*, 294 F.R.D. at 577–78 ; *Balthazor v. Cent. Credit Servs., Inc.*, No. 10-62435, 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012); *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 330 (N.D. Tex. 2012); *Hicks v. Client Servs., Inc.*, No. 07-61822, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008).

[defendant's] account holders does not eliminate the necessity of determining whether the phone number was customarily used by a[n] [] account holder."). And only an individualized inquiry will permit Defendants to identify the user of any particular number, as wireless carriers cannot provide that information. (*Supra* § IV.B.2.) Defendants can also defeat a non-customer's claim by proving he or she provided the phone number to BHN, or the customer had permission to give BHN the non-customer's phone number—both scenarios that BHN fre███████████████████████████████████████████████████

████████████████████████████████████████ *See Warnick*, 301 F.R.D. at 558–59 (in denying certification, noting "family, friends or roommates" may all "have provided consent to be called."); *Davis*, 2017 WL 1155350 at *6 (in denying certification, noting "if Defendant's customer provided a number belonging to another person, such as a spouse or other family member, an inquiry into that customer's authority to provide consent to call that number would be required").[16]

BHN's and its affiliates' own litigation experience proves these scenarios frequently occur and that a highly-individualized inquiry is necessary to resolve the question of consent in such circumstances. (BHN Decl. ¶¶ 32–33.) For example, in *W*███████████████████████ ████████████████████████████████ the plaintiff claimed to have received "wrong number" c███████████████████████████████████████████████████

███████████████████████████████████████████████████████████ (*Id.* ¶ 32(d).) A similar scenario occurred in *Benedetti v. Charter Communications, Inc.*, where the

---

[16] *See also, e.g.*, *In re Dish Network, LLC*, 28 FCC Rcd. 6574 ¶ 28 (2013) (determinations of consent require application of "not only formal agency [principles], but also principles of apparent authority and ratification.").

25

plaintiff claimed she received "wrong number" calls intended for someone else a ████████

██████████████████████████ but a detailed investigation ██████████

██████████████████ revealed she was the customer's nanny and had affirmatively

given her number to the customer so he could add it to the account.  No. 1:17-CV-02083, 2018

WL 2970998, at *1–2 (S.D. Ind. June 13, 2018) (denying summary judgment because of fact

question on issue of consent); BHN Decl. ¶ 33(a).  These examples, among others outlined in

BHN's declaration, demonstrate that individualized inquiries as to consent are required

regardless of whether customers are excluded from the class.

Second, Plaintiff's classes will necessarily include thousands of non-customer *users* of

BHN's services who may be bound by one of several arbitration provisions with class-action

waivers and therefore prohibited from pursuing a TCPA claim in court or participating in this

case.  (BHN Decl. ¶¶ 5, 6(c)–(e); Parker Decl. ¶ 3.)  Thus, fact-intensive inquiries would be

necessary to determine not only which class members used BHN's services, but also which

members used them enough to fall within the scope of BHN's several different RSAs.  *See*

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("[T]raditional principles of state

law allow a contract to be enforced by or against nonparties to the contract through . . . third-

party beneficiary theories[.]") (cit. omitted); *Miccosukee Tribe of Indians of Fla. v. Cypress*,

814 F.3d 1202, 1207 (11th Cir. 2015) ("The determination whether a signatory . . . had the

authority to bind a non-signatory . . . to arbitrate turns on the specific facts of each case[.]") (cit.

omitted).  Again, BHN's and its affiliates' own experience proves just how fact-intensive these

issues can be.  (BHN Decl. ¶ 33 (citing *Memmer v. Bright House Networks, LLC*, No. 17-

000683 (Fla. Cir. Ct. Jan. 26, 2018) (where parties have, thus far, spent 19 months and 23 filings

litigating enforcement of arbitration term in BHN's RSAs and whether opt-outs were effective); *Anderson v. Charter Commc'n, Inc.*, No. 17-CV-1684 (E.D. Wis. Apr. 23, 2018) (ordering discovery on issue of whether plaintiff, the roommate of a customer, could be compelled to arbitrate his TCPA claim against BHN's parent, Charter).)  And because there were a limited number of cable providers in the geographic areas in which BHN operated, the number of non-customer users of BHN's services subject to arbitration would necessarily be high.  Thus, issues of arbitration alone preclude certification.  *See, e.g., Little*, 691 F.3d 1302 (affirming denial of certification); *Tillman*, 2017 WL 7194275 at *7 (recognizing arbitration as individualized issue).[17]

