IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

STEPHAN H. SLIWA,

      Plaintiff,

v.

BRIGHT HOUSE NETWORKS, LLC and
ADVANCED TELESOLUTIONS, INC.,

      Defendants.

Case No. 2:16-cv-00235-JES-MRM

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Comes now Plaintiff, pursuant to this Honorable Court's Orders of September 24, 2018 (Doc. # 168) and September 27, 2018 (Doc. #170), and respectfully submits the following Reply Memorandum in support of his Motion for Class Certification (Docs. #152 and #157):

There are ▇▇▇▇ of individuals similarly situated to Plaintiff – noncustomers Defendants continued to robocall (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇) even after noting they were calling the wrong number in their own records ▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[1] Bright House instructs this Court that class certification "will also be denied in this case" (Doc. # 147, p. 2) based upon this Court's denial of class certification in *Tillman v. Ally Fin.*, 22017 WL 7194275 (M.D. Fla. 2017) while ignoring the readily distinguishable facts. ATS admitted in its deposition that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ This alone distinguishes this action from *Tillman*, wherein Mr. Tillman attempted to rely on free form notes that Ally had never intended to be used for the purpose of documenting wrong numbers. In an attempt to contort the facts to fit *Tillman*, Defendants attempt to undermine their prior testimony through a last-minute affidavit. Aside from being inadmissible on its face, this contradictory testimony is wholly conclusory and unsupported by a single document. In fact, Defendants have still not identified a single class member who consented to receive Defendants' robocalls. Defendants have failed to rebut Plaintiff's showing that class certification is appropriate.

### I. Plaintiff Has not Broadened the Scope of the Classes

Defendants claim the classes proposed for certification are broader than those set forth in the complaint. That contention is simply incorrect. Defendants' first claim is that the classes set forth in the complaint were limited to persons Defendants did not have consent to call and that the classes set forth in Plaintiff's motion are not so limited. This is false, as Plaintiff only simplified

---

[1] Defendants' illegal robodialing is a perfect example of why robocalls are the number one complaint in America with the Federal Trade Commission (FTC).

the definition to include only non-customers who, by definition, did not consent. In order to eliminate any individual issues of revocation, Plaintiff *narrowed* the class to noncustomers only.

Defendants also claim the "Prerecorded Voice Class" is enlarged. This too is incorrect. The class definition in the complaint was limited to persons called via the same dialing system that Defendants used to call the Plaintiff. *Doc. 46* at p. 13. Discovery confirmed that ATS used a single dialing system to place all of its calls during the time period at issue – the Aspect Unified IP dialer. *Doc. 157-3* at Interrogatory # 8.² Thus, every member of the "Prerecorded Voice Class" is also a member of the class set forth in the complaint – they were called by a single dialing system, which places some prerecorded calls and some calls that are not prerecorded. Defendants cannot claim to be surprised by this contention as it is in the complaint. *Doc. 46* at ¶¶ 43, 53, 61, 72, 102.

## II.     The Classes are Ascertainable

Contrary to Defendants' assertion, the 11th Circuit noted a split of authority and declined to adopt a heightened ascertainability test. *Ocwen Loan Servicing, LLC v. Belcher*, 2018 U.S. App. LEXIS 18088, *7 (11th Cir. 2018). Although the trend is to reject the administrative feasibility test (*See e.g. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017)), Plaintiff satisfies it in any case. In challenging ascertainability, Defendants claim the definitions are vague because it is not clear what counts as a "documenting the number as a wrong number in their records". This is much ado about nothing. Defendants ▮▮▮▮▮▮▮▮▮▮▮▮ that Defendant ATS testified was used to document wrong numbers as made clear in the motion, deposition testimony, and Plaintiff's expert report. *Doc. 157-4 - Van Nest Dep.* at 25:14 – 26:5.

Defendants also claim the class definitions are "hopelessly vague" because it is unclear if

---

2 Because all of the calls at issue were placed by a single system, Defendants are incorrect that determining whether that system is an ATDS as defined by the TCPA is not a common question. Defendants' contention that multiple systems were used by BHN is made only to muddy the waters. The calls at issue were placed via ATS's system, not BHN's systems. *See Doc. 157-1* at ¶ 12 (all dialer records analyzed came from ATS's system).