    Third, individual inquiries will be required to determine whether Defendants have liability to the PRV Class because Defendants can only be liable under the TCPA for calls on which prerecorded or artificial voice actually played.  *Ybarra v. DISH Network, LLC*, 807 F.3d 635, 640 (5th Cir. 2015) (based on plain language of TCPA, to "use" a prerecorded voice means it must "actually play").  ███████████████████████████████████████████████████████████████████████████ the only way to do so would be to examine cellular carriers' records one-by-one and examine the person who may have heard the recorded message at trial to determine things like, *e.g.*, whether his or her voicemail was full during the time in question.  *See Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *7 (S.D. Fla. Nov. 3, 2014) (no predominance where, *inter alia*, individualized inquiry necessary to determine whether prerecorded voice played).

---

[17] *See also, e.g., Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 728 (9th Cir. 2007) (issues regarding enforceability of arbitration provisions defeat predominance); *Hill v. T-Mobile USA, Inc.*, No. 2:09-CV-1827, 2011 WL 10958888, at *6 (N.D. Ala. May 16, 2011) (same); *Sanders v. Robinson Humphrey/Am. Express, Inc.*, Nos. C 85-172A, C 85-1586 A, C 85-1891 A, 1986 WL 10096, at *6 (N.D. Ga. July 8, 1986) (same).

Fourth, individual inquiries will also be necessary to determine whether each class member has standing to pursue a TCPA claim against Defendants. *See Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687, 694 (S.D. Fla. 2016) ("A class must be defined in such a way that every member of the putative class would have standing to assert the relevant claims.") (cit. omitted); *accord JWD Automotive, Inc., v. DJM Advisory Grp. LLP*, No: 2:15-CV-793, 2017 WL 2875679, at *2 (M.D. Fla. July 6, 2017) (Steele, J.). For example, a subscriber who falls within the class may nonetheless lack standing to pursue a TCPA claim because he never used the phone number and never even knew ATS made the allegedly offending call. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("[A] bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III."); *Tillman*, 2017 WL 1957014 at *5–8 (explaining plaintiff had standing because he "received" calls of which he was "aware").

Fifth, assuming that Defendants may be liable for any calls (which they deny), a further individualized inquiry would be necessary to determine the appropriate distribution of damages. That is, as it appears that *both* a subscriber and customary user of the same number would be members of the classes, the Court will have to determine which class member is entitled to damages or whether they should equitably split damages. *See Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 325 n. 13–14 (3d Cir. 2015). That is the exact type of individualized inquiry that precludes certification. *See Brown v. Electrolux Home Products Inc.*, 817 F. 3d 1225, 1240 (11th Cir. 2016) ("[I]ndividualized damages defeat predominance when they are accompanied by 'significant individualized questions going to liability[.]'") (cits. omitted).

Thus, as this Court already held when declining to reconsider its denial of class

certification in *Tillman*—where the individual issues were less acute and defendant's evidence less robust—eliminating customers does nothing to avoid individualized inquiries of consent:

> In an attempt to circumvent the individualized issues identified by the Court in its Opinion denying class certification, plaintiff ***now seeks to limit the class to those individuals that are not customers of [defendant] where a "wrong number" notation was included for their phone number***.  Even if the Court allowed plaintiff to amend the class definition after certification has been denied, the Court finds that ***individualized issues would still remain***.

*Tillman*, 2017 WL 8314651 at *2 (emphasis added).

### D.      Plaintiff's Questions Do Not Satisfy the Commonality Requirement.

Certification should also be denied because the four "common questions" Plaintiff identifies (at 18) do not even satisfy Rule 23(a)'s more basic requirement that a class-wide proceeding "generate common answers apt to drive the resolution of the litigation."  *Dukes*, 564 U.S. at 350–51.