"whose cellular telephone number" includes any users of the telephone numbers at issue in addition to the actual subscribers to those telephone numbers. Plaintiff respectfully submits that his motion and expert report make clear the class definitions refer to persons who, like Plaintiff (*See Exhibit 1* at RFP 3), are the actual subscribers of the telephone numbers. *See Doc. 157-1* at ¶¶ 2, 38-44. In order to remove any doubt, Plaintiff confirms that the class is limited to subscribers.[3]

Plaintiff's expert already identified the class by compiling the list of telephone numbers satisfying the definition. Plaintiff submitted ample authority establishing that the list of telephone numbers at issue alone satisfies the ascertainability standard in the 11th Circuit where defendant contends the heightened standard applies. *See e.g. Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 693 (S.D. Fla. 2015) (finding TCPA class ascertainable because the plaintiff set forth a list of fax numbers to which to offending communications were sent); *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 U.S. Dist. LEXIS 177222, at *9-11 (S.D. Fla. Dec. 23, 2014) (finding list of "unique fax numbers" sufficient to satisfy ascertainability). Defendants fail to explain why these cases do not control here, even if "administrative feasibility" is required.

Further, even if Plaintiff is required to establish an administratively feasible methodology for ascertaining the *names and addresses* of the class members, Plaintiff has done exactly that by proposing to obtain that information via subpoenas to cellular telephone carriers. Plaintiff established his counsel have successfully identified class members through this process in other cases (*Doc. 157* at p. 15, citing *Martin v. Global Tel*Link Corp.*, 2017 U.S. Dist. LEXIS 53899, *8-9 (C.D. Cal. 2017) (identifying over one million class members through subpoenas to ten

---

3 The subscribers to these telephone numbers have a cause of action under the TCPA, even if they didn't personally answer the phone when defendants called. Thus, there is no need to identify any additional users who may have answered the phone. *See Maraan v. DISH Network, L.L.C.*, 2014 U.S. Dist. LEXIS 162241, *15 (S.D. Ohio 2014) ("That Dr. Maraan did not answer the calls does not rob him of standing in this Court's view. He subscribed to a cellular telephone service on behalf of himself and other family members, a fairly typical and provider-encouraged scenario, and that status alone permits him to bring suit under the TCPA."); *Gutierrez v. Barclays Group*, 2011 U.S. Dist. LEXIS 12546, 2011 WL 579238, at *5 (S.D. Cal. Feb. 9, 2011) ("[T]he TCPA is intended to protect the telephone subscriber, and thus it is the subscriber who has standing to sue for violations . . . .")

3

telephone carriers, which cost less than $2,000 total)) and further established that his expert utilized data provided by the in other cases for the same purpose. *Doc. 157-1* at ¶¶ 38-44.

Defendants contend such a process would be improper here because discovery is closed. Of course, Defendants argument would preclude them from arguing any class member consented as it is Defendants' burden to prove their defense and they have failed to identify any class members that consented or are anything but noncustomers. Further, Plaintiff would seek the identities merely to obtain their contact information necessary for notice and also offered it as an added check to verify they are non-customers if deemed necessary by the Court. Moreover, the administrative feasibility test does not require Plaintiff to have already identified anyone, but only that they *can be* ascertained. *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449, * 30 (S.D. Fla. June 26, 2018)(holding list of numbers identified as wrong numbers sufficient.).

Defendants also contend the subpoena process would be "expensive", "time consuming", and "immensely difficult", relying on affidavits from two undisclosed witnesses, who are apparently employees of Verizon and Sprint.[4] Defendants never identified these witnesses in their initial disclosures but instead attached their affidavits to their response brief after the close of discovery with no forewarning whatsoever. Plaintiff has not had the opportunity to depose or obtain any discovery from these affiants. The affidavits should be disregarded or stricken per Fed. R. Civ. P. 37(c)(1); *Knight v. Miami-Dade Cnty.*, 856 F.3d 795, 812 (11th Cir. 2017). However, the affidavits actually support Plaintiff's primary contention – that carriers collect and can provide the names and addresses of the subscribers to their standard, postpaid accounts. *See Schmidt (Verizon) Affidavit* at ¶ 6; *Howard (Sprint) Declaration* at ¶ 6. Moreover, although the

---

4 These affidavits are also false as both Verizon and Spirit has provided subscriber and user information in response to subpoenas with virtually no costs associated with doing so. For example, in *Martin,* Verizon produced the same information for over two hundred thousand subscribers, demonstrating it can be, and *is,* done in TCPA class cases. *See Exhibit 8.* Sprint did the same in both *Martin* and *Johnson v. Yahoo*. *See Exhibit 9.*

4

declarations similarly imply that the carriers may not always collect verified additional user information, the class is, as explained above, limited to subscribers. The undisclosed declarations do not rebut Plaintiff's showing this is a feasible methodology of identifying class members.