<u>First</u>, whether Defendants used an ATDS to make the calls at issue is not a common question because ███████████████████████████████████████████████ ███████████████████.[18]  *See Bridge*, 294 F. Supp. 3d at 1032–33 (no commonality when different systems used to make calls).  <u>Second</u>, Plaintiff contends that whether a call was "placed with a prerecorded voice" is a common question.  But Plaintiff must prove that a pre-recorded voice *actually played* to establish liability, and ███████████████████████████████ ███████████████████████████████████████.  *Ybarra*, 807 F.3d at 640; *Fitzhenry*, 2014 WL 6663379 at *7.  <u>Third</u>, Defendants' "policies and practices with ██████████████████ ███████████████████████████████████████████████████████████████

---

[18] Plaintiff's identification of this "common question" is curious, as he has conducted no analysis of the systems Defendants' used and, now that discovery is closed, cannot do so.

████████████████████████████   *See Rhodes v. Cracker Barrel Old Country Store, Inc.*, No. 4:99–CV–217, 2002 WL 32058462, at \*56–59 (N.D. Ga. Dec. 31, 2012) (no common question when decision-making (like coding, here) was decentralized).  And <u>fourth</u>, whether Defendants acted in "willful" violation of the TCPA (they did not) is also not a common question, as willfulness turns on the facts of each call.  *See Ginwright*, 280 F. Supp. 3d at 687 (in denying certification, noting willfulness is a fact-specific determination, not a common issue in TCPA litigation).

Thus, the proposed classes do not satisfy Rule 23(a)'s commonality requirement. *Shamblin*, 2015 WL 1909765 at \*7.

### E.      Neither Class Counsel Nor Plaintiff Are Adequate to Represent the Classes.

Plaintiff's Motion also fails because neither counsel nor Plaintiff is adequate to represent the classes, as Rule 23(a) requires.  *See Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973). Anything "pertinent to counsel's ability to fairly and adequately represent the interests of the class" bears on the class certification decision.  FED. R. CIV. P. 23(g)(1)(B).  Thus, despite Plaintiff's baseless statements to the contrary, "[i]t is entirely proper for the trial court to consider the ethical conduct of plaintiffs' counsel in deciding whether to grant class certification," including violations of applicable ethics rules.  *Haynes v. Shoney's, Inc.*, No. 89-30093, 1992 WL 752127, at \*15 (N.D. Fla. June 22, 1992).  Here, counsel are unethically controlling this litigation to protect their own financial interests to the detriment of Plaintiff and the class, rendering both counsel and Plaintiff inadequate and precluding certification.

As a preliminary matter, Plaintiff's counsel utilized an engagement agreement that underhandedly transforms from a standard contingency fee arrangement to a retroactive-hourly-

fee agreement should Plaintiff settle or dismiss the case against their advice:

> **Exception for Individual Settlement Agreement Against Attorneys' Advice**:
> If Client abandons the class and settles on an individual basis against the advice
> of Attorney, Client shall be obligated to pay Attorney their normal hourly rates
> [of up to $600 per hour] for the time they expended in the case, and shall be
> obligated to reimburse the Attorney for all expenses incurred.

(the "Settlement Restriction").   (Watstein Decl., Ex. 6 ("Corsmeier Report") at Ex. 6 at

PLT000864.)  In effect, this term prohibits Plaintiff from settling the case individually *for any*

*reason*, lest he face hundreds of thousands of dollars of liability to his own counsel that he

could never afford to pay—even if a settlement would be in the best interests of Plaintiff or the

classes.   That conflict is not merely hypothetical, as Defendants have specific defenses to

Plaintiff's claims, destroying typicality and precluding certification, as explained in Section

IV.F.

The Settlement Restriction is anything but "standard," as counsel contends, and instead

runs afoul of the Rules Regulating the Florida Bar by impermissibly burdening Plaintiff's right

to "deci[de] whether to settle" this case and charging a "clearly excessive fee."  *See* R. REG.

FLA. BAR 4-1.2, 4-1.5; *Fla. Bar v. Hollander*, 607 So. 2d 412, 415 (Fla. 1992) (provision in

engagement agreement may not "intimidat[e] a client from exercising the right to terminate

representation" or "exact a penalty for a right of discharge").   (*See also* Corsmeier Report §

VI.1.)  Indeed, as Plaintiff's own expert conceded, it places a "substantial financial obligation"

on Plaintiff (who is admittedly nearly destitute) that is "an impediment to [] settling"—one he

had never seen before in his forty years of experience providing counsel to attorneys.[19]

(Watstein Decl., Ex. 7 ("Tozian Dep.") at 17:2–10, 127:8–15, 138:18–25, 183:19–22.)   It is