Defendants also contend subpoenaing the carriers is not administratively feasible because that the Cable Communications Policy Act (47 U.S.C. 551(c)) prohibits it from disclosing its customers phone numbers to third parties without consent. This argument fails for two reasons. First, it is already clear the numbers at issue do not belong to Defendants' customers – Defendants already noted that fact in its own records with ██████████. Second, Defendants already disclosed the numbers to third parties (the Plaintiff and his expert). It cannot now claim, after doing so, that it is prohibited from disclosing (or allowing Plaintiff to disclose) a mere list of telephone numbers (with no other identifying information) to telephone companies via subpoena.

Finally, Defendants contend this process is not feasible because the names and addresses identified would have to be cross referenced against its records to determine whether they match its customers. Defendants fail to explain why is not feasible to merely search its records for the specific names and addresses identified to see if there are any matches, especially when it would take all of five minutes to cross reference ██████████ information via a single computer query. The process of querying its records for such basic terms is a ministerial function like ██████████████████████████████████████████████████████. *See Exhibit 2 - Zitko Dep.* at 175:24 – 176:23; *Exhibit 3 - Van Nest Dep.* at 49:14 – 50:15. Moreover, there is no merit to the contention that it would be improper here because "discovery is closed and Plaintiff cannot acquire such records from Defendants" (Response Br. At p. 18). Plaintiff asked for such records in discovery more than a year ago. *Exhibit 1* at RFP 3, 4, 5, &7; *Exhibit 4* at Rog. 4.

5

### III.   Individual Issues of Consent do not Predominate

Defendants claim individual issues of consent will predominate this action, yet they have not even attempted to identify a single class member that they contend consented to receive the calls at issue. Hypothetical assertions of consent that are unsupported with specific evidence as to any class member, like those made by Defendants here, are insufficient to rebut a showing of predominance. As explained in *Barfield v. Sho-Me Power Elec. Coop.*:

> "While the existence of individual defenses may be important in a court's decision to certify a class, the relevance of such defenses must be subjected to the same rigorous inquiry as plaintiffs' claims. Sho-Me and Tech point to no evidence that even one class member consented to their cable use. Their unsupported allegation of individual consent questions does not undercut the district court's finding that common questions predominate over individual ones."

852 F.3d 795, 806 (8th Cir. 2017). Courts across the country have applied the same rule in numerous TCPA cases. "[I]ssues of individualized consent typically predominate when a defendant sets forth specific evidence showing consent from a large percentage of potential class members." *Toney v. Quality Res.*, 2018 U.S. Dist. LEXIS 22712, *44 (N.D. Ill 2018); *see also Barrett v. Wesley Fin. Grp.*, 2015 U.S. Dist. LEXIS 189410, *18 (S.D. Cal. 2015) ("issues of individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone."). "In order to demonstrate that individuals consented to the calls, Defendants must marshal some evidence of prior express consent, such as a screenshot of a completed consent form for an individual plaintiff or a list of IP addresses of individual plaintiffs who consented to the calls. They have not." *Johansen v. One Planet Ops*, 2018 U.S. Dist. LEXIS 47776, *14 (S.D. Ohio 2018).

Thus, a "[d]efendant's speculation that individual class members may have consented to receive auto dialed or pre-recorded phone messages is therefore insufficient to demonstrate that individual questions of consent predominate." *Makaron v. Enagic USA, Inc.*, 2018 U.S. Dist.