---

[19] Even Plaintiff, upon realizing that he effectively could not settle, said he felt that it "isn't right" and he "do[es]n't
like it." (Corsmeier Report at 4 (citing Plaintiff's testimony).)

thus unsurprising that the only court to squarely consider such a provision found it unethical. *See*, *e.g.*, *Compton v. Kittleson*, 171 P.3d 172 (Alaska 2007) (under substantively identical ethics rules, holding agreement requiring plaintiff to pay hourly fees upon individual settlement unethical because it "impermissibly burden[ed] the client's exclusive right to settle a case").[20]

Counsel cannot cure this deficiency, as they contend (at 22), by revising the engagement letter to fix a "technical" inadequacy. The harm here is anything but "technical" and has already occurred, as Plaintiff was stripped of the opportunity to make settlement decisions on several occasions. And should Plaintiff obtain certification of his classes, he will permanently lose the opportunity to accept any individual settlement. Counsel nonetheless cites to *Jamison v. First Credit Services* for the proposition their agreement can be amended and inadequacy cured. 290 F.R.D. 92, 105 n.6 (N.D. Ill. 2013). But that is not what *Jamison* held. Instead, it implied a similar but less draconian settlement restriction *in Plaintiff's counsel's own engagement agreement* was unethical, but nonetheless declined to rule on adequacy because it denied certification for another reason.[21] Here, the Settlement Restriction already created irreparable conflicts between counsel, Plaintiff, and the classes, rendering class treatment inappropriate. *See Piambino v. Bailey*, 757 F.2d 1112, 1144-46 (11th Cir. 1985) (vacating class settlement where conflict of interest between counsel and class would "create divided loyalties which would constitute inadequate representation").[22]

---

[20] There is also a provision in the Engagement Agreement that requires Plaintiff to pay all litigation expenses (including, ironically, the fees of counsel's ethics expert) should he "abandon" the case for any reason. (Corsmeier Report, Ex. 6 at PLT000864.) This is also an unethical penalty provision that runs afoul of *Hollander*. 607 So. 2d at 415.

[21] This case is also unlike *In re Ocean Bank*, where the court mentioned in passing that a defect in the engagement agreement could be amended to resolve adequacy concerns as to the *plaintiff*, not counsel. No. 06-C-3515, 2007 WL 1063042, at *6 (N.D. Ill. Apr. 9, 2007).

[22] *See also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 959-61 (9th Cir. 2009) (class representative inadequate

Apart from the Settlement Restriction, counsel also failed to apprise Plaintiff of information about this case that would permit him to be an adequate representative.  For example, Plaintiff testified that he did not learn of Defendants' ██████ settlement offer until *after* his counsel rejected it and *after* it expired—in direct violation of Rule 4-1.4 of the Rules Regulating the Florida Bar.  (Corsmeier Report § IV, VI.2.)  Though counsel tries to contradict that testimony through their *own* declarations and a record showing a two-minute phone call between Plaintiff and counsel (D.E. 150-2), counsel has submitted nothing *from Plaintiff* that calls into question his unequivocal testimony.  Nor did they attempt to re-direct Plaintiff's testimony at deposition, submit an *errata* sheet, or include anything about this alleged communication in Plaintiff's declaration submitted in opposition to BHN's motion for settlement conference.  Counsel is therefore bound by Plaintiff's testimony.  *See Van T. Junkins and Assocs., Inc. v. U.S. Indus. Inc.*, 736 F. 2d 656, 657 (11th Cir. 1984) (plaintiff cannot contradict "previously given clear testimony"); *Wallace v. UAM Local 1639*, No. 06-0395, 2007 WL 274368, at *2 n.3 (S.D. Ala. Jan 29, 2007) (party "bound by the sworn testimony [in] deposition").

And even if counsel informed Plaintiff of Defendants' settlement offer, they failed to provide him with the information he would need to be able to consider the offer, much less educate Plaintiff such that he could provide any input in this case as class representative.  Plaintiff testified that, after two years of litigation, he did not have any idea:

- how much he would likely receive if this case settled on an individual versus

---

because engagement letter created "unacceptable disconnect between the interests of the contracting representatives and class counsel, on the one hand, and members of the class on the other."); *In re Mid-Atlantic Toyota Antitrust Litig.*, 93 FRD 485, 489–90 (D. Md. 1982) (denying certification where fee arrangement violated the disciplinary rules and created conflict of interest between attorney and class).