6

LEXIS 41270, *14 (C.D. Cal. 2018) (emphasis added).[5] In this case, Plaintiff narrowly tailored the class to exclude persons that may have consented. First, the class is limited to noncustomers. Defendants fail to offer evidence of any mechanism by which they regularly obtain consent to call noncustomers, much less specific evidence of consent as to any particular class member. To be sure, Defendants pose hypotheticals about how noncustomers could theoretically consent through an intermediary (e.g. through the customer). But in order to establish such "intermediary consent," Defendants would have to prove that the customer actually obtained the class members' consent to have Defendants call about the customer's debt, and that the customer then conveyed that consent to Defendants. *See In the Matter of Rules and Regs. Implementing the TCPA of 1991*, 2015 FCC LEXIS 1586, *116, ¶ 49 (July 10, 2015). There is no reason to expect the issue will predominate because there is no reason to believe any significant percentage of the noncustomer class consented through an intermediary. Even a "litany of hypotheticals" cannot defeat class certification of a TCPA case. *Griffith v. ContextMedia, Inc.*, 2018 U.S. Dist. LEXIS 5436, *6 (N.D. Ill. 2018); *see also Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (district court abused discretion by denying certification based on "speculation alone").

Second, above and beyond limiting the class to noncustomers, Plaintiff has tailored the class to include only those telephone numbers that Defendants called *after* noting that they were calling the wrong number in the first; i.e., ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Doc. 157-4 - Van Nest Dep.* at 25:14 – 26:5. Thus, Defendants' own records establish that they lacked consent to calls these telephone numbers.

---

5 *see also A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, 2018 U.S. Dist. LEXIS 8975, *11 (N.D. Ill. 2018) ("Kabbage cannot destroy Plaintiff's chances at class certification by summoning hypothetical consent issues while failing to produce any specific evidence demonstrating the actual existence of those issues."); *Mohamed v. Off Lease Only, Inc.*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) ("Defendants' speculation that customers may have given their express consent...is not sufficient to defeat class certification.")

Defendants have attempted to walk back their deposition testimony with 11th hour affidavits that contradict it; i.e. . *See Van Nest Decl.* at ¶ 14 (contradicting deposition testimony); *Ibarra Decl.* at ¶ 3 (merely stating that Van Nest's declaration is true).

This testimony is inadmissible and should disregarded. A District Court may "disregard an affidavit as a matter of law when, without explanation, it flatly contradicts [the affiant's] own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). Defendants should not be able to testify that ▓▓▓, and then claim otherwise after the fact now that Plaintiff is submitting ▓▓▓ into evidence.

Further, the testimony has little to no credibility. Van Nest posits numerous hypotheticals where ▓▓▓ means something other than a wrong number notation, but doesn't identify a single concrete example where ▓▓▓, much less a single example amongst the class. This glaring failure to submit a single example, taken in with the contradiction of prior deposition testimony and the lack of a single document supporting these assertions, show this is a transparent attempt to create a factual dispute where none exists.

Realizing the Court may not allow Defendants to contradict their prior testimony, Defendants also claim ▓▓▓ are hearsay to keep them out of evidence altogether. Yet they are not hearsay– ▓▓▓ are excluded from the hearsay rules as an opposing party's statement "made by the party's agent or employee on a matter within the scope of that relationship and while it existed". Fed. R. Evid. 801(d)(2)(D). Moreover, there are no layers of hearsay – rather than simply noting what the person who answered the phone said; ▓▓▓

8

▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

Defendants also contend the application of a "kill list" in Biggerstaff's analysis proves that ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄. Defendants' misconstrue Mr. Biggerstaff's testimony. As Mr. Biggerstaff testified, he "killed" (i.e. removed) certain number from class list if there was any evidence defendants had *ever* successfully reached the customer at that phone number (e.g. even before the number was reassigned to the class member after the customer had abandoned the telephone number). So even if a non-customer received calls from Defendants after obtaining a new phone, Biggerstaff excluded that number if defendants' records show that, prior to reassignment, the customer had previously used that number to discuss payment. Thus, Defendants are wrong that application of a "kill" means the ▄▄▄▄▄▄▄▄ was incorrect in the first place. Mr. Biggerstaff took an ultra-conservative approach and narrowly tailored the class list beyond what was necessary to eliminate any individual issues of consent; Defendants' attempt to misconstrue that analysis to their own advantage is not persuasive.

In sum, Defendants' attempt to disavow ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ is no different than those rejected in other wrong number TCPA actions. *See West v. Cal Servs. Bureau*, 323 F.R.D. 295, 301-302 (N.D. Cal. 2017) ("several district courts have deemed commonality and predominance satisfied in TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as 'wrong number' in defendant's call log databases 'may not have actually been a wrong number.'").[6] The Court should reach the same conclusion here.