33

class basis (it was less than what Defendants already offered him);

- that other persons could pursue their own TCPA claims if he settled;
- "what's happened in this case procedurally," including that dispositive motions had been filed;
- that the validity of the FCC Ruling on which his case depends had been challenged (a challenged that was recently decided in Defendants' favor);
- which of his claims were brought on an individual versus class basis;
- what those claims entailed; or
- any of the reasons that he might be unsuccessful on his claims.

(Corsmeier Report § IV (citing Plaintiff's testimony).) Plaintiff's own expert conceded a client in Plaintiff's position would need to know these things. (Tozian Dep. at 66:21–70:7.)

It is difficult to imagine more improper behavior by putative class counsel, or a less-informed putative class representative, and both are inadequate. *See Aventura Chiropractic Care Ctr., Inc. v. BB Franchising LLC*, No. 1:15-CV-20137, 2015 WL 11051056, at *4 (S.D. Fla. Aug. 26, 2015) (class representative inadequate because he was not capable of properly directing case); *Kulig v. Midland Funding, LLC*, No. 13-CIV-4715, 2014 WL 5017817, at * 5–6 (S.D.N.Y. Sept. 26, 2014) (denying certification based on inadequacy because counsel failed to inform client of settlement offer and admonished class representative not to "sell out" class through individual settlement).

**F.  Plaintiff Is Not Typical of the Classes He Seeks to Represent.**

Plaintiff also fails to show that his claims are typical of the putative classes' claims, nor can he as there are unique facts underlying his claims that preclude such a finding. *See* FED. R. CIV. P. 23(a)(3). One of Defendants' defenses to liability and enhanced damages to Plaintiff's TCPA claim w █████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ orrect or heed a non█

██████████████████████████████████████████████████████████████ This unique defense precludes a finding of typicality.  *See Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 383, n. 4 (C.D. Cal. 2016) (plaintiff not typical in a TCPA case where "major focus of this litigation will be on these issues and defenses unique to [plaintiff], not on the claims of the class."); *Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671, 678 (S.D. Fla. 2007) (noting "typicality may be destroyed by the existence of unique defenses").

Plaintiff is also not typical of the classes he purports to represent because his expert conceded ████████████████████████████████████████████████████████████ ████████████████████████████████████ (Biggerstaff Dep. at 225:11–228:14.) As explained in more detail in Defendants' forthcoming *Daubert* motion, M████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ Thus, Plaintiff would not be a member of his own purported class.  For this additional reason, Plaintiff is not typical of the classes and cannot represent them.  *See Machella v. Cardenas*, 653 F. 2d 923, 926 (5th Cir.

1981) (plaintiff not typical of a class of which he is not a member).

**G.     Plaintiff Has Not Shown the Class Is Numerous.**

Plaintiff also fails to satisfy Rule 23(a)(1), which requires him to prove that his proposed classes are "so numerous that joinder of all members is impracticable."  Here, ███████████ ████████████████████████████████████  But the class definitions Plaintiff proposes ████████████████████████████████████████████ ██████████████████████████There are also critical additional requirements to class membership; namely, that the person ██████████████████████████████ be a "non-customer."  To be clear, there is absolutely *no evidence* that any of the subscribers to, or users of, t██████████████████████████████ are non-customers of BHN, especially given Mr. Biggerstaff's ███████████████████████████Therefore, Plaintiff has failed to prove numerosity.  *See Southwell v. Mortg. Inv'rs Corp. of Ohio*, No. C13-1289, 2014 WL 3956699, at *3 (W.D. Wash. Aug. 12, 2014) ("Beyond the bare fact of the numbers themselves, Plaintiff[] present[s] no proof (nor even any argument) that the numbers accurately represent what [he] purport[s] them to represent.").

**H.     Class Litigation Is Not Superior to Individual Litigation.**

Class certification should also be denied because, here, "a class action" is not "superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  As explained above, were this case to be certified, Plaintiff would first face the impossible task of identifying historic users of the cellular numbers at issue, and then the parties would have to conduct thousands of mini-trials about consent, arbitration, whether a recorded message played on a particular call, etc.  Defendants would then be entitled, as a matter of due

process, to call tens of thousands of witnesses at trial to resolve those very issues. *See Shamblin*, 2015 WL 1909765 at *7; *Gannon v. Network Tel. Servs., Inc.,* No. CV-12-9777, 2013 WL 2450199, at *4 (C.D. Cal. June 5, 2013) *aff'd* 628 F. App'x 551 (9th Cir. 2016).   No such class action could ***ever*** be tried.