---

6 *See also Johnson v. Navient*, 315 F.R.D. 501, 503 (S.D. Ind. 2016) (certifying TCPA class of wrong number call recipients despite defendants assertion that "every record marked as a wrong number may not have actually been a wrong number"); *Abdeljalil v. GE Capital Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) (certifying TCPA class and rejecting defendant's argument that "the term 'wrong number' could appear in an account holder record where an account holder . . . is trying to evade a debt collection by falsely stating defendant's associate had reached a wrong number."); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1039 (S.D. Cal. 2015) (certifying settlement class of "persons whose cellular telephone numbers were marked with a 'wrong number' code in defendant's database"); *Reid v. I.C. Sys.*, 2017 U.S. Dist. LEXIS 43770, *5 (D. Ariz. 2017) (certifying settlement class of persons "whose cellular telephone number was . . . coded as a wrong number").

## IV. The Proposed Alternative Defenses do not Predominate this Action

Defendants contend (incorrectly) that several other potential defenses predominate. First, they contend that non-customer class members may be bound by the arbitration[7] provision in BHN's contracts if they ever even *used* BHN's services (i.e., watched cable tv or browsed the internet at a residence with BHN service). This contention has no merit. BHN fails to point to any provision in its Residential Subscriber Agreements that could bind anyone other than the account holder. Indeed, the agreement on its face binds only the "account holder(s)." *Zitko Decl.* at ex. A, p. 1 ("The account holder(s) referred to on the accompanying Bright House Networks Work Order or statement ('I,' 'me' or 'my') agrees . . ."). This argument also fails legally as even calls to customers that are un-related to the account at issue are not subject to arbitration. Thus, this defense doesn't even get off the ground – it cannot possibly predominate this action.

Second, Defendants contend that the Prerecorded Voice Class will be predominated by individual inquiries into whether a prerecorded message played during the calls because "there is no way to make that determination from ASTS's logs[.]" *Response* at p. 27. That is incorrect and disingenuous. Plaintiff's expert already identified calls that played a prerecorded message . *Exhibit 5*; *Doc. 157-1* at ¶ 18(e).8                                . *See e.g. id.* at ex. 5. Even the declaration that Defendants

---

7 As the 11th Circuit recently ruled TCPA claims are not appropriate for arbitration since they arise not from contract but from conduct that violates a separate and distinct federal law. See *Gamble v New England Auto Fin.*, 735 F. Appx 664 (11th Cir. 2018) ("The bottom line is that Ms. Gamble's TCPA claim did not 'in any way arise[] from or relate[] to' the Loan Agreement, and the parties did not agree to arbitrate those claims.") *See also Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 505 (E.D.N.Y. 2016)(AT&T affiliate customer not subject to arbitration for calls regarding third party account even when provision covered affiliates); *Breda v. Cellco P'ship*, 2017 U.S. Dist. LEXIS 191186, at *6 (D. Mass. Nov. 17, 2017) (former customer who received calls violating the TCPA relating to another account was not subject to arbitration)

8 As the only persons in the Prerecorded Voice Class are those that received calls that utilized a prerecorded " message, defendants are incorrect that whether that prerecorded      qualifies as a prerecorded voice under the statute is not a common question.

cite admits that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Van Nest Decl.* at ¶ 24. Regardless, Plaintiff's expert already excluded any calls where ▮▮▮▮▮▮▮▮▮▮ indicated that the call failed to connect to ensure that only calls which actually connected (and thus played a prerecorded message as programmed) were counted in the class. *Doc. 157-1* at ¶ 18(b) (ignoring calls that resulted in SIT tones). Thus, Defendants can only posit remote hypothetical possibilities about random network errors or disconnections, which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* Defendants fail to establish that any such errors would have actually prevented the prerecorded message from being played, much less that any such hypothetical errors were likely to occur with any frequency. Thus, this issue does not predominate this action.