Plaintiff's counsel knows this, which presumably is why they failed to set forth any trial plan, much less a workable one that would protect Defendants' due process rights.   This "belies any suggestion that a fair administration of the class claims could 'save[] the resources of both the court[] and the parties'" and precludes certification.   *Sacred Heart Health Sys. v. Humana Military Healthcare Servs*., 601 F.3d 1159, 1184 (11th Cir. 2010) (cit. omitted); *Acker v. Bishop*, No. 2:06-CV-0710, 2007 WL 1308385, at *2 (W.D. La. Mar. 27, 2007) (Counsel's "failure to offer any realistic plan that would apply in the event of class certification adds weight to this court's conclusion that a class action is not superior to other available methods for the fair and efficient adjudication of these claims."); *accord Alligood v. Taurus Int'l Mfg. Inc*., No. CV-306-003, 2009 WL 8387645, at *8 (S.D. Ga. Mar. 4, 2009).

Moreover, the TCPA provides "built-in incentives for aggrieved plaintiffs to litigate individually" rather than on a class-wide basis.   *Espejo*, 2016 WL 6037625 at *12; *accord Smith v. Microsoft Corp.*, 297 F.R.D. 464, 469 (S.D. Cal. 2014).   Indeed, the statutory damages of $500 to $1,500 per call are more than sufficient to incentivize plaintiffs to bring individual TCPA claims.   This is proven by the fact that *over 4,000* individual TCPA actions were filed in federal courts just last year.   (Watstein Decl., Ex. 8.)   The superiority of individual actions holds true even where there are just a few calls involved, as recipients are free to file in small claims court, a "more speedy" venue.   *See Vigus v. Southern Illinois Riverboat/Casino Cruises*, 274

F.R.D. 229, 238 (S.D. Ill. 2011) (putative TCPA class members "have a quick, adequate and superior remedy in other more speedy venues such as, for example, a small claims court").

In sum, combining "the substantial difficulties involved in identifying putative class members" and the numerous individual inquiries that would be necessary at trial with "the admitted and demonstrated incentive of individuals to sue on their own behalf compels the conclusion that class treatment . . . is neither necessary nor superior to individual actions which have done, and can do, the same." *Espejo*, 2016 WL 6037625 at *12.

## V.   CONCLUSION

Plaintiff bears the burden to prove that his proposed classes are clearly defined and ascertainable, that common issues will predominate over individual ones at trial, and that a class action is the superior method to resolve his claims.   He also bears the burden to prove commonality, adequacy, numerosity, and typicality.   He has not met his burden on *any* of these elements.   Nor can he, as the record evidence conclusively proves that trying this case on a class-wide basis would be impossible.   That evidence includes Defendants' declarations and account records, declarations from two of the largest carriers in the country, Defendants' two expert reports, Plaintiff's *own* expert report, and Defendants' experience litigating the numerous individual issues identified herein, among other things.   Therefore, this Court should deny certification, consistent with its decision in *Tillman* and the several other recent decisions like it.

Respectfully submitted this 7th day of September, 2018.

**KABAT CHAPMAN & OZMER LLP**

By:  */s/ Ryan D. Watstein*
Ryan D. Watstein (Fla. Bar No. 93945)
rwatstein@kcozlaw.com

Nathan D. Chapman (Fla. Bar No. 028873)
nchapman@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Tel: (404) 400-7300

*Attorneys for Defendant Bright House Networks,
LLC*

**HINSHAW CULBERTSON LLP**

By: /s/ Justin M. Penn
Justin M. Penn (*Pro Hac Vice*)
jpenn@hinshawlaw.com
Ruel W Smith (Fla. Bar No. 36548)
rsmith@hinshawlaw.com
100 South Ashley Drive Suite 500
Tampa, Florida 33602
Tel: (813) 276-1662

*Attorneys for Defendant Advanced Telesolutions,
Inc.*

39

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 7, 2018, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all

counsel of record.

**KABAT CHAPMAN & OZMER LLP**

By:  *s/ Ryan D. Watstein*
Ryan D. Watstein (Fla. Bar No. 93945)

*Attorney for Defendant Bright House Networks,
LLC*