Third, Defendants wrongly contend that individual inquiries are necessary to determine whether each class member has Article III standing because they could only have standing if they actually answered or heard the call. Defendants misconstrue the law of standing. It is well established in this circuit that a subscriber to a telephone number has standing in a TCPA claim based on the mere physical connection of a telephone call to his telephone number, which invades the subscriber's property interest by occupying the telephone line. *See Glasser v. Hilton Grand Vacations Co. LLC*, 2017 U.S. Dist. LEXIS 381, *5 (M.D. Fl. 2017) ("it is unnecessary for Plaintiff to allege that she answered the calls"), citing *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (finding standing satisfied because call "occupied the telephone line and fax machine"). Thus, this argument has no merit.

Fourth, Defendants contend apportioning damages amongst subscriber and users will predominate this action. Yet the class is limited to subscribers only, so this is not an issue at all.

### V. The Class is Sufficiently Numerous

Continuing their kitchen sink approach, Defendants contend numerosity fails even though

11

Mr., Biggerstaff ███████████████████████████████████ within the class definitions, each of which is tied to a real person – the telephone subscriber at the time of the calls. Defendants claim "there is absolutely no evidence" that these subscribers are non-customers, but this ignores Defendants' own testimony that ████████████ was used to wrong numbers; i.e. calls made to a noncustomer. Again, Defendants fail to identify any person in the class who is actually a customer, rather than the recipient of a wrong number call as Defendants records already show.

### VI. Plaintiff is Typical of the Class

Defendants contend Plaintiff is not typical because "Customer H" repeatedly provided Plaintiff's telephone number to BHN even after it belonged to Plaintiff. This contention is simply not accurate, as shown below, but even if it was, it would not be consent to call Plaintiff, who repeatedly told Defendants they were calling the wrong number. In any event, Customer H *did not* repeatedly provide that number to Defendants. Not a single one of the documents Defendants attach in support of this argument (*see Zitko Decl.* at ex. B) show the customer providing Plaintiff's number (xxx-xxx-2025). They are all ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This appears to be a contrived argument that has no chance of success on the merits and thus does not make Plaintiff atypical. "[T]o defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial. If a court determines an asserted unique defense has no merit, the defense will not preclude class certification." *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3rd Cir. 2006) (emphasis added), citing *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994) ("But the 'unique defense' here, while possibly unique, is not a defense.")

Defendants argue Plaintiff is also atypical because one of the calls made to his number

(apparently on a different account) resulted in the ███████████████████████ that should have eliminated Plaintiff's telephone number from the class list under Mr. Biggerstaff's "kill list" analysis. According to Defendants, that ███████████████████████ ███████████████" Response at p. 35.   This is nonsense.  ███████████████████ ███████████████"  Thus, this meritless defense poses no typicality problem either.

### VII.     Plaintiff and his Counsel are Adequate to Represent the Class

Despite Plaintiff's counsel's years of success of with TCPA class actions (See Docs. 157-10, 157-11), Defendants contend they are not adequate to represent the class and attack their fee agreement with the Plaintiff has an hourly rate component because one of Plaintiff's claims is fee shifting as well as the provisions for reimbursement of expenses for their services if the Plaintiff chooses to settle the case on an individual basis.  Of course, in reality, lawyers commonly charge hourly rates for their services, and are commonly reimbursed for litigation costs at the end of litigation. *Exhibit 6 - Tozian Dep.* 106:21-107:4.   Defendants' attempt to establish that the negotiation of such a fee agreement by counsel here is unethical has no merit.

As Tozian testified, "the class action authorization fee agreement complies with the rules regulating the Florida Bar" and "the raising of the propriety of the fee agreement appears to be a thinly veiled attempt to affect the litigation. It appears to me that the client hasn't complained about anything . . . It appears its being used as a procedural weapon…" *Id.* at 38:11-16, 39:22-40:6. Moreover, the cases Defendants cite are inapposite.   As Tozian testified, *Compton v. Kittleson* is "not persuasive to me is because it wasn't a class action, and the client didn't have any responsibilities to the class members; and I mean, the fundamental difference I see is that in this class-action case the two fee structures to take into considerations a class rep and it completely changes the fundamental nature of what the lawyer's doing when the client abandons the class." *Id.*

13

at 114:24-115:8. It also did not have a consumer fee shifting claim. Similarly, *Hollander* is inapposite because it "stands for the proposition that you can't exact a penalty for discharging one's lawyer. And the provision that we're talking about, it doesn't deal with discharge. It deals with changing the fundamental makeup of the claim from class to individual." *Id.* 139:13-18.

In any event, an amended fee agreement has removed the language at issue. *See Exhibit 7 - Amended Agreement*. Thus, any theoretical conflict the original agreement could have possibly created does not exist.[9] *Lanteri v. Credit Prot. Ass'n L.P.*, 2018 U.S. Dist. LEXIS 166345, *12-16 (S.D. Ind. 2018) (addressing the same argument made by the same defense counsel in this case and, without holding that the fee agreement was unethical or otherwise improper, granting class certification upon amendment of the agreement because it resolved the issue); *Motion* at p. 22.

Defendants persist in arguing Counsel never informed Plaintiff of a settlement offer, but the facts show otherwise. It is undisputed the personal phone records of Plaintiff's counsel proves 2 phone calls took place between Plaintiff and Mr. Howard on August 28, 2017. It is also undisputed that Defendants falsely and recklessly claim only one telephone call took place. (*Doc. #161*, p. 33) The declaration of Mr. Howard (*Doc. #150-2*) explains in detail the sequence of events, including a confirming email to co-counsel minutes after the conversations with Plaintiff. *See also Ex. 6* at 49:20-51:12 ("his deposition really – it didn't create me any well-founded concern that he hadn't been dealt with properly").

Finally, Plaintiff demonstrated he is looking out for the class and regularly keeps in contact with Counsel. He is not inadequate simply because he doesn't understand all of the complexities inherent in this litigation. "[T]he threshold of knowledge required to qualify a class representative is low." *Bacon v. Stiefel Labs.*, 275 F.R.D. 681, 694 (S.D. Fla. 2011). "A class representative need

---

9 It is noteworthy that Plaintiff himself stated, "[m]y decision to reject the settlement offer in Bright House's letter had nothing to do with any concern about paying my lawyers." (Doc. #150-3) Regardless, Defendants' complaints are cured by the amended agreement.

only possess a minimal degree of knowledge necessary to meet the adequacy standard." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3rd Cir. 2007). Plaintiff has established that and more. *See Doc. 157-9* at pp. 22-25, 40:7, 43-54, 61-65, 154-156. As Mr. Tozian testified, Plaintiff "seemed pretty proud of the fact that he was a class rep. He seemed intent on making sure that other people were not subjected to the abuses that he was subjected to…he seemed to be pretty proud of that fact that they were going to – this class action was going to make this corporate entity or corporate entities quit doing these things to people." *Ex. 6* at 41:21-42:6.

## VIII. Classwide Litigation is Superior to Individual Actions

In his motion, Plaintiff has established the superiority of classwide litigation of TCPA claims because the amount of recovery (usually $500 per call, which the court may trebled to $1500 if the violations were willful) compared with the cost of litigation makes individual actions for persons who received only a small number of calls prohibitively expensive. In this case, the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See Doc. 157-1* at ¶ 19. That amount of recovery would be swallowed by expenses and attorney's fees in no time. Indeed, a single motion to dismiss would be enough to make the case too expensive to litigate, not to mention expert witness fees that arise. That other persons, who received hundreds or thousands of calls, find it efficient to litigate their TCPA claims on an individual basis has no relevance to this case ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Finally, Plaintiff respectfully submits that there is no merit to Defendants' contention that the lack of a formal "trial plan" means Superiority is not satisfied. "Nothing in Rule 23 requires Plaintiff to submit a formal trial plan along with her motion for class certification." *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 365 (N.D. Cal. 2010). To the extent the Court believes that a trial plan would assist its consideration of this motion, Plaintiff would be happy to submit one.

15

Respectfully Submitted,

*/s/ William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 010330
Billy@TheConsumerProtectionFirm.com
Amanda J. Allen, Esq.
Florida Bar No.: 0098228
Amanda@TheConsumerProtectionFirm.com
THE CONSUMER PROTECTION FIRM, PLLC
4030 Henderson Blvd
Tampa, FL 33609
Tel: (813) 500-1500
Fax: (813) 435-2369

*/s/ Keith J. Keogh*
Keith J. Keogh, Esq.
Florida Bar No. 0126335
Keith@KeoghLaw.com
KEOGH LAW, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
Tel: 312.726.1092
Fax: 312.726.1093

*Attorneys for Plaintiff Stephan H. Sliwa*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 010330